Laura Davis Jones (DE BAR No. 2436) (*pro hac pending*)
Jeffrey W. Dulberg (CA Bar No. 181200)
Victoria A. Newmark (CA SBN 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   ljones@pszjlaw.com
              jdulberg@pszjlaw.com
              vnewmark@pszjlaw.com

Attorneys for Channel Technologies Group, LLC,
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CHANNEL TECHNOLOGIES GROUP, LLC, [1]<br><br>Debtor. | Case No.:  9-16-bk-11912-PC<br>Chapter 11<br><br>**NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1) AUTHORIZING POSTPETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of David Tiffany, Proposed Chief Restructuring Officer, in Support of First Day Motions filed concurrently herewith]<br><br>Date:        TBD<br>Time:        TBD<br>Place:       Courtroom "201"<br>               1415 State Street<br>               Santa Barbara, CA  93101<br>Judge:       Peter H. Carroll |

[1] The last four digits of the Debtor's Tax Identification Number are:  0460. The Debtor's mailing address is: 879 Ward Drive, Santa Barbara, CA  93111.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE
UNITED STATES TRUSTEE, THE DEBTOR'S PREPETITION AND POSTPETITION
LENDER, THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS, ALL
ENTITIES KNOWN TO ASSERT LIENS IN THE DEBTOR'S ASSETS, AND OTHER
PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Channel Technologies Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby moves (the "Motion") this Court for entry of an interim order substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and following a final hearing, a final order, among other things:

(a)     authorizing the Debtor, in its capacity as borrower, pursuant to sections 105(a), 362, 363, and 364(c), (d), and (e) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), to implement the debtor in possession financing outlined in the term sheet (the "DIP Financing Agreement") attached as Exhibit "1" to the Interim Order, with Blue Wolf Capital Fund II, L.P. (the "DIP Lender"), to obtain extensions of credit on a priming senior secured, term basis, in an aggregate principal amount not to exceed $5,000,000 at any time outstanding (the "DIP Facility") on the terms of the DIP Financing Agreement (together with any and all documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, as may be amended hereafter from time to time, collectively, the "DIP Loan Documents");

(b)     providing that, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, the obligations of the Debtor under the DIP Loan Documents (collectively, the "DIP Obligations") are:

(i)     granted superpriority administrative claim status, having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a final order), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, subject only to payment of the Carve-Out and the Permitted Prior Liens (as defined in the Interim Order) on the terms and conditions set forth herein; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(ii)    secured under sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code by valid and fully perfected, first priority priming liens on and senior security interests in substantially all of the property, assets or interests in property or assets of the Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed now existing or hereafter acquired or created, subject only to payment of the Carve-Out and the Permitted Prior Liens;

(c)    approving, pursuant to sections 363 and 364 of the Bankruptcy Code, the form and manner of adequate protection set forth in the Interim Order and the DIP Financing Agreement to be provided to Blue Wolf Capital Fund II, L.P., in its capacity as the prepetition lender (the "Prepetition Lender");

(d)    scheduling an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of the Interim Order which, among other things, (i) approves, on an interim basis, the post-petition financing to be made pursuant to the DIP Loan Documents, (ii) authorizes the Debtor to obtain funding under the DIP Facility on an interim basis, in accordance with the DIP Loan Documents and following the entry of the Interim Order, in the aggregate principal amount of up to $1,250,000, which during any time period shall be limited to the borrowings projected to be drawn by the Debtor under the initial approved budget attached as Exhibit "2" to the Interim Order, as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Financing Agreement (the "Budget"), and (iii) grants adequate protection to the Prepetition Lender as provided in the Interim Order and the DIP Financing Agreement;

(e)    scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") which, among other things, (i) approves, on a final basis, the DIP Loan Documents, (ii) authorizes, on a final basis, the post-petition financing to be made pursuant to the DIP Loan Documents in an aggregate principal amount up to $5,000,000, (iii) authorizes the Debtor to repay in full the Prepetition Debt, and (iv) grants, on a final basis, adequate protection to the Prepetition Lender; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(f)      finding, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Interim Hearing is sufficient having been given to (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to any known secured creditors of record, (iv) counsel to the Prepetition Lender, and (v) the twenty (20) largest unsecured creditors of the Debtor; and such notice being sufficient and adequate, and no other or further notice being required.

Each of the DIP Lender and the Prepetition Lender is an affiliate and insider of the Debtor and indirectly holds the majority and controlling equity interest in the Debtor.  Subject to entry of the Final Order, the DIP Loan Documents provide for a roll-up of the outstanding obligations under the Prepetition Credit Agreement (as defined below), which total approximately $2,860,000 and were advanced over the last few months in order to maintain the Debtor's assets pending the ongoing restructuring process.

**PLEASE TAKE FURTHER NOTICE** that this Motion is made pursuant to sections 105, 361, 362, 363, 364, 503(b), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and Rules 4001-2 and 9075-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "Local Bankruptcy Rules"),[2] and is made on the grounds that the authorization of the requested financing and use of cash collateral is within the Debtor's sound business judgment and in the best interest of the Debtor's estate.  Access to the DIP Facility and authorization to use cash collateral will allow the Debtor to maintain its assets while it administers its chapter 11 case, thereby maximizing recoveries by creditors.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that the relief sought herein be granted on an emergency basis because uninterrupted access to financing in the form of the DIP Facility and cash collateral is essential to maximizing the value of the Debtor's assets.  Further, pursuant to Local Bankruptcy Rule 4001-2(e), the Court is specifically authorized to grant interim relief under a financing and/or cash collateral motion to prevent immediate and irreparable harm to the estate pending a final hearing.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this Notice and Motion, the Notice of Emergency Motions that will be filed and served after a hearing date for the Debtor's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2]  Pursuant to Local Bankruptcy Rule 9075-1(a)(3), no separate motion for an expedited hearing is required.

"First Day Motions" has been obtained, the attached *Memorandum of Points and Authorities*, the *Declaration of David Tiffany, Proposed Chief Restructuring Officer, in Support of First Day Motions* (the "Tiffany Declaration") filed concurrently herewith, and the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Motion. In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that any opposition or objection to this Motion must be filed with the Court and served on proposed counsel for the Debtor at the above address any time before the hearing or may be presented at the hearing on this Motion. You will receive a separate notice of the hearing on this Motion. Your failure to timely object may be deemed by the Court to constitute consent to the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that counsel to the Debtor will serve this Notice and Motion, the attached *Memorandum of Points and Authorities* and the Tiffany Declaration on: (a) the Office of the United States Trustee, (b) the Debtor's twenty largest unsecured creditors, (c) the DIP Lender and Prepetition Lender, and (d) any known parties that assert a lien on the Debtor's assets. To the extent necessary, the Debtor requests that the Court waive compliance with Local Bankruptcy Rule 9075-1(a)(5) and approve service (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight and electronic delivery. In the event that the Court grants the relief requested by the Motion, the Debtor shall provide notice of entry of the Interim Order granting such relief upon each of the foregoing parties and any other parties in interest as the Court directs. The Debtor submits that such notice is sufficient and that no other or further notice be given.

**WHEREFORE** the Debtor respectfully requests that the Court grant the relief requested herein and grant such other and further relief as the Court deems just and proper.

Dated:   October 14, 2016                    PACHULSKI STANG ZIEHL & JONES LLP

By      */s/ Jeffrey W. Dulberg*
        Jeffrey W. Dulberg

        [Proposed] Attorneys for Channel Technologies
        Group, LLC, Debtor and Debtor in Possession

Laura Davis Jones (DE Bar No. 2436) (*pro hac pending*)
Jeffrey W. Dulberg (CA Bar No. 181200)
Victoria A. Newmark (CA SBN 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   ljones@pszjlaw.com
          jdulberg@pszjlaw.com
          vnewmark@pszjlaw.com

Attorneys for Channel Technologies Group, LLC,
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 9-16-bk-11912-PC |
| CHANNEL TECHNOLOGIES GROUP, LLC | Chapter 11 |
|              Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1) AUTHORIZING POSTPETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

**I. NEED FOR FINANCING** ................................................................................. **1**

**II. MATERIAL TERMS OF FINANCING** ............................................................ **2**

**III. STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2** ......... **10**

**IV. BACKGROUND** ............................................................................................ **12**

    A.    Jurisdiction and Venue .................................................................. 12

    B.    General Background ...................................................................... 12

    C.    The Debtor's Prepetition Secured Debt ........................................ 13

**V. PROPOSED DIP FINANCING** ....................................................................... **14**

    A.    The DIP Facility and Use of Cash Collateral are Critical to the Debtor's Continued Operations ........................................................................................ 14

    B.    The Debtor's Selection of the DIP Lender .................................... 14

**VI. BASIS FOR RELIEF** .................................................................................... **15**

    A.    The DIP Facility Should Be Approved Under 11 U.S.C. §§ 364(c), 364(d)(1) ......... 15

    B.    The Debtor Should Be Granted Access to Cash Collateral Under 11 U.S.C. § 363(c)(1) ........................................................................................... 18

**VII. INTERIM ORDER AND FINAL HEARING** ................................................. **19**

**VIII. NOTICE** .................................................................................................... **20**

**IX. CONCLUSION** ............................................................................................ **20**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 495 Cent. Park Ave. Corp.*,
  136 B.R. 626 (Bankr. S.D.N.Y. 1992) ........................................................................ 17

*In re Ames Dept. Stores*,
  115 B.R. 34 (Bankr. S.D.N.Y. 1990) .......................................................................... 15

*In re Antico Mfg. Co.*,
  31 B.R. 103 (Bankr. E.D.N.Y. 1983) .......................................................................... 17

*In re Defender Drug Stores*,
  126 B.R. 76 (Bankr. D. Ariz. 1991),
  *aff'd*, 145 B.R. 312 (B.A.P. 9th Cir. 1992) ............................................................... 17

*In re Ellingsen MacLean Oil Co.*,
  834 F.2d 599 (6th Cir. 1987) ...................................................................................... 17

*In re Reading Tube Indus.*,
  72 B.R. 329 (Bankr. E.D. Pa. 1987) ........................................................................... 16

*In re Simasko Production Co.*,
  47 B.R. 444 (D. Colo. 1985) ....................................................................................... 15

*In re Sky Valley, Inc.*,
  100 B.R. 107 (Bankr. N.D. Ga. 1988) ........................................................................ 16

*In re Snowshoe Co.*,
  789 F.2d 1085 (4th Cir. 1986) .................................................................................... 16

*In re Stanley Hotel, Inc.*,
  15 B.R. 660 (D. Colo. 1981) ....................................................................................... 17

*Weinstein, Eisen, Weiss LLP v. Gill (In re Cooper Common, LLC)*,
  424 F.3d 963 (9th Cir. 2005) ...................................................................................... 18

**Statutes**

11 U.S.C. § 1107 ............................................................................................................. 13

11 U.S.C. § 1108 ............................................................................................................. 13

11 U.S.C. § 363 ....................................................................................................... 18, 19

11 U.S.C. § 364 ........................................................................................... 15, 16, 17, 18

11 U.S.C. § 503 ............................................................................................................... 17

11 U.S.C. § 506 ............................................................................................................... 18

11 U.S.C. § 552 ............................................................................................................... 18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28 U.S.C. § 1334 ................................................................................................................ 12

28 U.S.C. § 1408 ................................................................................................................ 12

28 U.S.C. § 1409 ................................................................................................................ 12

28 U.S.C. § 157 .................................................................................................................. 12

**Rules**

BLR 4001-2 ............................................................................................................ 2, 10, 19

Fed. R. Bankr. P. 4001 .......................................................................................... 2, 10, 19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Channel Technologies Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this Memorandum of Points and Authorities in support of its *Emergency Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 (1) Authorizing Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Priority; (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection; (4) Modifying the Automatic Stay; and (5) Scheduling a Final Hearing* (the "Motion"),[1] and represents as follows:

**I.**

**NEED FOR FINANCING**

As more fully set forth herein and the Tiffany Declaration, the Debtor has an urgent and immediate need for access to cash collateral and borrowings under the DIP Financing Agreement of up to $5,000,000, of which $1,250,000 would be available under the proposed Interim Order.

The Debtor designs and manufactures piezoelectric ceramics, transducers and sonar equipment sold primarily to military, commercial, and industrial customers in the United States and internationally.  Founded in 1959, the Debtor is based in Santa Barbara, California and operates a second manufacturing site in Littleton, Massachusetts.  The Debtor supplies its products to a variety of end-users, including the U.S. Navy, medical device manufacturers and energy services companies.  The Debtor currently employs over 200 employees.

The Debtor commenced this chapter 11 case to restructure its assets and liabilities.  The Debtor must have sufficient liquidity to meet the needs, demands, and obligations of its business.  The proposed DIP Facility will provide the Debtor with access to sufficient financing to fund operations for a limited period.  The proposed DIP Lender is an affiliate and insider of the Debtor and indirectly holds the majority and controlling equity interest in the Debtor.

Under the proposed DIP Facility and associated Final Order, the Debtor will have access to new advances sufficient to repay the obligations under the Prepetition Credit Agreement and to fund the Debtor's administrative obligations on a going forward basis.  Payoff of the Prepetition Credit

---

[1]  Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion or the DIP Financing Agreement, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Agreement is a condition to funding under the DIP Facility from and after the entry of the Final Order.

Without the proposed postpetition financing and use of cash collateral, the Debtor will not have any liquidity to operate its business, and therefore will be unable to fund its ordinary course expenditures or pay the expenses necessary to administer the chapter 11 case. Simply put, without access to financing and continued use of cash collateral, the Debtor will be required to immediately cease operations and liquidate, causing irreparable harm to the Debtor, its estate and creditors. Accordingly, the Debtor has an urgent and immediate need for the borrowings under the DIP Financing Agreement and use of cash collateral contemplated herein.

## II.

## MATERIAL TERMS OF FINANCING

Pursuant to Bankruptcy Rules 4001(b) and 4001(c) and Local Bankruptcy Rule 4001-2(c), the relevant provisions of the DIP Financing Agreement are as follows:[2]

| Term | Description |
|------|-------------|
| DIP Lender | Blue Wolf Capital Fund II, L.P. |
| Borrower | Channel Technologies Group, LLC |
| Borrowing Limits / Use of Proceeds | The Debtor seeks authorization to borrow up to $5,000,000 following entry of the Final Order, of which $1,250,000 would be available under the proposed Interim Order. DIP Financing Agreement at p. 1; Interim Order, at p. 10. Proceeds of the DIP Loan shall be utilized as follows: (i) general working capital and operational expenses; (ii) administration of this case (in each case of (i) and (ii), as projected and in accordance with a 13-week cash flow budget prepared by the Debtor, as such Budget may be amended from time to time, in form and substance acceptable to the DIP Lender on a line-by-line basis); (iii) payment to the Prepetition Lender in satisfaction of the Prepetition Debt upon entry of a Final Order and (iv) costs, expenses, closing payments, and all other payment amounts contemplated by the DIP Loan Documents. DIP Financing Agreement at p. 2. For the avoidance of doubt, the proceeds of the Prepetition Debt (as defined below), the funds made available through the DIP Loan and the Carve-Out (as defined below) shall not be utilized (i) to attack the validity, priority or enforceability of any of the prepetition or post-petition liens or security interests of any lender under the Prepetition Debt Documents or the DIP Loan, (ii) except by the Committee (as defined below) during the Review Period (as defined below), to research, review, analyze or investigate with respect to or in connection with any contemplated or potential litigation, |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] The following chart summarizes the material terms and conditions of the DIP Facility. In the event of any inconsistency with the DIP Financing Agreement, the terms and conditions of the DIP Financing Agreement shall control.

| Term | Description |
|------|-------------|
|  | claim, objection or cause of action of any kind or nature whatsoever against the Prepetition Lender or the DIP Lender (whether or not arising from or related to prepetition or post-petition liens, security interests, acts, omissions or other conduct), or (iii) to file, prosecute or otherwise pursue any litigation, claim, objection or cause of action of any kind or nature whatsoever against the Prepetition Lender or the DIP Lender (whether or not arising from or related to prepetition or postpetition liens, security interests, acts, omissions or other conduct).  DIP Financing Agreement at p. 2. |
| Interest Rate | Ten percent (10%) per annum on the outstanding balance of the DIP Loan principal (the "<u>Interest</u>").  Interest shall be due and payable on the Due Date (defined below).  DIP Financing Agreement at p. 2.<br>Upon the occurrence of an Event of Default (as defined below) and during the continuation of such default, interest shall accrue on any outstanding balance of the DIP Loan principal at twelve percent (12%) per annum (the "<u>Default Interest</u>").  DIP Financing Agreement at p. 2. |
| Fees / Costs and Expenses | No closing or exit fees are payable under the DIP Financing Agreement.  The Debtor shall reimburse the Prepetition Lender and the DIP Lender for all reasonable costs incurred in connection with the Prepetition Debt, the Prepetition Debt Documents, the DIP Loan and/or the DIP Loan Obligations (as defined below) including, without limitation, legal fees, advisor fees, consultant fees, costs and expenses, collateral valuations, appraisals, surveys, field examinations, third party diligence, lien searches, filing fees, and all other out-of-pocket costs and expenses in any way related to the Prepetition Debt, the Prepetition Debt Documents, the DIP Loan and/or the DIP Loan Obligations and the enforcement and collection thereof (collectively, the "<u>Costs and Expenses</u>").  DIP Financing Agreement at p. 2-3. |
| Term / Maturity | The outstanding principal amount of the DIP Loan <u>plus</u> any unpaid accrued Interest or Default Interest (as the case may be) <u>plus</u> any Costs and Expenses shall be due and payable in full in cash upon the earlier of the following (the "<u>Due Date</u>"): (i) the first anniversary of the Petition Date; (ii) the effective date of a confirmed plan of reorganization; (iii) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; (iv) appointment of a Chapter 11 trustee in the Bankruptcy Case; (v) dismissal of the Bankruptcy Case; (vi) thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such thirty (30) day period; (vii) the date on which the Court enters a final order approving a post-petition financing between the Debtor and another lender(s) or investor(s) (as the case may be) (other than the DIP Lender); (viii) consummation of a transaction, or consummation of a transaction in a series of transactions that will result in, sale of substantially all of the Debtor's non-cash assets, whether under Bankruptcy Code § 363 or otherwise; (ix) stay, reversal, modification or the granting of relief from either the Interim Order of the Final Order;  and (x) five (5) business days after the DIP Lender notifies the Debtor and its counsel in writing of an Event of Default which is not subsequently cured or waived by the end of such notice period.  The DIP Lender may extend the Due Date in its sole discretion.  DIP Financing Agreement at p. 4.<br>The Debtor shall have the right (but not the obligation) to prepay the DIP Loan Obligations (in cash) in whole or in part.  There shall be no prepayment penalty or premium.  DIP Financing Agreement at p. 9. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|------|-------------|
| Cash Collateral | The Debtor may utilize the Prepetition Lender's and the DIP Lender's Cash Collateral (as defined in Bankruptcy Code § 363) only as follows: (i) general working capital purposes in the ordinary course of business; and (ii) administration of the Bankruptcy Case (in each case of (i) and (ii) subject to and in accordance with the Budget). Prior to requesting a disbursement under the DIP Loan, the Debtor will utilize Cash Collateral, provided, however, the Debtor may draw upon the DIP Loan if, at any time, the Cash Collateral balance is less than an amount necessary to satisfy expenditures for the subsequent two week period in the Budget. DIP Financing Agreement at p. 3. |
| Prepetition Debt Acknowledgments | The Prepetition Debt, the Prepetition Debt Documents, the payments made by the Debtor and received by the Prepetition Lender and the prepetition liens and security interests of the Prepetition Lender shall not be subject to challenge by the Debtor. The Debtor concedes the amount, validity, extent and priority of such Prepetition Debt, Prepetition Debt Documents, liens and security interests, and waives the right to challenge or seek to avoid such Prepetition Debt, Prepetition Debt Documents, liens and security interests on any basis, including, without limitation, pursuant to Bankruptcy Code §§ 544 through 550. The Debtor represents, warrants and agrees that, as of the Petition Date, the Prepetition Debt is secured by valid senior perfected liens on all assets of the Debtor as to which perfection can be achieved though the filing of a financing statement with the California Secretary of State (the "Prepetition Collateral"). DIP Financing Agreement at p. 3; Interim Order at p. 5-6 (Recital E). The Debtor acknowledges and agrees that, as of the date hereof, the aggregate amount outstanding under the Prepetition Debt Documents totals $2,860,000, plus unreimbursed costs and expenses, and such amounts shall not be subject to challenge by the Debtor. For the avoidance of doubt, the Prepetition Debt Documents and the prepetition liens and security interests of the Prepetition Lender with respect to the Prepetition Collateral shall remain in full force and effect with the same validity, extent and priority provided thereunder until such time as the Prepetition Debt has been indefeasibly paid in full. DIP Financing Agreement at p. 3; Interim Order at p. 5-6 (Recital E). |
| DIP Collateral | The DIP Loan shall be secured by a perfected first priority lien on any and all current and future property of the Debtor of any nature or type whatsoever, subject only to the Carve-Out and the Permitted Prior Liens (the "DIP Liens"), including, without limitation, cash, deposit accounts (including any debtor-in-possession account), accounts receivable, goods, plant and equipment, inventory, fixtures, vehicles, documents, instruments, chattel paper, investment property (including, without limitation, ownership interests in corporations, partnerships and limited liability companies), vehicles, intellectual property, customer lists, trademarks, copyrights, brands, know-how, patents, trade secrets, letters of credit, letter credit rights, real property and/or leasehold rights, general intangibles including tax assets, books and records relating to the DIP Collateral (defined below), personal property, any causes of action under the Bankruptcy Code or applicable non-bankruptcy law (excluding causes of action and recoveries pursuant to Chapter 5 of the Bankruptcy Code and prepetition commercial tort claims), all other tangible and intangible assets, and any and all proceeds of the foregoing (collectively the "DIP Collateral"). The foregoing liens shall be |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|---|---|
| | automatically perfected upon entry of the Interim Order without need for any further action by the DIP Lender or the Debtor, provided, however, that the DIP Lender may take, and the Debtor shall provide such reasonable cooperation as DIP Lender may request, such action as it, in its sole discretion, deems appropriate to evidence perfection of the liens granted under the Interim Order including, but not limited to, executing, for itself and as attorney-in-fact for the Debtor, and recording, financing, statements, leasehold mortgages, account control agreements and documentation necessary to obtain a notation of lien on vehicle certificates of title.  DIP Financing Agreement at p. 4-5; Interim Order at p. 11. |
| Super-priority | The DIP Loan shall be authorized and approved by the Bankruptcy Court pursuant to Bankruptcy Code § 364(c)(1) to be incurred as, and shall constitute, claims with a priority over all administrative expenses of the kind specified in Bankruptcy Code § 503(b) or 507(b), (the "DIP Superpriority Claim"), provided that such super-priority claim shall not be payable from causes of action and recoveries pursuant to Chapter 5 of the Bankruptcy Code and prepetition commercial tort claims.  The security interests and liens in the DIP Collateral securing the DIP Loan shall be authorized and approved by the Court pursuant to Bankruptcy Code § 364(c)(2), (3), and 364(d) to constitute a lien on and in the DIP Collateral ranking senior to all other claims against and liens on property of the Debtor, except for the Carve Out and the Permitted Prior Liens as defined below (the "Priming Lien").  The Priming Lien shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the DIP Lender.  DIP Financing Agreement at p. 5; Interim Order at p. 13. |
| Carve-Out | Upon the occurrence and during the continuance of an Event of Default, the super-priority administrative expense claims and the liens granted to the DIP Lender under the Interim Order shall be subject and subordinate only to the Carve-Out and the Permitted Prior Liens.  "Carve-Out" means any (i) unpaid fees of the Clerk of the Court and of the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) unpaid fees and expenses of the professionals of the Debtor and any official committee of unsecured creditors retained by an order of the Court pursuant to Section 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Professionals") incurred prior to written notice by the DIP Lender to the Debtor and its counsel of the occurrence of an Event of Default (the "Trigger Date"), to the extent such fees and expenses are (a) within the amounts set forth in the Budget approved by the DIP Lender for such period, (b) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (c) not otherwise payable from retainers or any professional expense escrow account established by the Debtor; and (iii) fees and expenses of the Professionals incurred after the Trigger Date in an aggregate amount not to exceed $100,000, to the extent such fees and expenses are (a) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (b) not otherwise payable from retainers or any professional expense escrow account established by the Debtor. Pending the Trigger Date, the Debtor shall be authorized to fund, on a weekly basis, an escrow account for the payment of Professionals in an amount up to the amount set forth in the Budget for that week.  DIP Financing Agreement at p. 5-6; Interim Order at p. 18-19. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|------|-------------|
| Section 506(c) Waiver | The Final Order shall include a ruling that no expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.  DIP Financing Agreement at p. 6; Interim Order at p. 23-24. |
| Releases | The Interim Order and the Final Order shall each provide that the Debtor releases and waives any and all claims, causes of action, counterclaims, set-offs and defenses of any kind or nature whatsoever against the Prepetition Lender and the DIP Lender, in such capacities, relating to the Prepetition Debt, the Prepetition Debt Documents, the DIP Loan and/or the claims, liens, security interests, acts, omissions or conduct of the Prepetition Lender or the DIP Lender, in such capacities, on or before the Initial Closing Date or Final Closing Date as applicable.  Upon the entry of the Final Order and subject to the Review Period, the release set forth in the Interim Order shall become binding on all other creditors and parties-in-interest.  DIP Financing Agreement at p. 6; Interim Order at p. 6. |
| Representations and Warranties | The Debtor shall be deemed to have made those representations and warranties that are usual and customary in transactions of this nature, including, without limitation, the following: (i) good standing of the Debtor; (ii) no consent or approval required other than the Interim Order and Final Order; (iii) due authorization, execution and delivery of loan documents; (iv) no violation of material agreements entered into after the commencement of the Bankruptcy Case; (v) no violation of law as a result of the execution of the DIP Loan Documents; (vi) no liens on the assets of the Debtor that are senior to or *pari passu* with the liens securing the Prepetition Debt other than the Permitted Prior Liens; (vii) compliance with applicable laws and regulations; (viii) no material change in business; (ix) no unstayed litigation that is reasonably likely to have a material adverse effect on the operations of the Debtor taken as a whole; (x) no information furnished by Debtor to the DIP Lender or the Court containing any material misstatement of fact or omitting to state a material fact necessary to make the statements therein not materially misleading; and (xi) post-petition taxes paid to the extent required by law.  DIP Financing Agreement at p. 6-7. |
| Conditions Precedent | The following shall be conditions precedent to the parties' obligations to proceed with the transaction outlined herein, unless waived by the DIP Lender.<br>• Execution and delivery, in form and substance acceptable to the DIP Lender, of the DIP Loan Documents.<br>• Review and approval by the DIP Lender of the Budget, which Budget shall consist of a 13-week cash flow projection prepared by the Debtor and approved by DIP Lender.<br>• Entry of the Interim Order with respect to the Initial Disbursement, including authority to use cash collateral, in form and substance acceptable to the Prepetition Lender and the DIP Lender.<br>• Entry of the Final Order no later than the thirtieth (30th) day following the Petition Date with respect to the Final Disbursement, including authority to use cash collateral, in form and substance |

| Term | Description |
|------|-------------|
| | acceptable to the Prepetition Lender and the DIP Lender and authority for the Debtor to satisfy the Prepetition Debt. <br>• Approval by the DIP Lender of the motion seeking entry of an order approving the DIP Financing. <br>• Such other deliverables as DIP Lender may reasonably require. DIP Financing Agreement at p. 10-11. |
| Covenants | The Debtor shall comply with all of the following covenants: <br>• The Debtor shall promptly provide the DIP Lender with updates of any material developments in connection with the Debtor's reorganization efforts in the Bankruptcy Case, whether in connection with an asset sale, plan of reorganization or otherwise. <br>• The Debtor shall deliver to the DIP Lender weekly variance reports showing actual performance against the Budget (in form and substance reasonably acceptable to the DIP Lender). <br>• The Debtor shall operate its business and make disbursements in accordance with the Budget (subject to a permitted variance of 20% per line item of disbursements tested on a rolling four week basis and 10% in cumulative disbursements tested on a rolling four week basis), and the Debtor shall satisfy the requirements of the Bankruptcy Code and orders of the Court. <br>• The Debtor shall deliver to the DIP Lender copies of any and all pleadings filed with the Bankruptcy Court contemporaneously with their filing. <br>• The Debtor shall deliver to the DIP Lender copies of the monthly operating reports filed with the Office of the United States Trustee within three (3) business days of their delivery. <br>• The Debtor shall deliver monthly reports to the DIP Lender showing a comparison of the Budget and the actual performance of the Debtor. <br>• Without the prior written consent of the DIP Lender, the Debtor shall not seek or consent to occur any of the following: (a) any modification, stay, vacation or amendment to the Final Order to which the DIP Lender has not consented in writing; (b) allowance of a priority claim or administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation, any administrative expense of the kind specified in Bankruptcy Code § 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of the DIP Lender in respect of the obligations under the DIP Financing Agreement, except with respect to the Carve-Out; (c) any lien on any DIP Collateral having a priority equal or superior to the lien securing the obligations thereunder, other than with respect to the Carve-Out or the Permitted Prior Liens; or (d) any order seeking authority to take any action that is prohibited by the terms of the Term Sheet, the Interim Order or the Final Order or refrain from taking any action that is required to be taken by the terms of the Term Sheet, the Interim Order or the Final Order. DIP Financing Agreement at p. 7-8. |
| Review Period | Notwithstanding any provisions to the contrary or the payment of the Prepetition Debt under the DIP Financing Agreement, the Interim Order and the Final Order shall provide that the Prepetition Lender's claims and liens shall be subject to review and challenge by any (i) party-in-interest (other than the Debtor) for a seventy-five (75) day period following the Petition |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|---|---|
| | Date, or (ii) official committee of unsecured creditors (the "Committee") for a period equal to the lesser of the sixtieth (60th) day following entry of an order authorizing the employment of counsel to the Committee or the ninetieth (90th) day following the Petition Date (the "Review Period"), during which periods any party-in-interest or the Committee, as applicable, may commence one or more adversary proceedings or contested matters against the Prepetition Lender challenging the validity, extent, priority, perfection or enforceability of the Prepetition Debt or the Prepetition Lender's liens and security interests, seeking avoidance or disgorgement of any payments made by the Debtor to the Prepetition Lender or otherwise asserting any claims or causes of action against the Prepetition Lender on behalf of the Debtor's estate.  A failure to commence such an adversary proceeding or contested matter within the Review Period shall forever bar any party from commencing any such review or challenge thereafter.  DIP Financing Agreement at p. 10; Interim Order at p. 17-18. |
| Credit Bidding | The Prepetition Lender, until such time as its liens are avoided by final order of the Bankruptcy Court, and the DIP Lender shall have the right under Bankruptcy Code § 363(k) to credit bid up to the full amount then-outstanding of the Prepetition Debt and the DIP Loan Obligations, as applicable, in connection with any sale of the Collateral, or any portion thereof, whether in connection with a sale under § 363, a plan of reorganization or otherwise (the "Credit Bid Right").  The Credit Bid Right shall be approved by the Court pursuant to the Interim Order and the Final Order, and shall be a condition to consummating the DIP Loan.  Interim Order at p. 15. |
| Adequate Protection | As adequate protection of the Prepetition Lender's interest in the Prepetition Collateral, the Prepetition Lender shall receive the following: (i) replacement liens in the Debtor's post-petition assets to the same extent and with the same priority as were held by the Prepetition Lender in the Prepetition Collateral subject and subordinate only to the Carve-Out, the DIP Liens, and those valid, properly perfected, unavoidable liens senior the Prepetition Liens identified on Schedule A to the DIP Financing Agreement (the "Permitted Prior Liens"); (ii) a superpriority administrative expense claim with priority over all claims except those with respect to the Carve-Out and the DIP Superpriority Claim (defined below) (as to both (i) and (ii) only to the extent of diminution in the value of the interests of the Prepetition Lender in the Prepetition Collateral and in neither case shall the replacement liens attach to, or the superpriority claim be payable from, Chapter 5 avoidance actions or prepetition commercial tort claims); (iii) payment in full of the Prepetition Debt with the proceeds of the DIP Loan upon entry of the Final Order and current payment of reasonable documented out-of-pocket costs and expenses of the Prepetition Lender's financial advisors and attorneys, which right shall expire at such time as the Prepetition Lender receives indefeasible payment in full of the Prepetition Debt; and (iv) reasonable access upon reasonable notice during normal business hours to the Debtor's non-privileged and non-confidential business records and property.  DIP Financing Agreement at p. 4; Interim Order at p. 14-15. |
| Events of Default | Each of the following shall constitute an "Event of Default", unless otherwise waived by the DIP Lender in its sole discretion:<br>• The Debtor shall fail to pay any DIP Loan obligation in cash as and when such payment has become due; |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|------|-------------|
|      | • Any representation, warranty, report, certificate or other document made or delivered to the DIP Lender pursuant to the Term Sheet, the Interim Order or the Final Order shall have been incorrect in any material respect when made or deemed made;<br>• The failure of Debtor to comply in any material respect with any covenant, agreement or term and condition of the Interim Order, the Final Order or the Term Sheet;<br>• The Debtor is enjoined, restrained or in any way prevented by the order of any court or any governmental authority from conducting all or any material part of its business for more than three (3) consecutive days;<br>• Any material damage to, or loss, theft or destruction of, any DIP Collateral, whether or not insured, or any strike, lockout, labor dispute, embargo, condemnation, act of God or public enemy, or other casualty (whether or not insured) which causes, for more than three (3) consecutive days, the cessation or substantial curtailment of revenue producing activities by the Debtor, if any such event or circumstance could reasonably be expected to have a material adverse effect;<br>• The entry of an order in the Bankruptcy Case that stays, modifies (in any manner adverse to the DIP Lender), or reverses the Interim Order or Final Order or which otherwise materially adversely affects, as determined by the DIP Lender in its discretion, the effectiveness of the Interim Order or Final Order without the express written consent of the DIP Lender;<br>• The conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;<br>• The appointment of a trustee for the Debtor;<br>• The dismissal of the Bankruptcy Case;<br>• The entry of any order that provides for relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to realize upon, or to exercise any right or remedy with respect to, any material portion of the DIP Collateral;<br>• The filing of any application by the Debtor without the express written consent of the DIP Lender for the approval of a claim in the Bankruptcy Case which is *pari passu* with or senior to the priority of the claims of the DIP Lender, or there shall arise any such claim under the Bankruptcy Code, other than the Carve-Out;<br>• The filing of any motion by the Debtor seeking, or the entry of any order in the Bankruptcy Case: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt) for the Debtor from any person other than the DIP Lender (unless the proceeds of such financing are to be used to pay in full in cash all obligations arising under the Term Sheet, the Interim Order and the Final Order); (b) granting a lien on, or security interest in, any of the DIP Collateral, other than with respect to the Term Sheet (unless such liens are granted in connection with a financing, the proceeds of which are to be applied to the payment in full in cash of all obligations arising under the Term Sheet, the Interim Order and the Final Order); or (c) permitting recovery of any costs or expenses of preserving or disposing of the DIP Collateral under Bankruptcy Code § 506(c) from any portion of the DIP Collateral. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Term | Description |
|------|-------------|
| | • The Debtor filing a plan of reorganization or of liquidation (and/or seeking approval of a disclosure statement related thereto) or any other pleading seeking the entry of an order confirming a plan of reorganization that does not require payment in full in cash of all obligations under the Term Sheet, the Interim Order and the Final Order on the effective date of such plan of reorganization or liquidation, and as to which DIP Lender has not consented in writing; or<br>• The filing of any pleading by the Debtor challenging the validity, priority, perfection or enforceability the claims or liens arising from or granted pursuant to the Term Sheet, the Interim Order or the Final Order or arising from or granted pursuant to the Prepetition Debt Documents. DIP Financing Agreement at p. 8-9; Interim Order at p. 20-22. |
| Default Remedies | Upon five (5) business days' written notice to the Debtor and its counsel of an Event of Default which is not cured or waived during such notice period:<br>• The DIP Loan shall mature and any and all DIP Loan Obligations shall become due and payable in full in cash;<br>• The DIP Lender's obligation to fund any further disbursements under the DIP Loan shall be terminated; and<br>• The DIP Lender shall have relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 to permit the DIP Lender to realize upon, or to exercise any right or remedy with respect to, the DIP Collateral or any portion thereof, provided, however, that the Debtor shall have five (5) business days from the DIP Lender's delivery to the debtor of notice of the occurrence of an Event of Default to seek and obtain entry of an order of the Bankruptcy Court reinstating the stay solely on the grounds that no default had occurred. DIP Financing Agreement at p. 9; Interim Order at p. 22-23. |
| Governing Law | New York |

## III.

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2

Pursuant to Bankruptcy Rule 4001(c) and Local Bankruptcy Rule 4001-2(a), the Debtor is concurrently herewith filing the mandatory form 4001-2 for cash collateral and/or debtor in possession financing motions or stipulations. Also, the Debtor highlights the following provisions of the DIP Financing Agreement and/or the Interim Order and Final Order:

| Provision | Description |
|-----------|-------------|
| Cross-collateralization clauses | The DIP Financing Agreement provides, subject to entry of the Final Order, for a roll-up and repayment of the obligations under the Prepetition Credit Agreement. DIP Financing Agreement at p. 2. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Provision | Description |
|---|---|
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of secured party's lien or debt | The proposed Interim Order provides for findings of fact binding on the Debtor with respect to the validity, perfection, and amount of the Prepetition Lender's liens and claims, subject to the Review Period for parties-in-interest.  Interim Order at p. 5-6 (Recital E). |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | Subject to entry of the Final Order, the DIP Lender shall not be subject to surcharge under section 506(c) of the Bankruptcy Code.  Interim Order at p. 23-24. |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable law | The Debtor waives any right it may have to seek authority: (i) to obtain postpetition loans or other financial accommodations, other than from the DIP Lender or as otherwise may be expressly permitted pursuant to the DIP Loan Documents, (ii) to propose, support or have a chapter 11 plan that does not provide for the indefeasible payment in cash, in full satisfaction of DIP Obligations on the effective date of such chapter 11 plan, or (iii) to seek relief under the Bankruptcy Code to the extent such relief would directly restrict or impair the rights and remedies of the DIP Lender under the Interim Order and the other DIP Loan Documents.  Interim Order at p. 21-22. |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract | The DIP Financing Agreement provides for a global release of all claims by the Debtor against the Prepetition Lender, in its capacity as such, subject to the Review Period.  DIP Financing Agreement at p. 6. |
| Waivers of procedural requirements, including those of foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens | The Interim Order provides that the DIP Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Financing Agreement and the Interim Order.  Interim Order at p. 15-16. |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | None. |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order | None. |
| Provisions providing for the paying down of prepetition principal owed to a creditor | The DIP Financing Agreement provides, subject to entry of the Final Order, for a roll-up and repayment of the obligations under the Prepetition Credit Agreement.  DIP Financing Agreement at p. 2. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Provision | Description |
|---|---|
| Findings of fact on matters extraneous to the approval process | None. |
| Provisions granting liens to the prepetition secured creditor on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549 | None. |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | The DIP Financing Agreement provides, subject to entry of the Final Order, for a roll-up and repayment of the obligations under the Prepetition Credit Agreement.  DIP Financing Agreement at p. 2. |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out | Committee fees are set forth in the Budget at lesser amounts than the Debtor's professionals.  *See* Budget; Interim Order at p. 18-19. |
| Provisions priming any secured lien. | The DIP Facility primes the Prepetition Credit Agreement, which is paid through the DIP Facility.  Interim Order at p. 12, 14-15. |

**IV.**

**BACKGROUND**

**A.    Jurisdiction and Venue**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    General Background**

On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to

operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case.

As noted above, the Debtor designs and manufactures piezoelectric ceramics, transducers and

sonar equipment sold primarily to military, commercial, and industrial customers in the United

States and internationally.  The Debtor currently employs over 200 people.

Additional factual background regarding the Debtor, including its current and historical

business operations and the events precipitating its chapter 11 filing, is set forth in detail in the

Tiffany Declaration filed contemporaneously with this Motion and incorporated herein by reference.

**C.**     **The Debtor's Prepetition Secured Debt**

Prior to the Petition Date, the Debtor was party to and a borrower under the *Loan and

Security Agreement* dated April 20, 2016 (the "Prepetition Credit Agreement") with Blue Wolf

Capital Fund II, L.P., as lender and secured party (the "Prepetition Lender") and all other documents,

agreements, notes, and instruments executed and/or delivered with, to, or in favor of the Prepetition

Lender in connection with the Prepetition Credit Agreement prior to the Petition Date (collectively,

as amended, modified, or supplemented and in effect, the "Prepetition Financing Agreements").

As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the

Prepetition Financing Agreements, on account of extensions of credit in the principal amount of

$2,860,000, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing

Agreements) and, to the extent set forth in the Prepetition Financing Agreements, costs, expenses,

fees (including reasonable attorneys' fees and legal expenses), and any other charges (collectively

the "Prepetition Debt").[3]

To secure the Prepetition Debt, the Debtor granted security interests and liens (collectively,

the "Prepetition Liens") to the Prepetition Lender, in, to, and upon the Prepetition Collateral, which

constitutes substantially all of the Debtor's personal property and is comprised of the "Collateral" as

defined in the Prepetition Credit Agreement.  The Prepetition Liens have priority over all other liens,

---

[3]  The acknowledgments and agreements by the Debtor of the Prepetition Debt and the related liens, rights, priorities, and
protections granted to or in favor of the Prepetition Lender, as set forth in the Interim Order and in the Prepetition
Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Lender in this case in respect of the
Prepetition Debt.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

except those liens that are valid, properly perfected, unavoidable, and senior to the Prepetition Liens

identified on Schedule A to the DIP Financing Agreement (collectively, the "Permitted Prior

Liens").

Pursuant to the Prepetition Credit Agreement, the Prepetition Lender made certain loans to

the Debtor. These advances were required over the past few months in order to maintain the

Debtor's assets pending the ongoing restructuring process.

Aside from the foregoing secured indebtedness, the Debtor has no outstanding secured debt.

## V.

## PROPOSED DIP FINANCING

**A.      The DIP Facility and Use of Cash Collateral
         are Critical to the Debtor's Continued Operations**

The Debtor requires immediate access to the DIP Facility and cash collateral in order to

sustain its ongoing operations and administer this chapter 11 case. The Debtor is currently an

operating design and manufacturing business with over 200 employees. The Debtor has a variety of

vendors that depend on the Debtor to satisfy its obligations, which the Debtor fully intends to do as

to all administrative expenses. The DIP Facility provides the Debtor with access to critical funding

to operate its business and administer this chapter 11 case. Absent immediate funding through the

DIP Facility and associated use of cash collateral, the Debtor would be forced to immediately

liquidate and convert this case to chapter 7, which would have an adverse effect on the Debtor's

estate and its employees, vendors, and other constituents.

**B.      The Debtor's Selection of the DIP Lender**

Although the DIP Lender is the Prepetition Lender and an insider of the Debtor, the Debtor

and the DIP Lender are separately represented by counsel and the Debtor has appointed an

independent Chief Restructuring Officer. Prior to agreeing to enter into the DIP Facility with the

DIP Lender, the Debtor contacted alternative funding sources. The Debtor was advised that any

provision of credit was unavailable or would be on substantially less attractive credit terms than

those offered by the DIP Lender through the DIP Facility. As a result, the Debtor and its

professionals negotiated with the DIP Lender and its professionals as to the terms of the DIP Facility

1   and the proposed Interim Order, including consensual priming of the obligations under the

2   Prepetition Credit Agreement and access to cash collateral.  Such negotiations were conducted at

3   arms' length and in good faith.  Ultimately, the proposed DIP Facility was presented to, and

4   approved by, the Chief Restructuring Officer.  The Debtor believes, in the exercise of its sound

5   business judgment, that the DIP Facility and the other terms of the proposed Interim Order are the

6   best credit terms currently available to this estate.

7                                                                **VI.**

8                                                    **BASIS FOR RELIEF**

9   **A.**     **The DIP Facility Should Be Approved Under 11 U.S.C. §§ 364(c), 364(d)(1)**

10          Pursuant to sections 364(c) and 364(d)(1) of the Bankruptcy Code, the Debtor requests

11  authority to enter into the DIP Financing Agreement as an administrative expense, having priority

12  over other administrative expenses and secured by a senior lien on substantially all of the property of

13  the Debtor's estate, subject to the Carve-Out and the Permitted Prior Liens.  The DIP Facility will

14  prime and be senior to the obligations under the Prepetition Credit Agreement, which will be

15  satisfied through a roll-up under the DIP Facility.  The Debtor needs cash to meet ongoing

16  obligations necessary to run its business and administer its chapter 11 case.  Under the proposed DIP

17  Facility and associated Interim Order and Final Order, the Debtor will have access to sufficient

18  funding to maximize the value of this estate for the benefit of all constituents.

19          Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of business

20  judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the

21  borrowing is in the best interest of the estate.  *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38

22  (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to

23  exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko

24  Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where

25  debtor's best business judgment indicated financing was necessary and reasonable for benefit of

26  estate).

27          Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

28                  (c)  If the trustee [or debtor in possession] is unable to obtain
                    unsecured credit allowable-under section 503(b)(1) of this title as an

                                                                15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1)  with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:

(2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3)  secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans.  Pursuant to section 364(d)(1) of the Bankruptcy Code, the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

(1)    the trustee is unable to obtain such credit otherwise; and

(2)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

In satisfying the standards of section 364 of the Bankruptcy Code, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available under sections 364(a) and (b) of the Bankruptcy Code.  *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").  Instead, a debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987).  In *In re Sky Valley, Inc.*, 100 B.R. 107, 112-13 (Bankr. N.D. Ga. 1988), the bankruptcy court stated that "it would be unrealistic and unnecessary to require Debtors to conduct such an exhaustive search for financing" where the business suffered from financial stress, had little or no unencumbered property, and the primary property was subject to numerous liens, and thus the debtors' approach of only four

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

lenders was sufficient under such circumstances. *See also In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (section 364(d)(1)(A) of the Bankruptcy Code satisfied where two banks refused to provide unsecured credit to debtor); *See also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (element satisfied where "specialist in commercial lending practices . . . explained that most banks lend money only in return for a senior secured position.  The debtor cannot obtain financing secured by a lien on unencumbered property . . . because there is no property in the estate which is not already subject to a lien.").

The Debtor cannot obtain the financing via unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code.  Hence, the Debtor is required to obtain secured financing under the DIP Facility.

The liens that the Debtor proposes to grant to the DIP Lender to secure repayment of the DIP Facility will prime the existing prepetition secured debt of the Prepetition Lender, which consents to the priming proposed hereby and which debt will be paid as part of a roll-up under the DIP Facility. Despite efforts to locate alternative funding sources, the Debtor does not have access to financing on better terms than the proposed DIP Facility.  Notably, there are no fees associated with the DIP Facility and interest will accrue at a reasonable rate of 10% per annum.

As indicated above, section 364(c) of the Bankruptcy Code enumerates certain incentives that a bankruptcy court may grant to postpetition lenders.  Such incentives are not exhaustive. Bankruptcy courts frequently have authorized the use of inducements not specified in the statute. *See, e.g., In re Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order that prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to postpetition lender), *aff'd*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364"); *In re Antico Mfg. Co.*, 31 B.R. 103 (Bankr. E.D.N.Y. 1983) (authorizing lien on prepetition collateral to secure postpetition indebtedness).

The Debtor proposes to grant the DIP Lender and the Prepetition Lender certain enhancements in the form of a roll-up of the Prepetition Debt (subject to entry of the Final Order),

17

senior liens against the Debtor's prepetition and postpetition assets, debt and security

acknowledgements, releases, and waivers of rights under sections 506(c) and 552 of the Bankruptcy

Code. The Debtor believes that such enhancements are reasonable in return for the funding available

under the DIP Facility.

In short, the Debtor respectfully submits that the DIP Facility satisfies sections 364(c) and (d)

of the Bankruptcy Code. The best credit terms available to the Debtor are those set forth in the DIP

Facility. Thus, the Debtor believes that it is fair, reasonable and necessary for the Court to approve

the DIP Facility and enter the Interim Order (and subsequent to the Final Hearing, the Final Order).

In addition to representing the best terms presently available to Debtor, the proposed financing is

also in the best interests of the Debtor's estate. The DIP Facility will provide the Debtor needed

funding to maintain and operate its business, pay employees and vendors, and administer the chapter

11 case. The DIP Facility therefore is plainly in the best interests of the Debtor's estate.

Based on the above, the DIP Lender should be accorded the benefits of section 364(e) of the

Bankruptcy Code in respect of the DIP Facility as the DIP Lender has offered to extend such

financing in good faith. Further, section 364(e) provides a lender with a presumption of good faith.

*Weinstein, Eisen, Weiss LLP v. Gill* (*In re Cooper Common, LLC),* 424 F.3d 963, 969 (9th Cir.

2005).

**B.      The Debtor Should Be Granted Access to Cash Collateral Under 11 U.S.C. § 363(c)(1)**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy

Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section
> . . . 1108 . . . of this title and unless the court orders otherwise, the
> trustee [or debtor in possession] may enter into transactions, including
> the sale or lease of property of the estate, in the ordinary course of
> business, without notice or hearing, and may use property of the estate
> in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in

possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title,

securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

entity other than the estate has an interest . . ..'' 11 U.S.C. § 363(a). Section 363(c)(2) of the

Bankruptcy Code permits the debtor in possession to use, sell or lease cash collateral under

subsection (c)(1) only if either of two alternative circumstances exist:

> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or
> lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Here, the DIP Lender and the Prepetition Lender consent to the use of cash collateral

consistent with the Budget and such use is absolutely necessary in the Debtor's business judgment to

continue operations and maximize the value of this estate.

## VII.

## INTERIM ORDER AND FINAL HEARING

Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Bankruptcy Rules 4001-2(e)

and (f), the Debtor requests that the Court enter the Interim Order to prevent immediate and

irreparable harm to the estate pending a final hearing and set a date for the Final Hearing within

thirty (30) days of the Petition Date.

The urgent need to preserve the Debtor's business, and avoid immediate and irreparable harm

to the estate, makes it imperative that the Debtor be authorized to access postpetition financing up to

$1,250,000 and use cash collateral, pending the Final Hearing, in order to continue its operations and

administer the chapter 11 case. Without the ability to borrow funds under the DIP Financing

Agreement and use cash collateral, the Debtor would be unable to meet its postpetition obligations or

to fund its working capital needs, thus causing irreparable harm to the value of the Debtor's estate

and ending the Debtor's reorganization efforts. Accordingly, the Debtor respectfully requests that,

pending the hearing on the Final Order, the Interim Order be approved in all respects and that the

terms and provisions of the Interim Order be implemented and be deemed binding and that, after the

Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final

Order be implemented and be deemed binding

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VIII.

## NOTICE

The Motion has been served on the following parties or, in lieu thereof, on their counsel, if known:  (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, (c) the DIP Lender and Prepetition Lender, and (d) any known parties that assert a lien on the Debtor's assets.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

# IX.

## CONCLUSION

Based upon the foregoing, the Debtor requests entry of the Interim Order and the Final Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2:  (i) authorizing the Debtor to (a) enter into and incur credit under the DIP Financing Agreement with the DIP Lender, (b) use cash collateral, and (c) provide adequate protection to the Prepetition Lender, in accordance with the provisions hereof, and (ii) scheduling the Final Hearing.

Dated:  October 14, 2016                    PACHULSKI STANG ZIEHL & JONES LLP


                                            By    */s/ Jeffrey W. Dulberg*
                                                  Jeffrey W. Dulberg

                                                  [Proposed] Attorneys for Channel Technologies
                                                  Group, LLC, Debtor and Debtor in Possession

**EXHIBIT A**

**(Proposed Interim Order)**

Laura Davis Jones (DE Bar No. 2436) (*pro hac pending*)
Jeffrey W. Dulberg (CA Bar No. 181200)
Victoria A. Newmark (CA SBN 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  ljones@pszjlaw.com
             jdulberg@pszjlaw.com
             vnewmark@pszjlaw.com

Attorneys for Channel Technologies Group, LLC,
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| In re: | Case No.: 16-_____ (___) |
|---|---|
| CHANNEL TECHNOLOGIES GROUP, LLC | Chapter 11 |
|                            Debtor. | **INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1) AUTHORIZING POSTPETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING** |
| | Date:      TBD<br>Time:     TBD<br>Place:    Courtroom [TBD]<br>            1415 State Street<br>            Santa Barbara, CA  93101<br>**JUDGE:**   **TBD** |

Channel Technologies Group, LLC, the above-captioned debtor and debtor in possession (the *"Debtor"*), having moved on October 14, 2016 (the *"Motion"*) for an order authorizing it to (i) incur post-petition secured indebtedness, (ii) repay the Prepetition Debt (as defined below), (iii) grant security interests and superpriority claims, and (iv) grant adequate protection, pursuant to

1

sections 105(a), 362, 363, and 364(c), (d), and (e) of title 11 of the United States Code, 11 U.S.C.

§§ 101-1532 (as amended, the **"Bankruptcy Code"**), and Rules 2002, 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and having sought the following relief:

(a)      the Court's authorization, pursuant to sections 105(a), 362, 363, and 364(c), (d), and

(e) of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001 and 9014 for the Debtor, in its

capacity as borrower (the **"Borrower"**) to implement the debtor in possession financing outlined in

the attached term sheet (the **"DIP Financing Agreement"**), a copy of which is attached hereto as

**Exhibit "1"**, with  Blue Wolf Capital Fund II, L.P. (the **"DIP Lenders"**), to obtain extensions of

credit on a priming senior secured, term basis, in an aggregate principal amount not to exceed

$5,000,000 at any time outstanding (the **"DIP Facility"**) on the terms of the DIP Financing

Agreement (together with any and all documents, agreements and instruments delivered pursuant

thereto or executed or filed in connection therewith, as may be amended hereafter from time to

time, collectively, the **"DIP Loan Documents"**);

(b)      the Court's ordering, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the

Bankruptcy Code, that the obligations of the Debtor under the DIP Loan Documents (collectively,

the **"DIP Obligations"**) are:

i.      granted superpriority administrative claim status, having priority over any

and all administrative expenses of the kinds specified in or arising or ordered under sections

105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order), 507, 546(c),

726, 1113, and 1114 of the Bankruptcy Code, subject only to payment of the Carve-Out[1]

and the Permitted Prior Liens on the terms and conditions set forth herein; and

ii.      secured under sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy

Code by valid and fully perfected, first priority priming liens on and senior security interests

in all of the property, assets or interests in property or assets of the Debtor, and all "property

of the estate" (within the meaning of the Bankruptcy Code) of the Debtor, of any kind or

nature whatsoever, real or personal, tangible or intangible or mixed now existing or

---

[1]  Defined terms not defined in the body of this order shall have the meaning set forth in the DIP Financing Agreement.

DOCS_SF:92071.6 13817/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

hereafter acquired or created, subject only to payment of the Carve-Out and the Permitted Prior Liens;

(c)    the Court's approval pursuant to sections 363 and 364 of the Bankruptcy Code of the form and manner of adequate protection set forth herein and in the DIP Financing Agreement to be provided to the Prepetition Lender (as defined below);

(d)    the Court's scheduling an interim hearing (the ***Interim Hearing***") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an interim order in the form hereof (this ***Interim Order***") which, among other things, (i) approves, on an interim basis, the post-petition financing to be made pursuant to the DIP Loan Documents, (ii) authorizes the Debtor to obtain funding under the DIP Facility on an interim basis (the "***Interim Loan***"), in accordance with the DIP Loan Documents and following the entry of this Interim Order, in the aggregate principal amount of up to $1,250,000 (the ***Maximum Interim Borrowing***") which during any time period shall be limited to the borrowings projected to be drawn by the Debtor under the initial approved budget attached hereto as **Exhibit "2"** (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Financing Agreement, the "***Budget***"), and (iii) grants adequate protection to the Prepetition Lender as provided in this Interim Order and the DIP Financing Agreement;

(e)    the Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing (the "***Final Hearing***") to consider entry of a final order (the "***Final Order***") which, among other things, (i) approves, on a final basis, the DIP Loan Documents, (ii) authorizes, on a final basis, the post-petition financing to be made pursuant to the DIP Loan Documents in an aggregate principal amount up to $5,000,000, and (iii) authorizes the Debtor to repay in full the Prepetition Debt, and (iv) authorizes and grants, on a final basis, adequate protection to the Prepetition Lender;

(f)    the Court's finding, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Interim Hearing is sufficient having been given to (i) the United States Trustee (the "***U.S. Trustee***"), (ii) counsel to the DIP Lender, (iii) counsel to any known secured creditors of record, (iv) counsel to the Prepetition Lender, (v) the twenty (20) largest unsecured creditors of the Debtor

3

(collectively, the **_"Notice Parties"_**); and such notice being sufficient and adequate, and no other or further notice being required; and

(g)    the Interim Hearing having been held; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

IT IS HEREBY FOUND:

## I.    **Procedural Findings of Fact**

A.    **Petition Date.**    On October 14, 2016 (the "**_Petition Date_**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California, Northern Division (the "**_Court_**").    The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in the Chapter 11 Case.

B.    **Jurisdiction and Venue.**    This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2).    Venue for the Chapter 11 Case and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation.**    No official committee (a "**_Committee_**") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Case.

D.    **Notice.**    The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014.    Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, to certain parties in interest, including: (i) the United States Trustee; (ii) those creditors holding the twenty (20) largest

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

unsecured claims against the Debtor's estate; (iii) the Prepetition Lender; (iv) the DIP Lender; (v) the attorneys for the Prepetition Lender and the DIP Lender; and (vi) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001.

**II.    Debtor's Acknowledgements and Agreements**

E.    Without prejudice to the rights of parties in interest as set forth in Paragraphs 23-24 below, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E(1) through E(6) hereof shall be referred to herein as the "***Debtor's Stipulations***"):

(1)    **Prepetition Credit Agreements**. Prior to the commencement of the Chapter 11 Case, the Debtor was party to and a borrower under the Loan and Security Agreement dated April 20, 2016 (the "***Prepetition Credit Agreement***") with Blue Wolf Capital Fund II, L.P. as Lender and secured party (the "***Prepetition Lender***") and all other documents, agreements, notes, and instruments executed and/or delivered with, to, or in favor of the Prepetition Lender in connection with the Prepetition Credit Agreement prior to the Petition Date (collectively, as amended, modified, or supplemented and in effect, the "***Prepetition Financing Agreements***").

(2)    **Prepetition Debt Amounts**.  As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the Prepetition Financing Agreements, on account of extensions of credit in the principal amount of $2,860,000, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing Agreements) and, to the extent set forth in the Prepetition Financing Agreements, costs, expenses, fees (including reasonable attorneys' fees and legal expenses), and any other charges (collectively the "***Prepetition Debt***").[2]

(3)    **Prepetition Collateral**. To secure the Prepetition Debt, the Debtor granted security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Lender, in, to, and upon substantially all of the Debtor's personal property, comprised of the "Collateral" as defined in the Prepetition Security Agreement. The Prepetition Liens have priority over all other liens, except those Liens that are valid, properly perfected, unavoidable, and senior to the Prepetition Liens identified on Schedule A to the DIP Financing Agreement (collectively, the "***Permitted Prior Liens***").

(4)    **Prepetition Liens**.

(a)    As of the Petition Date, the Debtor maintains that:

---

[2]  The acknowledgments and agreements by the Debtor of the Prepetition Debt and the related liens, rights, priorities, and protections granted to or in favor of the Prepetition Lender, as set forth herein and in the Prepetition Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Lender in this Case in respect of the Prepetition Debt.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:92071.6 13817/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i)    the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens on such property of the Debtor regarding which perfection was achieved through the filing of financing statements with the Secretary of State for the State of California on or about April 22, 2016 (the "***Prepetition Collateral***"), and, as to the Prepetition Collateral, are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

(ii)    the Prepetition Debt constitutes legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code),

(iii)    no offsets, defenses, or counterclaims to any of the Prepetition Debt exists,

(iv)    no portion of the Prepetition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and

(v)    the Prepetition Debt constitutes an allowable secured claim.

(b)    On the date that this Interim Order is entered, the Debtor shall have waived, discharged, and released the Prepetition Lender, together with its affiliates, agents, attorneys, officers, directors, and employees, in their capacities as such, of any right the Debtor may have:

(i)    to challenge or object to any of the Prepetition Debt,

(ii)    to challenge or object to the security for the Prepetition Debt, and

(iii)    to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Agreements.

(c)    The Debtor does not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Debt, the Prepetition Financing Agreements, or the Prepetition Liens, or any claim of the Prepetition Lender pursuant to the Prepetition Financing Agreements.

(5)    **Cash Collateral.**  The Prepetition Lender has a security interest in and Lien on that Cash Collateral, as that term is defined in §363(a) of the Bankruptcy Code, that constitutes Prepetition Collateral or the proceeds of the Prepetition Collateral to secure the Prepetition Debt.

(6)    **Priming of DIP Facility**.  In entering into the DIP Loan Documents, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations have been paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its reasonable discretion have been made) and the DIP Lender no longer is

6

obligated to extend financial accommodations under the DIP Financing Agreement, the Debtor shall not in any way prime or seek to prime the security interests and DIP Liens (as defined below) provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

**III.**    **Findings Regarding the Postpetition Financing**

F.    **Need for Postpetition Financing**.   An immediate need exists for the Debtor to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, creditors, equity holders, and the possibility for a successful reorganization or sale of the Debtor's assets.

G.    **No Credit Available on More Favorable Terms**.  The Debtor has been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a lien, or

(4)    credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien, in each case, on more favorable terms and conditions than those provided in the DIP Loan Documents and this Interim Order.

The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Prepetition Liens or Permitted Prior Liens are valid, senior, perfected, or unavoidable.  Moreover, nothing shall prejudice the following:

(1)    the rights of any party-in-interest, including, but not limited to, the Debtor and/or the DIP Lender, and any Committee appointed pursuant to section 1102 of the Bankruptcy Code, to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens as and to the extent provided in this Interim Order, or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

(2)     the rights of any Committee appointed pursuant to section 1102 of the Bankruptcy Code or of any party-in-interest to challenge the validity, priority, perfection, and extent of the Prepetition Liens as and to the extent provided in this Interim Order.

I.     **Adequate Protection for Prepetition Lender.**  As a result of the grant of the DIP Liens, subordination to the Carve-Out and the use of Cash Collateral authorized herein, the Prepetition Lender is entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtor's use, sale, or lease of the Prepetition Collateral (including Cash Collateral) during the Chapter 11 Case.

J.     **Adequacy of the Budget.**  The Budget is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

K.     **Sections 506(c) and 552 of the Bankruptcy Code**.  In light of their agreement to subordinate their Liens and superpriority claims to the Carve Out, the DIP Lender and the Prepetition Lender are each entitled to: (a) upon entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (b) all rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of the Final Order, the Debtor shall not assert that the "equities of the case" exception shall apply.

L.     **Conditions Precedent to DIP Lender's Extension of Financing.** The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Financing Agreement and the other DIP Loan Documents and subject to the following:

(1)     the entry of this Interim Order, and

(2)     findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (or the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

M.     **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.**  The terms and conditions of the DIP Facility, the DIP Financing Agreement, and the other DIP Loan Documents (i) are fair, reasonable, and the best available under the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

circumstances, (ii) reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtor and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

N.     **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property.  It is in the best interest of the Debtor's estate that the Debtor be allowed to establish the DIP Facility contemplated by the DIP Loan Documents. The Debtor has demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The Motion is granted in accordance with the terms and conditions set forth in this Interim Order, the DIP Financing Agreement, and the other DIP Loan Documents.

## I.     DIP FINANCING

### A.     Approval of Entry into the DIP Loan Documents

2.     The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Loan Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and for the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents.  The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreement and all other DIP Loan Documents as such become due, including, without limitation, reasonable attorneys', financial advisors', and accountants' fees, and disbursements of and incurred by the DIP Lender as and to the extent provided for in the DIP Financing Agreement, which amounts, subject

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

to the provisions of Paragraph 42 below, shall not otherwise be subject to approval of this Court.
Upon execution and delivery, the DIP Loan Documents shall represent valid and binding
obligations of the Debtor enforceable against the Debtor in accordance with their terms.

### B.    Authorization to Borrow

3.    In order to enable it to continue to operate its business during the period between the
entry of this Interim Order and the conduct of the Final Hearing (the "*Interim Period*") and subject
to the terms and conditions of this Interim Order, the DIP Financing Agreement, and the Budget
(subject to any variances thereto permitted under the terms and conditions of the DIP Financing
Agreement), the Debtor is hereby authorized under the DIP Facility to borrow up to a total
committed amount of $1,250,000 in accordance with the terms and conditions of the DIP Financing
Agreement.

### C.    Application of DIP Facility Proceeds

4.    During the Interim Period, the proceeds of the DIP Facility shall be used, in each
case, in a manner consistent with the terms and conditions of the DIP Loan Documents, and in
accordance with and as may be limited by the Budget (subject to any variances thereto permitted
under the terms and conditions of the DIP Financing Agreement), solely as follows:

(a)    pay costs, expenses, and fees of the DIP Lender in connection with the
preparation, negotiation, execution, and delivery of the DIP Financing Agreement and the
other DIP Loan Documents and in connection with the Chapter 11 case;

(b)    for general operating and working capital purposes, for the payment of
transaction expenses, for the payment, or escrow, as applicable, of fees, expenses, and costs,
including, but not limited to, professional fees, incurred by the Debtor in connection with
the Chapter 11 Case, and other proper corporate purposes of the Debtor not otherwise
prohibited by the terms hereof for working capital, capital expenditures, and other lawful
corporate purposes of the Debtor, provided, however, that in no event shall the proceeds of
the DIP Facility be utilized to pursue a Challenge Proceeding (as defined in below) except
to the extent of fees and expenses incurred by professionals engaged by the Committee in
connection with any investigative work conducted by those professionals.

### D.    Conditions Precedent

5.    The DIP Lender shall not have any obligation to make any loan or advance under the
DIP Financing Agreement during the Interim Period unless the conditions precedent to make such
loan under the DIP Financing Agreement have been satisfied in full or waived, as determined by the
DIP Lender, as may be applicable, in its reasonable discretion, in accordance with the DIP

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Financing Agreement.

### E.    The DIP Liens

6.    Effective immediately upon the entry of this Interim Order, the DIP Lender is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Liens (collectively, the "*DIP Liens*") senior and superior in priority to all other secured and unsecured creditors of the Debtor and its estate except as otherwise provided in this Interim Order, upon any and all current and future real or personal property or assets of the Debtor of any nature or type whatsoever (collectively, the "*DIP Collateral*"), including, without limitation:

(i)      all cash and deposit accounts, including, but not limited to, any debtor-in possession account;

(ii)     all accounts receivable;

(iii)    all goods;

(iv)     all plant and equipment,  including equipment, inventory and fixtures;

(v)      all vehicles;

(vi)     all documents, instruments and chattel paper and investment property;

(vii)    all letters of credit and letter-of-credit rights;

(viii)   all intellectual property, including, but not limited to, all customer lists, trademarks, copyrights, brands, know-how, patents and trade secrets;

(ix)     all general intangibles, including, but not limited to, any tax assets;

(x)      all books and records relating to the Collateral;

(xi)     all causes of action under the Bankruptcy Code or applicable non-bankruptcy law, but excluding causes of action and recoveries under Chapter 5 of the Bankruptcy Code and prepetition commercial tort claims ("*Bankruptcy Recoveries*");

(xii)    all leasehold and other real property interests; and

(xiii)   to the extent not covered by clauses (i) through (xii), all other property of the Debtor, whether tangible or intangible and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.**    **DIP Lien Priority**

7.    The DIP Liens granted to the DIP Lender as provided herein, are:

(a)    granted pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

(b)    first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)    subject only, and subordinate to, the Carve-Out and the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Loan Documents.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Case and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to Case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "*Successor Case*", and collectively the "*Successor Case*"), and/or upon the dismissal of the Chapter 11 Case.  The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Debtor of the "equities of the case" exception of section 552 of the Bankruptcy Code and, upon entry of the Final Order, shall not be subject to section 506(c) of the Bankruptcy Code.

**G.**    **Enforceable Obligations**

8.    The DIP Loan Documents shall constitute and evidence the valid and binding obligations of the Debtor, and shall be enforceable against the Debtor, its estate, and any successors thereto, and their creditors in accordance with their terms.

**H.**    **Protection of the DIP Lender and Other Rights**

9.    From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Loan Documents and this Interim Order, and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreement).

12

### I. Superpriority Administrative Claim Status

10. Subject and subordinate to the Carve-Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Case (and any Successor Case) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of a Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment; provided, however, that the DIP Protections shall not attach to or be payable from any Bankruptcy Recoveries.

11. Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

### II. USE OF CASH COLLATERAL

### A. Authorization to Use Cash Collateral

12. Pursuant to the terms and conditions of this Interim Order, the DIP Facility, the DIP Financing Agreement, and the other DIP Loan Documents, and in accordance with and as may be limited by the Budget, the Debtor is authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of this Interim Order and terminating upon notice being provided by the DIP Lender to the Debtor that an Event of Default (as defined below) has occurred and is continuing.

13. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom,

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3

except as otherwise permitted in the DIP Facility under the DIP Financing Agreement and the other

DIP Loan Documents, and in accordance with and as may be limited by the Budget (subject to any

variances thereto permitted under the terms and conditions of the DIP Financing Agreement).

4

**B.**      **Adequate Protection for Prepetition Lender**

5
6
7
8
9

14.      As adequate protection for the interest of the Prepetition Lender in the Prepetition

Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to

the Carve-Out, the Debtor's use of Cash Collateral, and other decline in value arising out of the

Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral, the Prepetition Lender

shall receive adequate protection as follows (collectively, "***Adequate Protection***"):

10
11
12
13
14

(a)      **Adequate Protection Replacement Liens**. Solely to the extent of the diminution in the value of the interest of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the Debtor's post-petition assets to the same extent and with the same priority as were held by the Prepetition Lender in the Prepetition Collateral subject and subordinate only to the Carve Out, the DIP Liens securing the DIP Facility, and the Permitted Prior Liens.

15
16
17
18
19
20
21
22

(b)      **Adequate Protection Superpriority Claim**. Solely to the extent of the diminution in the value of the interests of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have an allowed superpriority administrative expense claim (the "***Adequate Protection Superpriority Claim***") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out, in respect of which it shall be subject and subordinate), in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment; provided, however, that the Adequate Protection Superpriority Claim shall not attach to or be payable from any Bankruptcy Recoveries.

23
24
25

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

26
27
28

(c)      **Adequate Protection Payments**. The Prepetition Lender shall receive additional adequate protection in the form of, and subject to the provisions of paragraph 42, the current payment of the reasonable documented out-of-pocket costs and expenses of its financial advisors and attorneys, which right shall expire at such time as the Prepetition Lender receives indefeasible payment in full of the Prepetition Debt.

P ACHULSKI  S TANG  Z IEHL  &  J ONES  LLP
A TTORNEYS  A T  L AW
L OS  A NGELES , C ALIFORNIA

14

(d) **Access to Records**. In addition to, and without limiting, whatever rights to access the Prepetition Lender has under the Prepetition Financing Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of the Prepetition Lender: (i) to have access to and inspect the Debtor's properties, (ii) to examine the Debtor's books and records, and (iii) to discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors, subject to the Debtor's rights to assert any applicable privilege and any confidentiality restrictions imposed on the Debtor by any third party customer or governmental authority.

**C.** **Section 507(b) Reservation to Seek Further Adequate Protection**

15. Nothing herein shall impair or modify the Prepetition Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Lender in the Prepetition Collateral during the Chapter 11 Case or any Successor Case; provided, however, that any section 507(b) claim granted in the Chapter 11 Case to the Prepetition Lender shall be junior in right of payment to all DIP Obligations and subject and subordinate to the Carve-Out.

**D.** **Section 363(k) Credit Bid Right**

16. The Prepetition Lender, until such time as its liens are avoided by final order of the Bankruptcy Court, and the DIP Lender shall have the right under Bankruptcy Code § 363(k) to credit bid up to the full amount then-outstanding of the Prepetition Debt and the DIP Loan Obligations, as applicable, in connection with any sale of the DIP Collateral, or any portion thereof, whether in connection with a sale under § 363, a plan of reorganization or otherwise (the ***"Credit Bid Right"***).

## III. POSTPETITION LIEN PERFECTION

17. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein.

18.     Notwithstanding the foregoing, the DIP Lender may, in its discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case.

19.     The Debtor shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of liens, and other similar instruments and documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.

20.     The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

21.     The DIP Lender shall, in addition to the rights granted to it under the DIP Loan Documents, be deemed to be the successor-in-interest to, and hold co-equal rights with the Prepetition Lender with respect to all third party notifications in connection with the Prepetition Financing Agreements, all prepetition letters of credit, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

22.     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby

modified pursuant to the terms of the DIP Loan Documents as necessary to

(a)     permit the Debtor to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Loan Documents, the DIP Facility, and this Interim Order,

(b)     permit the DIP Lender to execute, file and record such documents that evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto as the DIP Lender determines, in its discretion, is appropriate;

(c)     authorize the DIP Lender and the Prepetition Lender to retain and apply payments hereunder as provided by the DIP Loan Documents and this Interim Order; and

(d)     exercise such rights and remedies arising from the occurrence of an Event of Default as and to the extent authorized in paragraphs 31-34 below.

## IV.     RESERVATION OF CERTAIN THIRD
## PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS

23.     Nothing in this Interim Order or the DIP Financing Agreement shall prejudice

whatever rights any Committee(s) or any other party-in-interest (other than the Debtor) with

requisite standing that has been sought and granted by this Court may have to commence and

prosecute a Challenge Proceeding:

(a)     to object to or challenge the Debtor's Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and liens of the Prepetition Lender in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Debt, or

(b)     to bring suit against the Prepetition Lender in connection with or related to the Prepetition Debt, or the actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Debt;

provided, however, that any official Committee(s) or any other party-in-interest with requisite

standing must commence a contested matter or adversary proceeding, as applicable, raising such

objection or challenge (each, a "***Challenge Proceeding***"), including, without limitation, any claim

against the Prepetition Lender in the nature of a setoff, counterclaim, or defense to the Prepetition

Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of

the Bankruptcy Code or by way of suit against the Prepetition Lender), by the later of, (x) as to

parties-in-interest other than the Committee, seventy-five (75) days following the Petition Date, and

(y) as to the Committee, the lesser of the sixtieth (60th) day following entry of an order authorizing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

the employment of counsel to the Committee or the ninetieth (90th) day following the Petition Date (in each case, the "**Challenge Period**").

24.    On the date that is the next calendar day after the termination of the Challenge Period (the "**Challenge Period Termination Date**"), in the event that no objection or challenge is raised during the Challenge Period, any and all such challenges and objections by any party (including, without limitation, any official Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) **shall be deemed to have forever waived and be barred**, and the Prepetition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Case and the Debtor's Stipulations shall be binding on all creditors, interest holders, and parties-in-interest.

25.    To the extent any such Challenge Proceeding is filed, the Prepetition Lender shall be entitled to include the costs and expenses, including but not limited to reasonable attorneys' fees and disbursements, incurred in defending the objection or complaint as part of the Prepetition Debt to the extent permitted pursuant to the relevant Prepetition Financing Documents.  To the extent any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Lender shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Debt which shall be reimbursed by the Debtor, including (x) each month as provided for in Paragraph 42, below, and (y) as part of the Adequate Protection Superpriority Claim.

### V.    CARVE OUT AND PAYMENT OF PROFESSIONALS

26.    In all instances, the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claim are subordinate to the **Carve-Out** (as defined below).  The term "**Carve-Out**" means any (i) unpaid fees of the Clerk of the Court and of the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) unpaid fees and expenses of the professionals of the Debtor and any official committee of unsecured creditors retained by an order of the Court pursuant to Section 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "**Professionals**") incurred prior to written notice by the DIP Lender to the Debtor and its

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

counsel of the occurrence of an Event of Default (the "***Trigger Date***"), to the extent such fees and expenses are (a) within the amounts set forth in the Budget approved by the DIP Lender for such period, (b) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (c) not otherwise payable from retainers or any professional expense escrow account established by the Debtor; and (iii) fees and expenses of the Professionals incurred after the Trigger Date in an aggregate amount not to exceed $100,000, to the extent such fees and expenses are (a) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (b) not otherwise payable from retainers or any professional expense escrow account established by the Debtor.  Pending the Trigger Date, the Debtor shall be authorized to fund, on a weekly basis, an escrow account for the payment of Professionals in an amount up to the amount set forth in the Budget for that week.

27.    For the avoidance of doubt, the Carve-Out shall be senior to the DIP Liens, the DIP Superiority Claim, the Adequate Protection Replacement Liens, and the Adequate Protection Superiority Claim, and any and all other forms of adequate protection, Liens, or claims securing the DIP Obligations and/or the Prepetition Debt granted or recognized as valid.  Further, the Carve-Out shall exclude and shall not be used to pay any fees and expenses (x) incurred in connection with any Challenge Proceeding or the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the DIP Lender' Liens in the DIP Collateral, (iii) the Prepetition Debt, (iv) the Prepetition Lender's Liens in the Prepetition Collateral, (v) the Adequate Protection Replacement Liens, or (B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Lender's or the Prepetition Lender's assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Prepetition Collateral or the Adequate Protection Replacement Liens, provided, however, that such exclusion does not encompass any investigative work conducted by the professionals retained by the Committee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

28.    Nothing herein, including the inclusion of line items in the Budget, shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, of any Committee, or of any person or shall affect the right of the DIP Lender or the Prepetition Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

## VI.    COMMITMENT TERMINATION DATE, DIP EVENT OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date

29.    All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "***Commitment Termination Date***"):

(a)    the first anniversary of the Petition Date;

(b)    the effective date of a confirmed plan of reorganization;

(c)    conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

(d)    appointment of a Chapter 11 trustee in the Bankruptcy Case;

(e)    dismissal of the Bankruptcy Case;

(f)    thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such thirty (30) day period;

(g)    the date on which the Court enters a final order approving a post-petition financing between the Debtor and another lender(s) or investor(s) (as the case may be) (other than the DIP Lender);

(h)    consummation of a sale of substantially all of the Debtor's assets, whether under Bankruptcy Code § 363 or otherwise;

(i)    stay, reversal, modification or the granting of relief from either the Interim Order of the Final Order;  and

(j)    five (5) business days after the DIP Lender notifies the Debtor and its counsel in writing, with copies to counsel to any Committee(s) (or if no Committee have been appointed, the Debtor's twenty (20) largest unsecured creditors), and the Office of the United States Trustee of an Event of Default which is not subsequently cured or waived by the end of such notice period.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**B.**     **Events of Default**

30.     Each of following shall constitute an "***Event of Default***", unless otherwise waived

by the DIP Lender in its sole discretion:

a)     The Debtor shall fail to pay any DIP Loan obligation in cash as and when such payment has become due;

b)     Any representation, warranty, report, certificate or other document made or delivered to the DIP Lender pursuant to the DIP Loan Documents or this Interim Order shall have been incorrect in any material respect when made or deemed made;

c)     The failure of the Debtor to comply in any material respect with any covenant, agreement or term and condition of this Interim Order or the DIP Loan Documents;

d)     The Debtor is enjoined, restrained or in any way prevented by the order of any court or any governmental authority from conducting all or any material part of its business for more than three (3) consecutive days;

e)     Any material damage to, or loss, theft or destruction of, any DIP Collateral, whether or not insured, or any strike, lockout, labor dispute, embargo, condemnation, act of God or public enemy, or other casualty (whether or not insured) which causes, for more than three (3) consecutive days, the cessation or substantial curtailment of revenue producing activities by the Debtor, if any such event or circumstance could reasonably be expected to have a material adverse effect;

f)     The entry of an order in the Bankruptcy Case that stays, modifies (in any manner adverse to the DIP Lender), or reverses this Interim Order or which otherwise materially adversely affects, as determined by the DIP Lender in its discretion, the effectiveness of this Interim Order without the express written consent of the DIP Lender;

g)     The conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

h)     The appointment of a trustee for the Debtor;

i)     The dismissal of the Bankruptcy Case;

j)     The entry of any order that provides for relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to realize upon, or to exercise any right or remedy with respect to, any material portion of the Collateral;

k)     The filing of any application by the Debtor without the express written consent of the DIP Lender for the approval of a claim in the Bankruptcy Case which is *pari passu* with or senior to the priority of the claims of the DIP Lender, or there shall arise any such claim under the Bankruptcy Code, other than the Carve-Out;

l)     The filing of any motion by the Debtor seeking, or the entry of any order: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt) for the Debtor from any person other than the DIP Lender (unless the proceeds of such financing are to be used to pay in full in cash all obligations arising under the DIP Loan Documents or this Interim Order); (b) granting a lien on, or security interest in, any of the Collateral, other than with respect to the DIP Loan Documents (unless such

21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

liens are granted in connection with a financing, the proceeds of which are to be applied to the payment in full in cash of all obligations arising under the DIP Loan Documents or this the Interim Order); or (c) permitting recovery of any costs or expenses of preserving or disposing of the Collateral under Bankruptcy Code § 506(c) from any portion of the Collateral;

m)    The Debtor filing a plan of reorganization or of liquidation (and/or seeking approval of a disclosure statement related thereto) or any other pleading seeking the entry of an order confirming a plan of reorganization that does not require payment in full in cash of all obligations under the DIP Loan Documents or this Interim Order on the effective date of such plan of reorganization or liquidation, and as to which DIP Lender has not consented in writing; or

n)    The filing of any pleading by the Debtor challenging the validity, priority, perfection or enforceability the claims or liens arising from or granted pursuant to the DIP Loan Documents or this Interim Order or arising from or granted pursuant to the Prepetition Debt Documents.

## C.    **Rights and Remedies Upon Event of Default**

31.    Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that (i) after the occurrence of any Event of Default, the DIP Lender may, in its discretion, immediately provide written notice thereof to each of (i) the Debtor, (ii) counsel to the Debtor, (iii) counsel for any Committee(s) (or if no Committee has been appointed, the Debtor's twenty (20) largest unsecured creditors), and (iv) the Office of the United States Trustee, absent this Court's determination within five (5) business days following the delivery of such notices that no Event of Default had occurred, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents.

32.    Following the giving of written notice by the DIP Lender of the occurrence of any Event of Default as set forth above and absent entry of an order of the Court finding that no Event of Default had occurred as set forth in the immediately prior paragraph:

(a)    the DIP Loan shall mature and any and all DIP Loan Obligations shall be due and payable in full in cash;

(b)    the Debtor shall make payments to the DIP Lender as provided in the DIP Loan Documents and this Interim Order;

(c)    the DIP Lender shall continue to apply such payments in accordance with the provisions of the DIP Loan Documents and this Interim Order;

(d)    the Debtor shall have no right to use any of funds constituting DIP Collateral or the Proceeds thereof, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve-Out; and

22

(e)    any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended.

33.    Subject to the provisions of Paragraphs 31-32 above, upon the occurrence of an Event of Default, the DIP Lender is authorized to exercise its remedies and proceed under or pursuant to the DIP Loan Documents and applicable law.  All proceeds realized from any of the foregoing shall be applied to the Carve-Out, the DIP Obligations, and the Prepetition Debt under, and in accordance with the provisions of, the DIP Loan Documents, the Prepetition Credit Agreement, and this Interim Order.

34.    Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Lender's or the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor, nor the DIP Lender's rights, as provided in the DIP Financing Agreement, to suspend or terminate advancing funds and granting financial accommodations under the DIP Financing Agreement.

**D.    No Waiver of Remedies**

35.    The delay in or the failure of the Prepetition Lender or the DIP Lender to exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Lender's or the DIP Lender's rights and remedies.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Prepetition Lender or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law.

**VII.    CERTAIN LIMITING PROVISIONS**

**A.    Section 506(c) Claims and Waiver**

36.    Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Lender or the DIP Lender to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Replacement Liens under section 506(c) of the Bankruptcy Code or otherwise.

37.    As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Loan Documents, upon entry of the Final Order, the Debtor (and any successor thereto or any representative thereof, including any trustees appointed in

23

DOCS_SF:92071.6 13817/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Chapter 11 Case or any Successor Case) shall be deemed to have waived any rights or benefits

of section 506(c) of the Bankruptcy Code.

**B.     Proceeds of Subsequent Financing**

38.     Without limiting any other provision of this Interim Order, including, but not limited

to, Paragraph 39 below, if at any time prior to the repayment in full of all DIP Obligations, the

Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers, or any responsible

officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or

364(d) of the Bankruptcy Code in violation of the DIP Loan Documents, then so much of the cash

proceeds derived from such credit or debt and all Cash Collateral as is necessary to satisfy the DIP

Obligations and the Prepetition Debt shall immediately be turned over to the DIP Lender and the

Prepetition Lender.

**C.     Prohibited Orders**

39.     Unless the DIP Lender has provided its prior written consent or all DIP Obligations

and the Prepetition Debt have been indefeasibly paid in full in cash (or will be paid in full in cash

upon entry of an order approving indebtedness described in Paragraph 38 above, or other

arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole and

exclusive discretion have been made), there shall not be entered in the Chapter 11 Case, or in any

Successor Case, any order which authorizes any of the following:

(a)     Any modification, stay, vacation or amendment to the DIP Orders to which
the DIP Lender has not consented;

(b)     A priority claim or administrative expense or unsecured claim against the
Debtor (now existing or hereafter arising or any kind or nature whatsoever, including,
without limitation, any administrative expense of the kind specified in sections 105, 326,
328, 330, 331,  364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114
of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect
of the DIP Obligations, except with respect to the Professional Expense Carve Out;

(c)     Any Lien on any DIP Collateral having a priority equal or superior to the
Lien securing the DIP Obligations, except with respect to the Carve-Out;

(d)     Any order which authorizes the return of any of the Debtor's property
pursuant to section 546(h) of the Bankruptcy Code; or

(e)     Any order that authorizes the payment of any indebtedness (other than those
under the Prepetition Financing Documents or as reflected in the Budget or otherwise
approved by the DIP Lender, in each case incurred prior to the Petition Date), or the grant of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

"adequate protection" (whether payment in cash or transfer of property) with respect to any such indebtedness which is secured by a lien.

## VIII.   OTHER RIGHTS AND OBLIGATIONS

**A.   Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**

40.   Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.

41.   Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Facility are made in reliance on this Interim Order, the obligations owed the DIP Lender prior to the effective date of any stay, modification, or vacation of this Interim Order shall not, as a result of any subsequent order in the Chapter 11 Case or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Interim Order and/or the DIP Loan Documents.

**B.   Prepetition Lender and DIP Lender Expenses**

42.   As provided in the Prepetition Financing Agreements and the DIP Loan Documents, all reasonable out-of-pocket costs and expenses of the Prepetition Lender and the DIP Lender, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of

25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

pocket expenses will be paid by the Debtor.  Payment of such fees shall not be subject to allowance by the Court but shall be subject to the Debtor's receipt of reasonably detailed invoices; <u>provided</u>, <u>however</u>, the Debtor may seek a determination by the Court whether such fees and expenses are reasonable.

**C.** **Binding Effect**

43.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and the Prepetition Lender, the Debtor, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor), any Committee(s) (subject to the provisions of Paragraphs 23-24 above), whether in the Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

**D.** **No Third Party Rights**

44.    Except as expressly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**E.** **No Marshaling**

45.    Neither the DIP Lender nor the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

**F.** **Section 552(b) of the Bankruptcy Code**

46.    Upon entry of a Final Order, the DIP Lender and the Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtor shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender or the Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

**G.** **Amendments**

47.    The Debtor and the DIP Lender, as applicable, may amend, modify, supplement, or waive any provision of the DIP Loan Documents without further approval of the Court unless such

26

amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the amount of the DIP Facility, or (iii) changes the maturity date of the DIP Facility.  Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtor and the DIP Lender and approved by the Court.

**H.**    **Survival of Interim Order**

48.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any plan in the Chapter 11 Case,

(b)    converting the Chapter 11 Case to a Case under chapter 7 of the Bankruptcy Code,

(c)    dismissing the Chapter 11 Case,

(d)    withdrawing of the reference of the Chapter 11 Case from this Court, or

(e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.

49.    The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Loan Documents and any protections granted the Prepetition Lender shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Prepetition Lender shall maintain their priority as provided by this Interim Order until all of the outstanding Prepetition Debt and DIP Obligations have been paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

50.    Unless and until the Prepetition Debt and the DIP Obligations have been indefeasibly repaid in full in cash (or other arrangements for payment of the Prepetition Debt and the DIP Obligations satisfactory to the DIP Lender and the Prepetition Lender, respectively, in their reasonable discretion have been made) and the DIP Facility has been terminated, the protections afforded to the Prepetition Lender and the DIP Lender pursuant to this Interim Order and under the DIP Loan Documents, and any actions taken pursuant thereto, shall survive the entry of any order confirming one or more plan(s) of reorganization or liquidation pursuant to Chapter 11 of the

27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Code in the Debtor's Chapter 11 Case or converting the Chapter 11 Case into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claim shall continue in the Chapter 11 Case and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Replacement Liens, and Adequate Protection Superpriority Claim shall maintain their respective priorities as provided by this Interim Order.

**I.**     **Inconsistency**

51.     In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

**J.**     **Enforceability**

52.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K.**     **Objections Overruled**

53.     All objections to the Motion, to the extent not withdrawn or resolved, are hereby overruled.

**L.**     **Waiver of Any Applicable Stay**

54.     Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**M.**     **Proofs of Claim**

55.     Neither the Prepetition Lender nor the DIP Lender will be required to file proofs of claim in the Chapter 11 Case or in any Successor Case.

**N.**     **Headings**

56.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.**     **Retention of Jurisdiction**

57.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

DOCS_SF:92071.6 13817/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# IX.    FINAL HEARING

The Final Hearing on the Motion shall take place before this Court on \_\_\_\_\_ \_\_, 2016 at \_:\_\_ \_.m. (Prevailing Pacific Time) at the United States Bankruptcy Court for the Central District of California, Northern Division, located at the 1415 State Street, Santa Barbara, California 93101, Courtroom [\_\_\_\_\_].

If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented jointly by the Debtor and by the DIP Lender and entered by this Court.

Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court and serve (so as to be received) such objection no later than _____, 2016 at 4:00 p.m. (Prevailing Pacific Time) on the following parties:

| *Counsel for the Debtor:* | *Office of the U.S. Trustee:* |
|---|---|
| Laura Davis Jones/Jeffrey W. Dulberg/ Victoria A. Newmark PACHULSKI STANG ZIEHL & JONES LLP 10100 Santa Monica Blvd., 13th Floor Los Angeles, CA  90067 Telephone: 310/277-6910 Facsimile: 310/201-0760 E-mail: ljones@pszjlaw.com          jdulberg@pszjlaw.com          vnewmark@pszjlaw.com | Attn: [_____] 128 E. Carillo Street Santa Barbara, CA 93101 Telephone: 805/957-4100 Facsimile:805/957-4103 Email: [_____] |
| *Counsel for the DIP Lender and the Prepetition Lender:* John Monaghan HOLLAND & KNIGHT, LLP 10 Saint James Avenue, 11th Floor Boston, MA  02116 Telephone: 617/573-5834 Facsimile: 617/523-6850 Email: john.monaghan@hklaw.com | |

Dated: October \_\_, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

29

1

## Exhibit "1"

2

**DIP Financing Agreement**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## Debtor-in-Possession Term Loan

## Term Sheet

## October 14, 2016

Debtor (defined below) has requested that the DIP Lender (defined below) provide it with debtor-in-possession financing ("DIP Financing") in order to afford the Debtor liquidity during the pendency of a case (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code that the Debtor intends to commence on or before October 15, 2017 (the date of the commencement of such case, the "Petition Date"). The following contains the terms and conditions upon which DIP Lender will provide such DIP Financing through a new credit facility (the "DIP Credit Facility"), *provided that* the DIP Lender may require that the Debtor execute definitive documentation consistent with this Term Sheet acceptable to the DIP Lender governing the DIP Credit Facility.

Capitalized terms used in this Term Sheet and not otherwise defined shall have the meaning given to such terms in the Loan and Security Agreement, dated as of April 20, 2016 (as amended, supplemented, and otherwise modified from time to time, the "Prepetition Credit Agreement"), among Debtor, BW Piezo Holdings, LLC and Electro-Optical Industries, LLC as co-Debtor and Blue Wolf Capital Fund II, L.P. (the "Prepetition Lender").

## 1. **Summary of Principal Terms and Conditions**

**Debtor:**                    Channel Technologies Group, LLC.

**DIP Lender:**               Blue Wolf Capital Fund II, L.P. (the "DIP Lender").

**Commitment:**          Up to five million dollars ($5,000,000) (the "Commitment").

**Initial Disbursement:**    Upon entry of an interim financing order (the "Interim Order") by the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") under Bankruptcy Code § 364(c) and (d) in form and substance acceptable to the Debtor and DIP Lender incorporating the terms and conditions set forth in this Term Sheet, the DIP Lender shall make available and disburse to the Debtor up to one million two hundred fifty thousand dollars ($1,250,000) of the Commitment pursuant to the Budget (as defined below) (the "Initial Disbursement").

**Final Disbursement:**      Upon entry by the Bankruptcy Court of a final financing order (the "Final Order") under Bankruptcy Code § 364(c) and (d) in form and substance acceptable to the Debtor and the DIP Lender incorporating the terms and conditions set forth in this Term Sheet, the DIP Lender shall make available and disburse the following: i) to the Prepetition Lender, so much of the Commitment as is equal to the Prepetition Debt (as defined below) in full satisfaction thereof; and (ii) the balance of the Commitment shall be made available by the DIP Lender pursuant to the Budget and the provisions of this Term Sheet (the "Final Disbursement").

**Closing Date:**            Closing of the DIP Loan with respect to the Initial Disbursement shall occur as soon as practicable after the entry of the Interim Order, but no later than two (2) business days after entry of such order (the "Initial Closing Date").

Closing of the DIP Loan with respect to the Final Disbursement shall occur as soon as practicable after the entry of the Final Order, but no later than two (2) business days after entry of such order.

**Use of Proceeds:**

Proceeds of the DIP Loan shall be utilized as follows:  (i) general working capital and operational expenses; (ii) administration of the Bankruptcy Case (in each case of (i) and (ii), as projected and in accordance with a 13-week cash flow budget prepared by the Debtor, as such budget may be amended from time to time, in form and substance acceptable to the DIP Lender on a line-by-line basis (the "Budget")); (iii) payment to the Prepetition Lender in satisfaction of the Prepetition Debt upon entry of a Final Order; and (iv) costs, expenses, closing payments, and all other payment amounts contemplated herein.

For the avoidance of doubt, the proceeds of the Prepetition Collateral (as defined below), the funds made available through DIP Loan, the proceeds of the DIP Collateral (defined below) and the Carve-Out (as defined below) shall not be utilized (i) to attack the validity, priority or enforceability of any of the prepetition or post-petition liens or security interests of any lender under the Prepetition Debt Documents or the DIP Loan, (ii) except by the Committee (as defined below) during the Review Period (as defined below), to research, review, analyze or investigate with respect to or in connection with any contemplated or potential litigation, claim, objection or cause of action of any kind or nature whatsoever against the Prepetition Lender or the DIP Lender (whether or not arising from or related to prepetition or post-petition liens, security interests, acts, omissions or other conduct), or (iii) to file, prosecute or otherwise pursue any litigation, claim, objection or cause of action of any kind or nature whatsoever against the Prepetition Lender or the DIP Lender (whether or not arising from or related to prepetition or post-petition liens, security interests, acts, omissions or other conduct).

**Interest:**

Ten percent (10%) per annum on the outstanding balance of the DIP Loan Principal (defined below) (the "Interest").  Interest shall be due and payable on the Due Date (defined below).

**Default Interest:**

Upon the occurrence of an Event of Default (as defined below) and during the continuation of such default, interest shall accrue on any outstanding balance of the DIP Loan Principal (defined below) at twelve percent (12%) per annum (the "Default Interest").

**Costs/ Expenses:**

The Debtor shall reimburse the Prepetition Lender and the DIP Lender for all reasonable costs incurred in connection with the Prepetition Debt, the Prepetition Debt Documents, the DIP Loan and/or the DIP Loan Obligations (as defined below), including, without limitation, legal fees, advisor fees, consultant fees, costs and expenses, collateral valuations, appraisals, surveys, field examinations, third party diligence, lien searches, filing fees, and all other out-of-pocket costs and expenses in any way related to the Prepetition Debt, the

Prepetition Debt Documents, the DIP Loan and/or the DIP Loan Obligations and the enforcement and collection thereof (collectively, the "Costs and Expenses").

**Cash Collateral:**

The Debtor may utilize the Prepetition Lender's and the DIP Lender's Cash Collateral (as defined in Bankruptcy Code § 363) only as follows: (i) general working capital purposes in the ordinary course of business; and (ii) administration of the Bankruptcy Case (in each case of (i) and (ii) subject to and in accordance with the Budget). Prior to requesting a disbursement under the DIP Loan, the Debtor will utilize Cash Collateral, provided, however, the Debtor may draw upon the DIP Loan if, at any time, the Cash Collateral balance is less than an amount necessary to satisfy expenditures for the subsequent two week period in the Budget.

**Prepetition Debt:**

"Prepetition Debt" shall mean any and all principal, accrued and unpaid interest (non-default and default rate interest, as applicable), reasonable costs and expenses, and any other amounts due under and evidenced by the Prepetition Credit Agreement and any and all other documents or instruments executed or issued in connection with the transaction evidenced in the Prepetition Credit Agreement (collectively, the "Prepetition Debt Documents"). Unless otherwise specified, all capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the applicable Prepetition Debt Documents.

The Prepetition Debt, the Prepetition Debt Documents, the payments made by the Debtor and received by the Prepetition Lender and the prepetition liens and security interests of the Prepetition Lender shall not be subject to challenge by the Debtor. The Debtor concedes the amount, validity, extent and priority of such Prepetition Debt, Prepetition Debt Documents, liens and security interests, and waives the right to challenge or seek to avoid such Prepetition Debt, Prepetition Debt Documents, liens and security interests on any basis, including, without limitation, pursuant to Bankruptcy Code §§ 544 through 550. The Debtor represents, warrants and agrees that, as of the Petition Date, the Prepetition Debt is secured by valid senior perfected liens on all assets of the Debtor as to which perfection can be achieved though the filing of a financing statement with the California Secretary of State (the "Prepetition Collateral").

The Debtor acknowledges and agrees that, as of the date hereof, the aggregate amount outstanding under the Prepetition Debt Documents totals $2,860,000, plus unreimbursed costs and expenses, and such amounts shall not be subject to challenge by the Debtor. For the avoidance of doubt, the Prepetition Debt Documents and the prepetition liens and security interests of the Prepetition Lender with respect to the Prepetition Collateral shall remain in full force and effect with the same validity, extent and priority provided thereunder until such time as the Prepetition Debt has been indefeasibly paid in full.

**Adequate Protection:**

As adequate protection of the Prepetition Lender's interest in the Prepetition Collateral, the Prepetition Lender shall receive the following: (i) replacement liens in the Debtor's post-petition assets to the same extent and with the same priority as were held by the Prepetition Lender in the Prepetition Collateral subject and subordinate only to the Carve-Out, the DIP Liens (defined below) and those valid, properly perfected, unavoidable liens senior to the Prepetition Liens identified on Schedule A hereto (the "Permitted Prior Liens"); (ii)  a super-priority administrative expense claim with priority over all claims except those with respect to the Carve-Out and the DIP Super-priority Claim (defined below) (as to both (i) and (ii) only to the extent of diminution in the value of the interests of the Prepetition Lender in the Prepetition Collateral and in neither case shall the replacement liens attach to, or the super-priority claim be payable from, Chapter 5 avoidance actions or prepetition commercial tort claims); (iii) payment in full of the Prepetition Debt with the proceeds of the DIP Loan upon entry of the Final Order; and (iv) reasonable access upon reasonable notice during normal business hours to the Debtor's non-privileged and non-confidential business records and property.

**Term/Maturity:**

Any and all then current outstanding principal amount of the DIP Loan (the "DIP Loan Principal") plus any unpaid accrued Interest or Default Interest (as the case may be) plus any Costs and Expenses and any other amounts due under the DIP Loan, this Term Sheet, the Interim Order and the Final Order (each, a "DIP Loan Obligation" and collectively, the "DIP Loan Obligations") shall be due and payable in full in cash upon the earlier of the following (the "Due Date"): (i) the first anniversary of the Petition Date; (ii) the effective date of a confirmed plan of reorganization; (iii) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; (iv) appointment of a Chapter 11 trustee in the Bankruptcy Case; (v) dismissal of the Bankruptcy Case; (vi) thirty (30) days after the entry of the Interim Order if the Final Order has not been entered prior to the expiration of such thirty (30) day period; (vii) the date on which the Court enters a final order approving a post-petition financing between the Debtor and another lender(s) or investor(s) (as the case may be) (other than the DIP Lender); (viii) consummation of a transaction or, or consummation of a transaction in a series of transactions that will result in, sale of substantially all of the Debtor's non-cash assets, whether under Bankruptcy Code § 363 or otherwise; (ix) stay, reversal, modification or the granting of relief from either the Interim Order of the Final Order;  and (x) five (5) business days after the DIP Lender notifies the Debtor and its counsel in writing of an Event of Default which is not subsequently cured or waived by the end of such notice period. The DIP Lender may extend the Due Date in its sole discretion.

**DIP Collateral:**

The DIP Loan shall be secured by a perfected first priority lien on any and all current and future property of the Debtor of any nature or type whatsoever, subject only to the Carve-Out and the Permitted Prior Liens (the "DIP Liens"), including, without limitation, cash, deposit accounts (including any debtor-in-possession account), accounts receivable, goods, plant and equipment, inventory, fixtures, vehicles, documents, instruments, chattel paper, investment property (including, without limitation, ownership interests in corporations,

partnerships and limited liability companies), vehicles, intellectual property, customer lists, trademarks, copyrights, brands, know-how, patents, trade secrets, letters of credit, letter credit rights, real property and/or leasehold rights, general intangibles including tax assets, books and records relating to the DIP Collateral (defined below), personal property, any causes of action under the Bankruptcy Code or applicable non-bankruptcy law (excluding causes of action and recoveries pursuant to Chapter 5 of the Bankruptcy Code and prepetition commercial tort claims), all other tangible and intangible assets, and any and all proceeds of the foregoing (collectively the "DIP Collateral"). The liens granted hereunder shall be automatically perfected upon entry of the Interim Order without need for any further action by the DIP Lender or the Debtor, provided, however, that the DIP Lender may take, and the Debtor shall provide such reasonable cooperation as the DIP Lender may request, such action as it, in its sole discretion, deems appropriate to evidence perfection of the liens granted hereunder including, but not limited to, executing, for itself and as attorney-in-fact for the Debtor, and recording, financing statements, leasehold mortgages, account control agreements and documentation necessary to obtain a notation of lien on vehicle certificates of title.

**Super-Priority:**

The DIP Loan shall be authorized and approved by the Bankruptcy Court pursuant to Bankruptcy Code § 364(c)(1) to be incurred as, and shall constitute, claims with a priority over all administrative expenses of the kind specified in Bankruptcy Code § 503(b) or 507(b) (the "DIP Super-priority Claim"), provided that such DIP Super-priority Claim shall not be payable from causes of action and recoveries pursuant to Chapter 5 of the Bankruptcy Code and prepetition commercial tort claims. The security interests and liens in the DIP Collateral securing the DIP Loan shall be authorized and approved by the Court pursuant to Bankruptcy Code § 364(c)(2), (3), and 364(d) to constitute a lien on and in the DIP Collateral ranking senior to all other claims against and liens on property of the Debtor, except for the Carve-Out as defined below and the Permitted Prior Liens (the "Priming Lien"). The Priming Lien shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the DIP Lender.

**Carve-Out:**

Upon the occurrence and during the continuance of an Event of Default, the super-priority administrative expense claims and the liens granted to the DIP Lender hereunder shall be subject and subordinate only to the Carve-Out and the Permitted Prior Liens. "Carve-Out" means any (i) unpaid fees of the Clerk of the Court and of the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) unpaid fees and expenses of the professionals of the Debtor and any official committee of unsecured creditors retained by an order of the Court pursuant to Section 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Professionals") incurred prior to written notice by the DIP Lender to the Debtor and its counsel of the occurrence of an Event of Default (the "Trigger Date"), to the extent such fees and expenses are (a) within the amounts set forth in the Budget approved by the DIP Lender for such period, (b) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (c) not otherwise payable from retainers or any professional expense escrow account established by the

Debtor; and (iii) fees and expenses of the Professionals incurred after the Trigger Date in an aggregate amount not to exceed $100,000, to the extent such fees and expenses are (a) subsequently allowed by the Court under Sections 330, 331 or 363 of the Bankruptcy Code, and (b) not otherwise payable from retainers or any professional expense escrow account established by the Debtor. Pending the Trigger Date, the Debtor shall be authorized to fund, on a weekly basis, an escrow account for the payment of Professionals in an amount up to the amount set forth in the Budget for that week.

**Section 506(c) Waiver:**

The Final Order (as defined below) shall include a ruling that no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

**Releases:**

The Interim Order and the Final Order shall each provide that the Debtor releases and waives any and all claims, causes of action, counterclaims, set-offs and defenses of any kind or nature whatsoever against the Prepetition Lender and the DIP Lender, in such capacities, relating to the Prepetition Debt, the Prepetition Debt Documents, the DIP Loan and/or the claims, liens, security interests, acts, omissions or conduct of the Prepetition Lender or the DIP Lender, in such capacities, on or before the Initial Closing Date or Final Closing Date as applicable. Upon the entry of the Final Order and subject to the Review Period, the release set forth in the Interim Order shall become binding on all other creditors and parties-in-interest.

**Representations and Warranties:**

The Debtor shall be deemed to have made those representations and warranties that are usual and customary in transactions of this nature, including, without limitation, the following: (i) good standing of the Debtor; (ii) no consent or approval required other than the Interim Order and Final Order; (iii) due authorization, execution and delivery of loan documents; (iv) no violation of material agreements entered into after the commencement of the Bankruptcy Case; (v) no violation of law as a result of the execution of the DIP Loan Documents; (vi) no liens on the assets of the Debtor that are senior to or *pari passu* with the liens securing the Prepetition Debt other than the Permitted Prior Liens; (vii) compliance with applicable laws and regulations; (viii) no material change in business (except as contemplated by the Budget); (ix) no unstayed litigation that is reasonably likely to have a material adverse effect on the operations of the Debtor taken as a whole; (x) no information furnished by Debtor to the DIP Lender or the Court containing any material misstatement of fact or omitting to state a material fact necessary to make the statements therein not materially misleading; and (xi) post-petition taxes paid to the extent required by law.

**Covenants:**          The Debtor shall comply with all of the following covenants:

1. The Debtor shall promptly provide the DIP Lender with updates of any material developments in connection with the Debtor's reorganization efforts in the Bankruptcy Case, whether in connection with an asset sale, plan of reorganization or otherwise;

2. The Debtor shall deliver to the DIP Lender weekly variance reports showing actual performance against the Budget (in form and substance reasonably acceptable to the DIP Lender);

3. The Debtor shall operate its business and make disbursements in accordance with the Budget (subject to a permitted variance of 20% per line item of disbursements tested on a rolling four week basis and 10% in cumulative disbursements tested on a rolling four week basis), and the Debtor shall satisfy the requirements of the Bankruptcy Code and orders of the Court;

4. The Debtor shall deliver to the DIP Lender copies of any and all pleadings filed with the Bankruptcy Court contemporaneously with their filing;

5. The Debtor shall deliver to the DIP Lender copies of the monthly operating reports filed with the Office of the United States Trustee within three (3) business days of their delivery;

6. The Debtor shall deliver monthly reports to the DIP Lender showing a comparison of the Budget and the actual performance of the Debtor;

7. Without the prior written consent of the DIP Lender, the Debtor shall not seek or consent to occur any of the following:

   a. Any modification, stay, vacation or amendment to the Final Order to which the DIP Lender has not consented in writing;

   b. Allowance of a priority claim or administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including without limitation, any administrative expense of the kind specified in Bankruptcy Code § 105, 326, 328, 330, 331, 364(c) 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114) equal or superior to the priority claim of the DIP Lender in respect of the obligations hereunder, except with respect to the Carve-Out;

   c. Any lien on any DIP Collateral having a priority equal or superior to the lien securing the obligations hereunder, other than with respect to the Carve-Out or the Permitted Prior Liens; or

d. Any order seeking authority to take any action that is prohibited by the terms of this Term Sheet, the Interim Order or the Final Order or refrain from taking any action that is required to be taken by the terms of this Term Sheet, the Interim Order or the Final Order.

**Event(s) of Default:**

Each of the following shall constitute an "Event of Default", unless otherwise waived by the DIP Lender in its sole discretion:

1. The Debtor shall fail to pay any DIP Loan obligation in cash as and when such payment has become due;

2. Any representation, warranty, report, certificate or other document made or delivered to the DIP Lender pursuant to this Term Sheet, the Interim Order or the Final Order shall have been incorrect in any material respect when made or deemed made;

3. The failure of the Debtor to comply in any material respect with any covenant, agreement or term and condition of the Interim Order, the Final Order or this Term Sheet;

4. The Debtor is enjoined, restrained or in any way prevented by the order of any court or any governmental authority from conducting all or any material part of its business for more than three (3) consecutive days;

5. Any material damage to, or loss, theft or destruction of, any DIP Collateral, whether or not insured, or any strike, lockout, labor dispute, embargo, condemnation, act of God or public enemy, or other casualty (whether or not insured) which causes, for more than three (3) consecutive days, the cessation or substantial curtailment of revenue producing activities by the Debtor, if any such event or circumstance could reasonably be expected to have a material adverse effect;

6. The entry of an order in the Bankruptcy Case that stays, modifies (in any manner adverse to the DIP Lender), or reverses the Interim Order or Final Order or which otherwise materially adversely affects, as determined by the DIP Lender in its discretion, the effectiveness of the Interim Order or Final Order without the express written consent of the DIP Lender;

7. The conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

8. The appointment of a trustee for the Debtor;

9. The dismissal of the Bankruptcy Case;

10. The entry of any order that provides for relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 that permits any creditor to realize upon, or to exercise any right or remedy with respect to, any material portion of the DIP Collateral;

11. The filing of any application by Debtor without the express written consent of the DIP Lender for the approval of a claim in the Bankruptcy Case which is *pari passu* with or senior to the priority of the claims of the DIP Lender, or there shall arise any such claim under the Bankruptcy Code, other than

the Carve-Out and the claims underlying the Permitted Prior Liens;

12. The filing of any motion by Debtor seeking, or the entry of any order in the Bankruptcy Case: (a) permitting working capital or other financing (other than ordinary course trade debt or unsecured debt) for the Debtor from any person other than the DIP Lender (unless the proceeds of such financing are to be used to pay in full in cash all obligations arising under this Term Sheet, the Interim Order and the Final Order); (b) granting a lien on, or security interest in, any of the DIP Collateral, other than with respect to this Term Sheet (unless such liens are granted in connection with a financing, the proceeds of which are to be applied to the payment in full in cash of all obligations arising under this Term Sheet, the Interim Order and the Final Order); or (c) permitting recovery of any costs or expenses of preserving or disposing of the DIP Collateral under Bankruptcy Code § 506(c) from any portion of the DIP Collateral;

13. The Debtor filing a plan of reorganization or of liquidation (and/or seeking approval of a disclosure statement related thereto) or any other pleading seeking the entry of an order confirming a plan of reorganization that does not require payment in full in cash of all obligations under this Term Sheet, the Interim Order and the Final Order on the effective date of such plan of reorganization or liquidation, and as to which DIP Lender has not consented in writing; or

14. The filing of any pleading by the Debtor challenging the validity, priority, perfection or enforceability the claims or liens arising from or granted pursuant to this Term Sheet, the Interim Order or the Final Order or arising from or granted pursuant to the Prepetition Debt Documents.

**Default Remedies:**

Upon five (5) business days' written notice to the Debtor and its counsel of an Event of Default which is not cured or waived during such notice period:

1. The DIP Loan shall mature and any and all DIP Loan Obligations shall become due and payable in full in cash;

2. The DIP Lender's obligation to fund any further disbursements under the DIP Loan shall be terminated; and

3. The DIP Lender shall have relief from the automatic stay otherwise imposed pursuant to Bankruptcy Code § 362 to permit the DIP Lender to realize upon, or to exercise any right or remedy with respect to, the DIP Collateral or any portion thereof, provided, however, that the Debtor shall have five (5) business days from the DIP Lender's delivery to the debtor of notice of the occurrence of an Event of Default to seek and obtain entry of an order of the Bankruptcy Court reinstating the stay solely on the grounds that no default had occurred.

**Prepayment(s):**

The Debtor shall have the right (but not the obligation) to prepay the DIP Loan Obligations (in cash) in whole or in part. There shall be no prepayment penalty or premium.

**Review Period:**

Notwithstanding the provisions of this Term Sheet or the payment of the Prepetition Debt provided for hereunder, the Interim Order and the Final Order shall provide that the Prepetition Lender's claims and liens shall be subject to review and challenge by any (i) party-in-interest (other than the Debtor) for a seventy-five (75) day period following the Petition Date, or (ii) official committee of unsecured creditors (the "<u>Committee</u>") for a period equal to the lesser of the sixtieth (60th) day following entry of an order authorizing the employment of counsel to the Committee or the ninetieth (90th) day following the Petition Date (the "<u>Review Period</u>"), during which periods any party-in-interest or the Committee, as applicable, may commence one or more adversary proceedings or contested matters against the Prepetition Lender challenging the validity, extent, priority, perfection or enforceability of the Prepetition Debt or the Prepetition Lender's liens and security interests, seeking avoidance or disgorgement of any payments made by the Debtor to the Prepetition Lender or otherwise asserting any claims or causes of action against the Prepetition Lender on behalf of the Debtor's estate. A failure to commence such an adversary proceeding or contested matter within the Review Period shall forever bar any party from commencing any such review or challenge thereafter.

**Miscellaneous Reservation of Rights:**

Nothing in this Term Sheet is intended or shall be construed to waive any of the DIP Lender's rights to object to or otherwise contest the reasonableness of the fees and expenses of the Professionals.

The Prepetition Lender, until such time as its liens are avoided by final order of the Bankruptcy Court, and the DIP Lender shall have the right under Bankruptcy Code § 363(k) to credit bid up to the full amount then-outstanding of the Prepetition Debt and the DIP Loan Obligations, as applicable, in connection with any sale of the DIP Collateral, or any portion thereof, whether in connection with a sale under § 363, a plan of reorganization or otherwise (the "<u>Credit Bid Right</u>"). The Credit Bid Right shall be approved by the Court pursuant to the Interim Order and the Final Order, and shall be a condition to consummating the DIP Loan.

**Conditions Precedent:**

The following shall be conditions precedent to the parties' obligations to proceed with the transaction outlined hereunder, unless waived by the DIP Lender:

(i) Execution and delivery, in form and substance acceptable to the DIP Lender, of all documents and agreements evidencing the transactions contemplated herein (collectively, the "<u>DIP Loan Documents</u>");

(ii) Review and approval by the DIP Lender of the Budget, which Budget shall consist of a 13-week cash flow projection prepared by the Debtor and approved by DIP Lender;

---

**TERM SHEET**

(iii) Entry of the Interim Order with respect to the Initial Disbursement, including authority to use cash collateral, in form and substance acceptable to the Prepetition Lender and the DIP Lender;

(iv) Entry of the Final Order no later than the thirtieth (30th) day following the Petition Date with respect to the Final Disbursement, including authority to use cash collateral, in form and substance acceptable to the Prepetition Lender and the DIP Lender and authority for the Debtor to satisfy the Prepetition Debt;

(v) Approval by the DIP Lender of the motion seeking entry of an order approving the DIP Financing; and

(vi) Such other deliverables as the DIP Lender may reasonably require.

**Governing Law:**

The laws of the State of New York shall govern the documents and this proposal.

This Term Sheet is entirely subject to the terms and conditions outlined herein being met to the reasonable satisfaction of the DIP Lender.  Any change or waiver of these terms and conditions may only be made in a writing signed by the DIP Lender.  The parties, signatures below evidence acceptance and agreement to the terms set forth herein.

*Acknowledged, Accepted, and Agreed to:*

**DEBTOR:**

**CHANNEL TECHNOLOGIES GROUP, LLC**

By: David Tiffany
Its: Chief Restructuring Officer

**DIP LENDER:**

**BLUE WOLF CAPITAL FUND II, L.P.**

By:
Its:

**PREPETITION LENDER:**

**BLUE WOLF CAPITAL FUND II, L.P.**

By:
Its:

*Acknowledged, Accepted, and Agreed to:*

**DEBTOR:**                         **CHANNEL TECHNOLOGIES GROUP, LLC**

_____
By:
Its:

**DIP LENDER:**                    **BLUE WOLF CAPITAL FUND II, L.P.**

_____
By:  Adam Blumenthal
Its:  Manager

**PREPETITION LENDER:**

                                   **BLUE WOLF CAPITAL FUND II, L.P.**

_____
By:  Adam Blumenthal
Its:  Manager

## SCHEDULE A
## <u>PERMITTED PRIOR LIENS</u>

"<u>Permitted Prior Liens</u>" shall mean:  (a) liens for taxes, assessments and other governmental charges or levies or the claims or demands of landlords, carriers, warehousemen, mechanics, laborers, materialmen and other like persons arising by law in the ordinary course of business for sums which are not yet due and payable or which are being contested in good faith by appropriate proceedings; (b) liens incurred or deposits made in the ordinary course of business in connection with workmen's compensation, unemployment insurance, or other employee benefits; and (c) purchase money security interests in equipment, furniture and fixtures hereafter acquired in the ordinary course of business provided that the liability secured does not exceed 100% of the cost thereof and the security interest does not extend beyond the asset purchased.

# Exhibit "2"

## Budget

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Channel Technologies Group**
Weekly Cash Flow - Budget

| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending Date | 10/14/16 | 10/21/16 | 10/28/16 | 11/4/16 | 11/11/16 | 11/18/16 | 11/25/16 | 12/2/16 | 12/9/16 | 12/16/16 | 12/23/16 | 12/30/16 | 1/6/17 | 1/13/17 | 1/20/17 | 1/27/17 | 2/3/17 | |
| Post - Petition Accounting Week | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | Total |
| **RECEIPTS** | | | | | | | | | | | | | | | | | | |
| Cash Collections: | | | | | | | | | | | | | | | | | | |
| Accounts Receivables | $ 112,181 | $ 1,258,289 | $ 134,022 | $ 271,541 | $ 263,100 | $ 619,412 | $ 260,836 | $ 1,225,580 | $ 284,188 | $ 65,261 | $ 432,661 | $ - | $ 277,709 | $ 771,908 | $ 946,614 | $ - | $ 60,677 | $ 6,983,977 |
| Milestone/Advances Collections | | | | | | 322,489 | | | | | | | | | | | | 322,489 |
| **Total Receipts** | $ 112,181 | $ 1,258,289 | $ 134,022 | $ 271,541 | $ 263,100 | $ 941,901 | $ 260,836 | $ 1,225,580 | $ 284,188 | $ 65,261 | $ 432,661 | $ - | $ 277,709 | $ 771,908 | $ 946,614 | $ - | $ 60,677 | $ 7,306,466 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | | | | |
| Accounts Payable | | | | | | | | | | | | | | | | | | |
| Products, Materials & Services | $ (37,200) | $ (50,000) | $ (64,835) | $ (50,000) | $ (50,000) | $ (81,474) | $ (173,324) | $ (71,185) | $ (197,453) | $ (95,602) | $ - | $ (36,692) | $ (101,133) | $ (122,735) | $ (105,000) | $ (110,000) | $ (123,231) | $ (1,469,863) |
| **Total Payables** | $ (37,200) | $ (50,000) | $ (64,835) | $ (50,000) | $ (50,000) | $ (81,474) | $ (173,324) | $ (71,185) | $ (197,453) | $ (95,602) | $ - | $ (36,692) | $ (101,133) | $ (122,735) | $ (105,000) | $ (110,000) | $ (123,231) | $ (1,469,863) |
| Other Operating Expenses: | | | | | | | | | | | | | | | | | | |
| Payroll | $ (578,114) | $ - | $ (548,788) | $ - | $ (545,598) | $ - | $ (545,598) | $ - | $ (545,598) | $ (1,084,528) | $ (163,220) | $ - | $ (97,980) | $ - | $ (97,980) | $ - | $ (495,517) | $ (4,702,921) |
| Insurance | (38,430) | (64,041) | (54,000) | (25,000) | (34,500) | (75,000) | (34,500) | (25,000) | (34,500) | (75,000) | (34,500) | (35,282) | (26,500) | (55,000) | (6,500) | (5,000) | (6,500) | (629,253) |
| Rent | - | - | - | (142,985) | - | - | - | (142,985) | - | - | - | - | (142,985) | - | - | - | (142,985) | (571,939) |
| Misc Supplies & Materials | - | - | - | - | - | (50,000) | - | - | - | (50,000) | - | - | - | - | (50,000) | - | - | (150,000) |
| Utilities | - | (45,020) | - | (45,020) | - | - | - | (5,020) | (40,000) | - | - | (45,000) | - | - | - | - | - | (180,060) |
| Plex ERP | - | - | - | - | - | - | - | - | - | - | - | (52,000) | - | - | - | - | - | (52,000) |
| Other | (1,162) | (21,500) | (21,500) | (21,500) | (21,500) | (97,531) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (21,500) | (421,193) |
| **Total Other Operating Expenses** | $ (617,705) | $ (130,561) | $ (624,288) | $ (234,505) | $ (601,598) | $ (222,531) | $ (601,598) | $ (194,505) | $ (641,598) | $ (1,231,028) | $ (219,220) | $ (108,782) | $ (333,965) | $ (76,500) | $ (175,980) | $ (26,500) | $ (666,502) | $ (6,707,365) |
| Non-Operating Expenses: | | | | | | | | | | | | | | | | | | |
| CapEx | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Non-Operating Expenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Disbursements** | $ (654,906) | $ (180,561) | $ (689,123) | $ (284,505) | $ (651,598) | $ (304,005) | $ (774,922) | $ (265,689) | $ (839,051) | $ (1,326,629) | $ (219,220) | $ (145,474) | $ (435,098) | $ (199,235) | $ (280,980) | $ (136,500) | $ (789,733) | $ (8,177,228) |
| **CASH FLOW FROM OPERATIONS** | $ (542,724) | $ 1,077,728 | $ (555,101) | $ (12,964) | $ (388,498) | $ 637,897 | $ (514,086) | $ 959,890 | $ (554,863) | $ (1,261,368) | $ 213,441 | $ (145,474) | $ (157,389) | $ 572,673 | $ 665,633 | $ (136,500) | $ (729,056) | $ (870,762) |
| Restructuring Expenses (1) | | | | | | | | | | | | | | | | | | |
| PSZJ | $ (348,180) | $ (33,333) | $ (33,333) | $ (62,500) | $ (62,500) | $ (62,500) | $ (62,500) | $ (50,000) | $ (50,000) | $ (50,000) | $ (50,000) | $ (50,000) | $ (43,750) | $ (43,750) | $ (43,750) | $ (43,750) | $ (43,750) | $ (1,133,597) |
| CR3 | (116,522) | (48,600) | (45,250) | (33,400) | (40,900) | (33,400) | (23,400) | (33,400) | (40,900) | (33,400) | (33,400) | (40,900) | (33,400) | (33,400) | (33,400) | (40,900) | (40,900) | (687,972) |
| Prime Clerk | (20,000) | (8,336) | (8,336) | (8,336) | (8,336) | (6,189) | (6,189) | (6,189) | (6,189) | (5,823) | (5,823) | (5,823) | (5,823) | (2,519) | (2,519) | (2,519) | (2,519) | (111,465) |
| UCC | - | - | - | - | - | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (3,750) | (45,000) |
| Lender | - | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (6,250) | (100,000) |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | (13,000) | - | - | - | - | (6,500) | (19,500) |
| **Total Restructuring Expenses** | $ (484,702) | $ (96,520) | $ (93,170) | $ (110,486) | $ (117,986) | $ (112,089) | $ (102,089) | $ (99,589) | $ (107,089) | $ (99,223) | $ (99,223) | $ (89,223) | $ (113,473) | $ (89,669) | $ (89,669) | $ (89,669) | $ (103,669) | $ (2,097,534) |
| **NET CASH FLOW AFTER RESTRUCTURING EXPENSES** | $ (1,027,427) | $ 981,209 | $ (648,270) | $ (123,450) | $ (506,484) | $ 525,808 | $ (616,175) | $ 860,302 | $ (661,952) | $ (1,360,591) | $ 114,218 | $ (234,696) | $ (270,861) | $ 483,004 | $ 575,965 | $ (226,169) | $ (832,725) | $ (2,968,295) |
| Beginning Cash | $ 123,250 | $ 145,823 | $ 1,127,032 | $ 478,761 | $ 355,311 | $ 248,827 | $ 774,634 | $ 258,460 | $ 1,118,761 | $ 456,809 | $ 296,219 | $ 410,437 | $ 175,741 | $ 204,879 | $ 687,883 | $ 1,263,848 | $ 1,037,679 | $ 123,250 |
| Plus / Less: Net Cash Flow | (1,027,427) | 981,209 | (648,270) | (123,450) | (506,484) | 525,808 | (616,175) | 860,302 | (661,952) | (1,360,591) | 114,218 | (234,696) | (270,861) | 483,004 | 575,965 | (226,169) | (832,725) | (2,968,295) |
| Plus / Less: DIP Loan Facility Borrowing / (Paydown) | | | | | 3,260,000 | | 100,000 | | | 1,200,000 | | 300,000 | | | | | 100,000 | 4,960,000 |
| Plus / Less: Prepetition Loan Facility Borrowing / (Paydown | 1,050,000 | | | | (2,860,000) | | | | | | | | | | | | | (1,810,000) |
| **ENDING CASH** | $ 145,823 | $ 1,127,032 | $ 478,761 | $ 355,311 | $ 248,827 | $ 774,634 | $ 258,460 | $ 1,118,761 | $ 456,809 | $ 296,219 | $ 410,437 | $ 175,741 | $ 204,879 | $ 687,883 | $ 1,263,848 | $ 1,037,679 | $ 304,954 | $ 304,954 |
| DIP Loan Facility Availability | $ - | $ 1,250,000 | $ 1,250,000 | $ 1,250,000 | $ 5,000,000 | $ 1,740,000 | $ 1,740,000 | $ 1,640,000 | $ 1,640,000 | $ 1,640,000 | $ 440,000 | $ 440,000 | $ 440,000 | $ 140,000 | $ 140,000 | $ 140,000 | $ 140,000 | $ 5,000,000 |
| Prepetition Loan Availability After Draw | 140,000 | | | | | | | | | | | | | | | | | |
| DIP (Draw) / Paydown | - | - | - | - | (3,260,000) | - | (100,000) | - | - | (1,200,000) | - | (300,000) | - | - | - | - | (100,000) | (4,960,000) |
| **ENDING LIQUIDITY** | $ 285,823 | $ 2,377,032 | $ 1,728,761 | $ 1,605,311 | $ 1,988,827 | $ 2,514,634 | $ 1,898,460 | $ 2,758,761 | $ 2,096,809 | $ 736,219 | $ 850,437 | $ 615,741 | $ 344,879 | $ 827,883 | $ 1,403,848 | $ 1,177,679 | $ 344,954 | $ 344,954 |
| Prepetition Loan Maximum | $ 3,000,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Beginning Prepetition Loan Balance | 1,810,000 | 2,860,000 | 2,860,000 | 2,860,000 | 2,860,000 | - | - | - | - | - | - | - | - | - | - | - | - | 1,810,000 |
| Increase / (Decrease) | 1,050,000 | - | - | - | (2,860,000) | - | - | - | - | - | - | - | - | - | - | - | - | (1,810,000) |
| **ENDING PREPETITION LOAN BALANCE** | $ 2,860,000 | $ 2,860,000 | $ 2,860,000 | $ 2,860,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **ENDING DIP LOAN BALANCE** | | | | | $ 3,260,000 | $ 3,260,000 | $ 3,360,000 | $ 3,360,000 | $ 3,360,000 | $ 4,560,000 | $ 4,560,000 | $ 4,860,000 | $ 4,860,000 | $ 4,860,000 | $ 4,860,000 | $ 4,860,000 | $ 4,960,000 | $ 4,960,000 |

(1)The fees and expenses actually incurred by the professionals referenced above may be higher or lower in any given week of the Budget.  To the extent of any excesses or deficiencies as to weekly budgeted amounts, such amounts will be rolled forward or backward, as applicable, such that each professional
has access to the full amount budgeted for such professional in the aggregate through the Trigger Date