Laura Davis Jones (DE Bar No. 2436) *(Admitted Pro Hac Vice)*
Jeffrey W. Dulberg (CA Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:    ljones@pszjlaw.com
              jdulberg@pszjlaw.com

Attorneys for Channel Technologies Group, LLC, Debtor and
Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.:  9:16-bk-11912-PC |
| CHANNEL TECHNOLOGIES GROUP, LLC, [1] | Chapter 11 |
| Debtor. | **DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S PROPOSED CHAPTER 11 LIQUIDATING PLAN, DATED NOVEMBER 7, 2017** |
| | <u>Disclosure Statement Approval Hearing</u> |
| | Date:         December 13, 2017 |
| | Time:         10:00 a.m. |
| | Place:        Courtroom "201" |
| | 1415 State Street |
| | Santa Barbara, California 93101 |
| | Judge:        Hon. Peter H. Carroll |

### THIS DISCLOSURE STATEMENT HAS
### NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT

**This proposed Disclosure Statement is not a solicitation of acceptance or rejection of the Plan.  Acceptances or rejections may not be solicited until the Bankruptcy Court has approved this Disclosure Statement under Bankruptcy Code § 1125.  This proposed Disclosure Statement is being submitted for approval only, and has not yet been approved by the Bankruptcy Court.**

---

[1] The last four digits of the Debtor's Tax Identification Number are:  0460. The Debtor's mailing address is: 8714 East Sandalwood Dr., Scottsdale, AZ  85250.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## IMPORTANT DATES

Date by which ballots must be received: _____, **at 5:00 p.m. Pacific Time**
Date by which objections to Confirmation of the Plan must be filed:
_____

Hearing on Confirmation of the Plan: _____, **at __:___ _.m. Pacific Time.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## INDEX OF EXHIBITS

**Exhibit A** – Debtor's Chapter 11 Liquidating Plan

**Exhibit B** – Liquidation Analysis

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

DOCS_LA:307113.9 13817/002

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. GENERAL DISCLAIMER AND VOTING PROCEDURE ........................................ 2

III. WHO MAY OBJECT TO CONFIRMATION OF THE PLAN .................................. 3

IV. WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN ..................................... 3

V. VOTES NECESSARY TO CONFIRM THE PLAN .................................................... 4

VI. INFORMATION REGARDING VOTING IN THIS CASE ....................................... 4

VII. ADDITIONAL DISCLAIMERS ............................................................................... 6

VIII. OVERVIEW OF THE PLAN ................................................................................. 10

    A.    Summary of the Plan ................................................................... 10

    B.    Summary of Classification and Treatment of Claims ..................................... 10

IX. DESCRIPTION OF THE DEBTOR ........................................................................ 14

    A.    General Background of the Debtor ............................................ 14

    B.    Prepetition Financing and Capital Structure ................................ 16

    C.    Capital Structure ....................................................................... 16

    D.    Events Leading to the Bankruptcy Filing .................................... 17

    E.    Debtor's Assets & Liabilities .................................................... 19

X. DEBTOR'S CHAPTER 11 CASE ............................................................................ 19

    A.    First Day, DIP Financing & Other Relief .................................. 19

    B.    Sale Related Motions ................................................................ 20

    C.    Claims Bar Date ....................................................................... 22

    D.    Retention of Debtor's Professionals ......................................... 22

    E.    Miscellaneous Motions ............................................................ 22

    F.    Appointment of Committee and Retention of Committee Professionals............ 23

    G.    Extension of Deadline to Remove Actions ................................ 23

    H.    Stipulation to Modify Terms of Compensation for CR3 Partners, LLC and David  Tiffany, Chief Restructuring Officer ...................................... 23

    I.    Rejection of Executory Contracts and Unexpired Leases ................... 24

    J.    Settlement with Nightline, Inc. ................................................. 24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

XI. SUMMARY OF THE PLAN ............................................................................ 25

    A.    Treatment of Unclassified Claims Under the Plan ............................ 25

        1.    DIP Financing Claims. ......................................................... 25

        2.    Administrative Expenses. ...................................................... 25

        3.    Priority Tax Claims .............................................................. 26

    B.    Classification and Treatment of Claims and Interests Under the Plan ............... 27

        1.    Class 1 (Other Priority Claims) ........................................... 27

        2.    Class 2 (Secured Claims) ..................................................... 28

        3.    Class 3 (General Unsecured Claims) .................................... 28

        4.    Class 4 (Equity Interests) ..................................................... 30

    C.    Provisions for Treatment of Disputed, Contingent, or Unliquidated Claims and Administrative Expenses ........................................ 31

        1.    Resolution of Disputed  Claims ........................................... 31

        2.    Reserve for Disputed Claims ............................................... 31

        3.    Exclusive Right to Object to Claims .................................... 32

        4.    Investigation Regarding Disputed Claims ............................ 32

        5.    Distribution After Allowance .............................................. 33

    D.    Implementation of the Plan .............................................................. 33

        1.    Vesting of Assets ................................................................. 33

        2.    Establishment of the Liquidating Trust ................................ 34

        3.    No Liability of Liquidating Trustee ...................................... 37

        4.    Provisions Relating to Federal Income Tax Compliance ...... 37

        5.    Cooperation with Liquidating Trustee .................................. 38

        6.    Compensation of the Liquidating Trustee/Removal of the Liquidating Trustee ........................................................ 38

        7.    Resignation of the Liquidating Trustee ................................ 38

        8.    Funding of Post-Effective Date Plan Expenses .................... 39

        9.    Estate Causes of Action ....................................................... 39

        10.    Post-Effective Date Professional Fees .................................. 41

        11.    Approval for Disposition of Assets ...................................... 41

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

| | | | |
|---|---|---|---|
| | 12. | Compromise of Controversies | 41 |
| | 13. | Bankruptcy Court Approval Relative to Post-Confirmation Matters | 42 |
| | 14. | Liquidating Trustee Certification | 42 |
| | 15. | Final Decree | 42 |
| | 16. | Other Rights, Powers and Duties of Liquidating Trustee | 42 |
| | 17. | Resolution of Disputes | 42 |
| | 18. | Termination of Employment of Liquidating Trustee | 43 |
| | 19. | Bar Date for Filing Avoidance Action Payment Claims | 43 |
| E. | | Prosecution of Estate Causes of Action by the Liquidating Trustee | 43 |
| | 1. | In General | 43 |
| | 2. | Existing and Potential Causes of Action | 43 |
| F. | | Issuance and Execution of Plan Related Documents. | 46 |
| G. | | Dissolution of the Debtor and Termination of Current Officers, Directors, Employees and Counsel; Dissolution of the Committee. | 46 |
| H. | | Distributions Under the Plan | 47 |
| | 1. | In General | 47 |
| | 2. | Manner of Payment Under the Plan | 47 |
| | 3. | Manner of Distribution of Other Property | 47 |
| | 4. | Set-offs | 47 |
| | 5. | Distribution of Unclaimed Property | 47 |
| | 6. | De Minimis Distributions | 48 |
| | 7. | Saturday, Sunday or Legal Holiday | 48 |
| | 8. | Delivery of Distributions, Address of Holder | 48 |
| | 9. | Payment of Fees and Expenses of Disbursing Agent | 48 |
| | 10. | Approval for Schedule of Proposed Distributions | 48 |
| | 11. | Further Assurances Regarding Distributions | 49 |
| | 12. | Creditors' Payment Obligations or Turn Over of Property to the Liquidating Trustee | 49 |
| I. | | Executory Contracts and Unexpired  Leases | 49 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

|       |      |                                                                    |     |
|-------|------|--------------------------------------------------------------------|-----|
|       | 1.   | Rejection ............................................................. | 49  |
|       | 2.   | Bar Date for Rejection Damage Claims ............................. | 49  |
|       | 3.   | Insurance Policies .................................................. | 50  |
| J.    |      | Effectiveness of the Plan .......................................... | 50  |
|       | 1.   | Conditions Precedent ............................................. | 50  |
|       | 2.   | Notice of the Effective Date ..................................... | 51  |
| K.    |      | Retention of Jurisdiction ......................................... | 51  |
| L.    |      | Releases, Exculpation and Injunction ............................ | 52  |
|       | 1.   | Releases by the Debtor............................................ | 52  |
|       | 2.   | Exculpation ....................................................... | 53  |
|       | 3.   | No Liability for Solicitation or Participation .................. | 54  |
|       | 4.   | Good Faith ........................................................ | 54  |
|       | 5.   | Injunction Enjoining Holders of Claims Against Debtor ......... | 54  |
|       | 6.   | Nondischarge of the Debtor ...................................... | 55  |
| M.    |      | Miscellaneous  Provisions ......................................... | 56  |
|       | 1.   | Payment of Statutory Fees ....................................... | 56  |
|       | 2.   | Preservation of Rights of Action................................. | 56  |
|       | 3.   | Exemption from Stamp, Transfer and Other Taxes ............... | 57  |
|       | 4.   | Binding Effect .................................................... | 57  |
|       | 5.   | Revocation or Withdrawal ........................................ | 57  |
|       | 6.   | Withholding, Reporting, and Payment of Taxes.................. | 57  |
|       | 7.   | Other Documents and Actions ................................... | 57  |
|       | 8.   | Modification of the Plan ......................................... | 58  |
|       | 9.   | Post-Confirmation Notice ........................................ | 58  |
|       | 10.  | Books and Records ............................................... | 58  |
|       | 11.  | Effectiveness of Court Orders.................................... | 58  |
|       | 12.  | No Waiver ......................................................... | 58  |
|       | 13.  | Other Documents and Actions ................................... | 59  |
|       | 14.  | Inconsistencies ................................................... | 59  |

iv

15.    Implementation of Section 1142 of the Bankruptcy Code........................ 59

16.    Confirmation Request ............................................................. 59

XII. CERTAIN RISK FACTORS TO BE CONSIDERED.................................................. 60

A.    Risks Regarding the Distributions to Be Made to Creditors........................... 60

B.    Bankruptcy Risks ......................................................................... 60

XIII. VOTING PROCEDURES AND REQUIREMENTS ................................................. 60

XIV. CONFIRMATION OF THE PLAN ....................................................................... 61

A.    Confirmation Hearing .................................................................... 61

B.    Objections to Confirmation of the Plan .............................................. 62

C.    Requirements for Confirmation of the Plan......................................... 62

1.    Acceptance ......................................................................... 62

2.    Fair and Equitable Test ........................................................ 63

3.    Feasibility........................................................................... 63

4.    "Best Interests" Test ............................................................ 64

XV. ALTERNATIVES TO CONFIRMATION OF THE PLAN ........................................ 65

XVI. CERTAIN U.S. TAX CONSEQUENCES OF THE PLAN ........................................ 66

A.    Federal Income Tax Consequences to Certain Creditors........................ 67

1.    In General........................................................................... 67

2.    Non-United States Persons ................................................... 68

3.    Tax Consequences in Relation to Liquidating Trust............................ 69

B.    Information Reporting and Backup Withholding ................................ 72

XVII. SECURITIES LAW MATTERS............................................................................ 73

A.    In General................................................................................... 73

B.    Initial Issuance ............................................................................ 73

C.    Resales ....................................................................................... 74

D.    Exchange Act Compliance.............................................................. 75

XVIII. RECOMMENDATION ................................................................................... 76

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

v

# I.

## **INTRODUCTION**

On October 14, 2016, Channel Technologies Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor" or "CTG"), filed a bankruptcy petition under chapter 11 of the Bankruptcy Code.  The document you are reading serves as the *Disclosure Statement* (the "Disclosure Statement") regarding the *Debtor's Proposed Chapter 11 Liquidating Plan* (as may be amended or modified from time to time, the "Plan"), which is proposed by the Debtor.  A copy of the Plan is attached hereto as **Exhibit A**.

The Plan effectuates a distribution of the Assets of the Estates to creditors in accordance with the priorities set forth in the Bankruptcy Code.  The Plan provides that all of the Debtor's Assets, to the extent they have not already been liquidated, will be liquidated and the proceeds of the liquidation of the Assets will be utilized, pursuant to the terms of the Plan, to pay Allowed Claims and to fund the Liquidating Trust and pay for its expenses.

More specifically, the Debtor's remaining Assets (including, but not limited to, Cash and Estate Causes of Action) on the Effective Date will be transferred to the Liquidating Trust established under the Plan for the benefit of the Holders of Allowed Claims.  The Effective Date of the Plan will occur when all of the conditions to the Plan's effectiveness as set forth in Section VIII.A of the Plan have been met or waived.  Holders of Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid upon the Effective Date or as soon thereafter as is practicable.  If there are any unpaid Allowed Secured Claims, they will be satisfied as provided in the Plan.

Liquidating Trust Assets (including the proceeds thereof) will be used by the Liquidating Trustee to pursue the Estate Causes of Action that the Liquidating Trustee determines to pursue for the benefit of Holders of Allowed Claims.  As soon as reasonably practicable after the Effective Date, the Liquidating Trustee will make cash distributions on a Pro Rata Basis of Available Cash to Holders of Allowed General Unsecured Claims (Class 3 Claims), on account of their respective Class 3 Trust Interests.  As all of the Liquidating Trust Assets are liquidated (or otherwise disposed of), additional cash Distributions may be made in accordance with the terms of the Plan and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

Liquidating Trust Agreement, such that all net Cash proceeds of the Liquidating Trust Assets are distributed to Holders of Allowed Claims as provided under the Plan and Liquidating Trust Agreement.

This Disclosure Statement describes the assumptions that underlie the Plan and how the Plan will be executed.  The Disclosure Statement includes information (a) regarding the history of the Debtor, its business, assets and liabilities, and the Chapter 11 Case, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims and Equity Interests of their rights under the Plan, (d) assisting the Holders of General Unsecured Claims in making an informed judgment regarding whether they should vote to accept or reject the Plan, and (e) assisting the Bankruptcy Court in determining whether the Plan complies with the provisions of the Bankruptcy Code and therefore, should be confirmed.

[As set forth in the Disclosure Statement Order, the Bankruptcy Court approved the Disclosure Statement as containing "adequate information" to permit affected Holders of General Unsecured Claims to make an informed judgment in exercising their right to vote to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan. In voting on the Plan, Holders of Claims should rely solely upon the information relating to the Debtor and its business contained in the Disclosure Statement and all exhibits thereto.]

The Bankruptcy Court's approval of this Disclosure Statement does not mean that the Bankruptcy Court recommends either acceptance or rejection of the Plan.  The Court has not yet confirmed the Plan, which means that the terms of the Plan are not yet binding upon anyone.

Any interested party desiring further information should contact counsel for the Debtor: Jeffrey W. Dulberg, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California, 90067, telephone: (310) 277-6910; facsimile: (310) 201-0760; e-mail address, jdulberg@pszjlaw.com.

## II.

## GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY.  IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

TELLS ALL CREDITORS AND ANY INTEREST HOLDERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE BANKRUPTCY COURT.

ALL REPRESENTATIONS ARE TRUE TO THE DEBTOR'S BEST KNOWLEDGE.  NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE BANKRUPTCY COURT ORDERS OTHERWISE.

NO REPRESENTATIONS CONCERNING THE DEBTOR'S FINANCIAL CONDITION OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE BANKRUPTCY COURT OR THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR PRIOR COURT ORDERS.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN AS CONTAINED IN OR INCLUDED WITH THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

After carefully reviewing this document and the attached exhibits, if you hold a General Unsecured Claim (classified into Class 3), please vote on the enclosed ballot and return it in the enclosed envelope.

## III.

## **WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

Any party in interest may object to confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

## IV.

## **WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

It requires an Allowed and Impaired Claim or Equity Interest in order for the applicable holder to vote either to accept or reject the Plan.  A Claim is defined by the Bankruptcy Code to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

include a right to payment from the Debtor.  An Equity Interest represents an ownership stake in the Debtor.

The Plan defines an Allowed Claim as a Claim, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed on the Debtor's Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which no objection to the allowance thereof has been interposed.  The Plan defines Impaired as having the meaning set forth in § 1124 of the Bankruptcy Code.

Section II.C of the Plan sets forth which Claims are in which Class.  Secured Claims are placed in separate Classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

## V.

## VOTES NECESSARY TO CONFIRM THE PLAN

The Bankruptcy Court may confirm the Plan if at least one non-insider Impaired Class of Claims has accepted the Plan and certain statutory requirements are met as to both non-consenting members within a consenting Class and as to dissenting Classes.  A Class of Claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the Allowed Claims actually voting, vote in favor of the Plan.

It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Bankruptcy Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming Confirmation Hearing.

## VI.

## INFORMATION REGARDING VOTING IN THIS CASE

Generally, as set forth above, all Holders of Claims that are in Impaired Classes are entitled to vote on the Plan; however, Impaired Classes that are not entitled to receive or retain any property under the Plan are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote.  Also, Classes of Claims that are not Impaired are

conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the

Bankruptcy Code and, therefore, are not entitled to vote on the Plan.  The following chart

summarizes which Classes of Claims and Equity Interests are Impaired, which Classes of Claims are

not Impaired, and which Classes are entitled to vote.

| **CLASS** | **DESCRIPTION** | **IMPAIRED/ UNIMPAIRED** | **VOTING STATUS** |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | Deemed to have accepted |
| Class 2 | Secured Claims | Unimpaired | Deemed to have accepted |
| Class 3 | General Unsecured Claims | Impaired | Voting |
| Class 4 | Interests in Debtor | Impaired | Deemed to have rejected |

A party that disputes the Debtor's characterization of its Claim or Equity Interest as not

Impaired may request a finding of impairment from the Bankruptcy Court in order to obtain the right

to vote.

The Claims Bar Date for filing a prepetition Claim against the Debtor was July 14, 2017.

There has been no bar date set for filing objections to Claims in the Chapter 11 Case; however,

pursuant to Section IV.A of the Plan, if the Plan is confirmed, all objections to Claims (including

General Unsecured Claims, Administrative Expenses and Priority Tax Claims) must be filed no later

than 120 days after the Effective Date (the Liquidating Trustee Claim Objection Deadline), unless

such date is extended by order of the Bankruptcy Court.

If you are a Holder of a Claim in a Class that is entitled to vote to accept or reject the Plan,

accompanying this Disclosure Statement and Plan is a ballot for casting your vote on the Plan and a

pre-addressed envelope for the return of the ballot.

BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING

PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3 BECAUSE HOLDERS OF

CLAIMS IN CLASS 3 ARE THE ONLY ONES ENTITLED TO VOTE TO ACCEPT OR REJECT

THE PLAN.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

If you are the Holder of a Claim in such Class, and (a) did not receive a ballot, (b) received a damaged or illegible ballot, or (c) lost your ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement and Plan, any of the exhibits hereto, or the voting procedures in respect thereof, please contact Debtor's counsel, Jeffrey W. Dulberg, Esq., Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067; Telephone: (310) 277-6910; e-mail: jdulberg@pszjlaw.com.

THE DEBTOR RECOMMENDS THAT EACH OF THE HOLDERS OF CLAIMS IN CLASS 3 SUBMIT A BALLOT TO ACCEPT THE PLAN.

VOTING ON THE PLAN, BY EACH HOLDER OF A CLAIM ENTITLED TO VOTE, IS IMPORTANT. EACH SUCH CLAIM HOLDER SHOULD READ THIS DISCLOSURE STATEMENT WITH ITS EXHIBITS, INCLUDING THE PLAN, IN ITS ENTIRETY. AFTER CAREFULLY REVIEWING THESE DOCUMENTS, PLEASE FOLLOW THE DIRECTIONS FOR VOTING CONTAINED ON THE BALLOT AND RETURN THE BALLOT IN THE ENVELOPE PROVIDED. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY _____, 2018 AT THE ADDRESS SET FORTH ON THE ENCLOSED PRE-ADDRESSED ENVELOPE AND IN YOUR BALLOT.

Votes cannot be transmitted orally, by fax or by e-mail. Accordingly, you are urged to return your signed and completed ballot promptly. Ballots not received by the Voting Deadline and unsigned ballots will not be counted.

**VII.**

**ADDITIONAL DISCLAIMERS**

THIS DISCLOSURE STATEMENT IS CURRENT AS OF THE DATE SET FORTH IN ITS TITLE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION IN THE DISCLOSURE STATEMENT IS CORRECT AS OF ANY TIME AFTER THE DATE IN ITS TITLE, OR THAT THERE HAS BEEN NO CHANGE IN THE AFFAIRS OF THE DEBTOR AS OF SUCH LATER DATE.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THE WORDS "ANTICIPATE," "BELIEVE," "ESTIMATE," "WILL," "INTEND," AND "EXPECT" AND SIMILAR EXPRESSIONS IDENTIFY FORWARD-LOOKING STATEMENTS.  ALTHOUGH THE DEBTOR BELIEVES THAT ITS ESTIMATES AND ASSUMPTIONS REFLECTED IN THOSE FORWARD-LOOKING STATEMENTS ARE REASONABLE, THE DEBTOR CAN GIVE NO ASSURANCE THAT THESE ESTIMATES AND ASSUMPTIONS WILL BE REALIZED.  FORWARD-LOOKING STATEMENTS ARE BASED ON ASSUMPTIONS THAT ARE UNAVOIDABLY AND INHERENTLY IMPRECISE.  ACTUAL RESULTS, PERFORMANCE, OR ACHIEVEMENTS WILL LIKELY DIFFER MATERIALLY FROM THOSE CONTEMPLATED, EXPRESSED, OR IMPLIED BY THE FORWARD-LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE OR REVISE ANY FORWARD-LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, WHETHER AS A RESULT OF NEW DEVELOPMENTS OR OTHERWISE.

THE FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AND IN ANY EXHIBITS TO THE DISCLOSURE STATEMENT, UNLESS OTHERWISE INDICATED, IS UNAUDITED.  MOREOVER, BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE BOOKS AND RECORDS OF THE DEBTOR, UPON WHICH THIS DISCLOSURE STATEMENT IN PART IS BASED, MAY BE INCOMPLETE OR INACCURATE.  REASONABLE EFFORT HAS BEEN MADE, HOWEVER, TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

ALL ADVISORS TO THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT.  ALTHOUGH ADVISORS TO THE DEBTOR HAVE PERFORMED CERTAIN LIMITED DUE DILIGENCE IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT, THE ADVISORS HAVE NOT

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED IN OR

ATTACHED TO THE DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBMITTED FOR APPROVAL

UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE

SECURITIES LAWS.  ALTHOUGH A COPY OF THE DISCLOSURE STATEMENT HAS BEEN

SERVED ON THE SECURITIES & EXCHANGE COMMISSION (THE "SEC") AND THE SEC

HAS BEEN GIVEN AN OPPORTUNITY TO OBJECT TO THE ADEQUACY OF THE

DISCLOSURE STATEMENT, NEITHER THE SEC NOR ANY STATE REGULATORY

AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS

DISCLOSURE STATEMENT, THE EXHIBITS TO THE DISCLOSURE STATEMENT OR THE

STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE

CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE.  CREDITORS SHOULD CONSULT

THEIR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND OTHER

MATTERS CONCERNING THEIR CLAIMS.

UNLESS YOUR CLAIM IS ALLOWED, IN WHOLE OR IN PART, UNDER THE PLAN

OR IN PRIOR ORDERS, THE ABILITY OF THE DEBTOR AND OTHER CREDITORS OR

PARTIES IN INTEREST TO OBJECT TO YOUR CLAIM IN ACCORDANCE WITH THE PLAN

AND APPLICABLE LAW IS BEING PRESERVED AND NOT WAIVED UNDER THE PLAN.

MOREOVER, ANY RIGHTS OF ACTION AGAINST YOU IN FAVOR OF THE DEBTOR ARE

BEING PRESERVED UNDER THE PLAN UNLESS OTHERWISE EXPRESSLY PROVIDED

UNDER THE PLAN.  THE DEBTOR IS ATTEMPTING TO PROVIDE YOU ADEQUATE

INFORMATION TO MAKE AN INFORMED JUDGMENT AS TO WHETHER TO ACCEPT OR

REJECT THE PLAN.  THE DEBTOR DOES NOT BELIEVE THAT THIS RESERVATION OF

RIGHTS SHOULD AFFECT YOUR DECISION ON HOW TO VOTE ON THE PLAN.

ALTHOUGH THE DEBTOR BELIEVES THAT THE CONFIRMATION OF THE PLAN IS IN

THE INTERESTS OF CREDITORS OF THE DEBTOR, THIS ADVISORY IS PROVIDED TO

ENSURE THAT YOU DO NOT ASSUME, BY THE DEBTOR'S SOLICITATION OF YOUR

8

VOTE, BY THE ESTIMATES CONTAINED IN THE DISCLOSURE STATEMENT, OR BY ANY OTHER PROVISIONS OF THE PLAN OR DISCLOSURE STATEMENT (OTHER THAN AN EXPRESS PROVISION OF THE PLAN ALLOWING YOUR CLAIM OR WAIVING SPECIFIED RIGHTS OF ACTION AGAINST YOU) THAT THE DEBTOR, THE LIQUIDATING TRUSTEE, OTHER CREDITORS, OR OTHER PARTIES IN INTEREST WILL NOT OBJECT TO YOUR CLAIM OR INTEREST OR THAT THE DEBTOR OR LIQUIDATING TRUSTEE (AS APPLICABLE) WILL NOT PURSUE ANY RIGHT OF ACTION AGAINST YOU.  INSTEAD, FOR THE PURPOSE OF DECIDING HOW TO VOTE ON THE PLAN, IF YOUR CLAIM IS NOT EXPRESSLY ALLOWED UNDER THE PLAN OR PRIOR COURT ORDERS, YOU SHOULD ASSUME THAT THE DEBTOR, THE LIQUIDATING TRUSTEE, OR THEIR RESPECTIVE SUCCESSORS OR REPRESENTATIVES WILL (A) OBJECT TO YOUR CLAIM AND (B) ASSERT ALL SETOFFS, RECOUPMENTS, RIGHTS TO SUBORDINATE, OR AFFIRMATIVE CLAIMS THAT THE DEBTOR, THE LIQUIDATING TRUSTEE, OR THEIR RESPECTIVE SUCCESSORS MAY HAVE WITH RESPECT TO YOU AND/OR YOUR CLAIMS AGAINST THE DEBTOR.

THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED THEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR CREDITORS.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS OR OTHER DOCUMENTS REFERENCED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT OR DOCUMENT, INCLUDING THE DEFINITION OF TERMS CONTAINED IN SUCH AGREEMENT OR DOCUMENT.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

# VIII.

## OVERVIEW OF THE PLAN

### A.    Summary of the Plan

The Debtor's remaining Assets (including, but not limited to, Cash and Estate Causes of Action) on the Effective Date will be transferred to the Liquidating Trust established under the Plan for the benefit of the Holders of Allowed Claims.  The Effective Date of the Plan will occur when all of the conditions to the Plan's effectiveness as set forth in Section VIII.A of the Plan have been met or waived.  The Debtor will use reasonable efforts to see that the conditions are fulfilled as soon as possible after the Confirmation Date.

Holders of Allowed Administrative Expenses, Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid upon the Effective Date or as soon thereafter as is practicable.  If there are any unpaid Allowed Secured Claims, they will be satisfied as provided in the Plan.

Liquidating Trust Assets (or the proceeds thereof) will be used by the Liquidating Trustee to pursue the Estate Causes of Action that the Liquidating Trustee determines to pursue for the benefit of Holders of Allowed Claims.  As soon as reasonably practicable after the Effective Date, the Liquidating Trustee will make cash distributions on a Pro Rata Basis of Available Cash to Holders of Allowed General Unsecured Claims (Class 3 Claims), on account of their respective Class 3 Trust Interests.  As all of the Liquidating Trust Assets are liquidated (or otherwise disposed of), additional cash Distributions may be made with the terms of the Plan and Liquidating Trust Agreement, such that all net Cash proceeds of the Liquidating Trust Assets are distributed to Holders of Allowed Claims as provided under the Plan and Liquidating Trust Agreement.

### B.    Summary of Classification and Treatment of Claims

The following table (the "Plan Summary Table") summarizes the treatment of Claims and Equity Interests under the Plan with: (a) estimates of the amount of asserted Claims in each Class that have not previously been satisfied in the ordinary course of the Debtor's business or pursuant to an order of the Court, and (b) a description of the treatment provided for in the Plan for each Class of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claims and Equity Interests.[2]  The Liquidating Trustee, upon the establishment of the Liquidating Trust pursuant to the Plan and the Confirmation Order, shall have the right to dispute the validity or amount of any Claim that has not already been Allowed by the Bankruptcy Court or by agreement of the parties.  Accordingly, no representation can be, or is being, made with respect to whether (a) the estimated Allowed amount of Claims in each Class is accurate, or (b) the estimated recoveries that will actually be realized by the Holder of an Allowed Claim in any particular Class is accurate.

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE CLAIMS IN THE CHAPTER 11 CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS.  THIS INVESTIGATION IS ONGOING AND, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.  AS A RESULT, HOLDERS OF CLAIMS AND OTHER PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE.  THE LIQUIDATING TRUSTEE SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY RESPECT.**

---

[2] The dollar amounts included in the Plan Summary Table and in the Debtor's Liquidation Analysis (**Exhibit B**) have been estimated and do not constitute an admission by the Debtor as to the validity or amount of any particular Claim or Equity Interest.

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### Summary of Claims and Interests Under the Plan

| Class | Claim/Interest | Treatment | Estimated Aggregate Amount | Estimated Percentage Recovery |
|---|---|---|---|---|
| n/a | DIP Financing Claim | This Claim was satisfied in full during the Chapter 11 Case. | $0 | 100% |
| n/a | Administrative Expenses | Subject to the allowance procedures and deadlines provided in the Plan, the Liquidating Trustee (or its agent) shall pay to each holder of an Allowed Administrative Expense, on account of the Allowed Administrative Expense, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense, unless the holder agrees to other treatment.  Except as otherwise provided in the Plan or in a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense that is an Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date such payment would have become due for payment of such Allowed Administrative Expense in the absence of the Chapter 11 Case, whether pursuant to contract or applicable non-bankruptcy law; and (ii) payment of an Administrative Expense that becomes an Allowed Claim following the Effective Date shall be made on or before the date that is thirty (30) days after an order deeming such Administrative Expense an Allowed Claim becomes a Final Order. | $200,000[3] | 100% |
| n/a | Priority Tax Claims | Except as otherwise agreed to by the parties, or ordered by the Court, as soon as practicable after the Effective Date, each Holder of an unpaid Allowed Priority Tax Claim shall receive payment in full in an amount equal to the Allowed Priority Tax Claim. | $0[4] | 100% |
| 1 | Other Priority Claims | The Liquidating Trustee shall pay all | $180,000[5] | 100% |

[3] This estimate is comprised of (i) approximately $200,000 in unpaid professional fees and expenses (estimated to be unpaid and accrued as of the Effective Date); and (ii) approximately $1,600 in asserted section 503(b)(9) claims.
[4] The IRS filed three proofs of claim asserting approximately $544,000 in total, however, two of the three proofs of claim appear to be duplicates and the resulting claim is likely zero as the Debtor has paid all outstanding taxes due. The Debtor reserves all rights with respect thereto.

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class | Claim/Interest | Treatment | Estimated Aggregate Amount | Estimated Percentage Recovery |
|---|---|---|---|---|
| | | Allowed Other Priority Claims in full, in Cash, on the later of: (i) the Effective Date; and (ii) the date on which an order allowing such Claim becomes a Final Order, and in each case or as soon thereafter as is practicable. | | |
| 2 | Secured Claims | Except to the extent that a Holder of an Allowed Secured Claim has been paid by the Debtor, in whole or in part, prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter, at the option of the Debtor, each Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Secured Claim, (y) return of the collateral securing such Claim or (z) such other treatment as may be agreed to by the Holder.  The Debtor shall inform each Holder of a Secured Claim of the treatment of such creditor's Secured Claim not less than ten (10) days prior to the Confirmation Hearing. | $53,000[6] | 100% |
| 3 | General Unsecured Claims | On the Effective Date, unless a Holder of an Allowed Class 3 Claim agrees to accept a lesser treatment of such Claim, each Holder of an Allowed Class 3 Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such General Unsecured Claim, an allocated Class 3 Trust Interest, which shall entitle the holder its Pro Rata share of funds available to holders of Class 3 Trust Interests pursuant to the Liquidating Trust Agreement.  Class 3 is Impaired, and the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan. | $15,000,000 – $32,600,000[7] | 3.38% - 7.35% |

[5] Approximately $15,000 in putative priority claims were filed by non-tax-authority creditors.  The Debtor scheduled approximately $283,000 in priority claims (Schedule E); however, Schedule E includes claims of taxing authorities as well and the scheduled priority claims of the Debtor's former employees were subsequently satisfied or partially satisfied pursuant to Court order.  The Debtor reserves all of its rights with respect to the priority proofs of claim.  The Debtor believes that in all events, the aggregate amount of outstanding Other Priority Claims as of the Effective Date will be minimal.

[6] Less than approximately $53,000 in putative secured proofs of claim were filed as of the filing of this Disclosure Statement, including a claim filed by a personal property lessor.  The Debtor reserves all of its rights with respect to the secured proofs of claim.  The Debtor believes that in all events, the aggregate amount of outstanding Secured Claims as of the Effective Date will be minimal.

[7] Approximately $1,492,000 in General Unsecured Claims were scheduled by the Debtor.  Approximately $39,785,000 in general unsecured proofs of claim were filed, including a nearly $20 million breach of contract claim filed by Lockheed Martin Corp., a $7.775 million breach of contract / unfilled orders claim filed by SyQwest (subsequently withdrawn pursuant to a Bankruptcy Court-approved settlement), and a $6.467 million breach of contract claim filed by Northrop Grumman.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class | Claim/Interest | Treatment | Estimated Aggregate Amount | Estimated Percentage Recovery |
|---|---|---|---|---|
| 4 | Equity Interests | As of the Effective Date, each holder of record of an Allowed Equity Interest shall not receive a distribution under the Plan and all Equity Interests will be deemed to be cancelled and void; provided, however, that, in the event that each Allowed Claim, plus any post-petition interest to which the Holder thereof is entitled, is paid in full, each Holder of record of an Allowed Equity Interest shall receive, in full and complete satisfaction, exchange and release of such Allowed Equity Interest, its Pro Rata share of any funds remaining in the Liquidating Trust, payable as soon as practicable as determined by the Liquidating Trustee in the exercise of its sole and absolute discretion. For the purpose only of determining any Distributions to which Holders of Allowed Equity Interests may be entitled under this Plan, each beneficial Holder of record of an Equity Interest in the Debtor as of the Effective Date shall be deemed to have an Allowed Equity Interest for the number of shares of stock in the Debtor held by it as of the Effective Date. In the event that any entity that is neither the Holder of record of an Equity Interest in the Debtor as of the Effective Date nor the beneficial owner of an Equity Interest in the Debtor as of the Effective Date files a proof of right to record status pursuant to Rule 3003(d) of the Bankruptcy Rules, such proof of right shall be disallowed automatically and without any need for the Debtor, the Liquidating Trustee, or any other party-in-interest to object thereto or otherwise take any act with respect thereto. | N/A | N/A |

## IX.

## DESCRIPTION OF THE DEBTOR

### A.    General Background of the Debtor

Prior to the Petition Date, CTG designed and manufactured piezoelectric ceramics, transducers, sonar equipment and other related products sold primarily to military, commercial, and industrial customers in the United States and internationally.  Founded in 1959, CTG was based in Santa Barbara, California and operated a second manufacturing site in Littleton, Massachusetts. CTG supplied its products to a variety of end-users, including the U.S. Navy and energy services

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

companies.  Among CTG's customers were some of the largest United States defense contractors, including Northrop Grumman, Lockheed Martin and Raytheon.

CTG's core competencies included:[8]

      (i)    <u>Ceramics</u>.  Piezoelectric ceramics were the core of CTG's business since its inception in 1959.  CTG was a global supplier of standard and custom ceramic shapes directly to third-parties as well as for use in transducers, hydrophones, and sonar systems manufactured by CTG's other business units.  CTG ceramics were recognized as among the highest quality in the world.

      (ii)    <u>Transducers</u>.  CTG's transducers were designed and manufactured with the use of CTG's piezoelectric ceramics.  CTG had been building transducers since 1966 and, prior to the Petition Date, manufactured over 5,000 different acoustic transducer designs for industrial applications.  CTG's products enabled data telemetry, seismic exploration, seabed mining, fish tracking and other applications requiring advanced acoustic technology.

      (iii)    <u>Sonar Technology</u>.  Using its piezoelectric ceramics and transducers, CTG designed and manufactured sonar equipment and underwater navigation systems which included tracking, homing, docking and range systems along with other custom acoustic solutions.  The U.S. Navy was the primary user of CTG's sonar technology, and CTG's products were deployed on almost every class of U.S. Naval vessel in commission today.

CTG also formerly owned and operated an electro-optical concern through its subsidiary BWPH Services LLC f.k.a. Electro-Optical Industries, LLC ("<u>BWPH</u>"), which manufactured infrared and surveillance systems, industrial thermometers, and electro-optical test and calibration equipment.  In June of 2016, BWPH sold its assets to HGH Infrared Systems, Inc., and ceased operations.

Certain of CTG's contracts with the United States military and information pertaining thereto are classified.  Due to CTG's possession of classified information, CTG restricts access to its facilities, obtains clearances for its personnel, and complies with other restrictions applicable to military contractors in its industry.  CTG must remain in compliance with its security clearance obligations in order to perform under existing military contracts and secure new military contracts.

As of the Petition Date, CTG had approximately 224 employees.  Through August 2016, CTG's YTD revenue was approximately $17.32 million.  CTG's annual revenue for 2015 was

---

[8] CTG had also formerly owned and operated an electro-optical concern through its subsidiary BWPH Services LLC f.k.a. Electro-Optical Industries, LLC ("<u>BWPH</u>"), which manufactured infrared and surveillance systems, industrial thermometers, and electro-optical test and calibration equipment.  In June of 2016, BWPH sold its assets to HGH Infrared Systems, Inc., and ceased operations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

approximately $29.25 million.  As of August 2016, CTG had approximately $16.2 million in book

assets and $16.4 million in book liabilities.

**B.      Prepetition Financing and Capital Structure**

Prior to the Petition Date, the Debtor was party to and a borrower under the *Loan and*

*Security Agreement* dated April 20, 2016 (the "Prepetition Credit Agreement") with Blue Wolf

Capital Fund II, L.P., as lender and secured party (the "Prepetition Lender") and all other documents,

agreements, notes, and instruments executed and/or delivered with, to, or in favor of the Prepetition

Lender in connection with the Prepetition Credit Agreement prior to the Petition Date (collectively,

as amended, modified, or supplemented and in effect, the "Prepetition Financing Agreements").

As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the

Prepetition Financing Agreements, on account of extensions of credit in the principal amount of

$2.86 million, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing

Agreements) and, to the extent set forth in the Prepetition Financing Agreements, costs, expenses,

fees (including reasonable attorneys' fees and legal expenses), and any other charges (collectively

the "Prepetition Debt").

To secure the Prepetition Debt, the Debtor granted security interests and liens to the

Prepetition Lender, in, to, and upon the Prepetition Collateral, which constitutes substantially all of

the Debtor's personal property and is comprised of the "Collateral" as defined in the Prepetition

Credit Agreement.

Pursuant to the Prepetition Credit Agreement, the Prepetition Lender made certain loans to

the Debtor.  These advances were required over the past few months in order to maintain the

Debtor's assets pending the ongoing restructuring process.  Aside from the foregoing secured

indebtedness, the Debtor has no outstanding secured debt.

**C.      Capital Structure**

CTG is a privately owned California limited liability company.  In 2011, CTG was acquired

by BW Piezo Holdings, LLC ("BWP"), a Delaware limited liability company, from Alta Properties,

Inc., f.k.a. Channel Technologies, Inc.  BWP now owns 100% of CTG's member interests.  BWP is

majority-owned by Blue Wolf Capital Fund II, L.P. ("BWCF"), which is an investment fund

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

managed by Blue Wolf Capital Advisors, L.P.  CTG is a member-managed LLC (Charles Miller is the manager).

Prior to the Petition Date, the Debtor was party to and a borrower under the *Loan and Security Agreement* dated April 20, 2016 (the "Prepetition Credit Agreement") with BWCF, as lender and secured party (the "Prepetition Lender") and all other documents, agreements, notes, and instruments executed and/or delivered with, to, or in favor of the Prepetition Lender in connection with the Prepetition Credit Agreement prior to the Petition Date (collectively, as amended, modified, or supplemented and in effect, the "Prepetition Financing Agreements").

As of the Petition Date, the Debtor was indebted to the Prepetition Lender under the Prepetition Financing Agreements, on account of extensions of credit in the principal amount of $2.86 million, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing Agreements) and, to the extent set forth in the Prepetition Financing Agreements, costs, expenses, fees (including reasonable attorneys' fees and legal expenses), and any other charges (collectively the "Prepetition Debt").  To secure the Prepetition Debt, the Debtor granted security interests and liens to the Prepetition Lender, in, to, and upon the Prepetition Collateral, which constitutes substantially all of the Debtor's personal property and is comprised of the "Collateral" as defined in the Prepetition Credit Agreement.

The Debtor's obligations owed to the Prepetition Lender under the Prepetition Financing Agreements were satisfied in full during the pendency of the Chapter 11 Case, as authorized by orders of the Court.

**D.    Events Leading to the Bankruptcy Filing**

Based on its liquidity challenges (discussed further below), in early 2016, BWCF funded certain of CTG's operating expenses via capital contributions made to BWP.  Subsequently in April 2016, CTG entered into the working capital loan facility with BWCF, discussed above.

During 2016, CTG undertook significant changes to its management team.  Among other changes, in January 2016, Christopher Holmes ("Holmes") was named CTG's Chief Executive Officer (succeeding Ralph Phillips); in February 2016, David Oldham, a consultant of BWP, was appointed acting Chief Financial Officer, and Arsen Melconian was promoted to Chief Technology

17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Officer; in April 2016, William Cidzik was appointed Vice President – Program Management; and in May 2016, Art Krokus was named Vice President – Operations.  On or about September 22, 2016, Holmes ceased employment with CTG, and CTG has not appointed a new CEO.  As of or about September 20, 2016, CTG retained CR3 Partners, LLC ("CR3") as its restructuring advisor; pursuant to the parties' engagement agreement, as of the Petition Date, David Tiffany serves as the Debtor's Chief Restructuring Officer.

As this management transition occurred, and as more rigor in program management and costs estimation was instituted (by new management including the new VP-Program Management) and more information became available (including the solidification of 2016/2017 overhead rates), CTG was able to gain better visibility into the likely financial outcomes of the company's long-term contracts entered into prior to 2016.  Certain long-term supply contracts were onerous to CTG and negatively impacted CTG's cash flow due to one or more reasons including the following: (1) excessive volume requirements; (2) underpricing; and/or (3) poorly or ambiguously drafted contracts and statements of work (including unclear work, performance and pass criteria, resulting in substantial delays, costs and difficulties for CTG).  As a result of the costs incurred to perform such contracts, CTG experienced accounting net losses of approximately $10.7 million for the year through August 2016 and $11.6 million estimated for the full year 2016.  Despite efforts to consensually address the problematic aspects of certain of its contracts with the counterparties through negotiations, with some minor exceptions, CTG was unable to stop the significant negative impact of such contracts on CTG's business.

Prior to the Petition Date, management projected that CTG would require further cash infusions to fully fund operations and critical capital expenditures through 2017.  Based on its financial condition and outlook in a very challenging environment (affected largely by its unfavorable prepetition contracts), CTG determined to file its chapter 11 case.  More specifically, CTG sought bankruptcy protection to expeditiously pursue sales of its business and assets and an orderly wind down of the remaining business.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

**E.** **Debtor's Assets & Liabilities**

In its Schedules of Assets and Liabilities (Docket Nos. 113, 115, 117, 134) ("Schedules"), subject to the qualifications set forth therein, the Debtor scheduled approximately $3.3 million in secured claims (consisting primarily of the secured claims of Blue Wolf Capital Fund, L.P. (discussed above)), $15.4 million in personal property assets (as of the Petition Date), including approximately $2.7 million in accounts receivable, $8.9 million in inventory, and $2.3 million in machinery, equipment and vehicles; the Debtor owns no real property. In the Schedules, the Debtor scheduled approximately $282,000 in priority claims and approximately $1.49 million in general unsecured claims. As of the date of the Plan, approximately $53,000 in secured claims (personal property liens), $560,000 in priority claims[9] and approximately $33 million in general unsecured claims have been asserted in filed proofs of claim that have not otherwise been withdrawn or disallowed. The Debtor is in the process of reviewing proofs of claim.

The Debtor will investigate potential avoidance actions and other causes of action against third parties, as may be appropriate. At this juncture, the Debtor cannot accurately estimate the potential recoveries, if any, from Estate Causes of Action.

## X.

## DEBTOR'S CHAPTER 11 CASE

**A.** **First Day, DIP Financing & Other Relief**

In order to facilitate the Chapter 11 Case and minimize disruption to the Debtor's business and operations, the Debtor filed certain motions with the Bankruptcy Court on or shortly after the Petition Date seeking certain relief, including but not limited to, the relief summarized below. The relief sought, which is typical in a chapter 11 case of this size and complexity, served to facilitate the administration of the Chapter 11 Case. Copies of all relevant pleadings are on file with the Bankruptcy Court and can be obtained free of charge by accessing the noticing/claims agent's website at https://cases.primeclerk.com/channeltechnologiesgroup/Home-Index.

The pleadings filed by the Debtor on or shortly after the Petition Date include, without limitation, the following: (i) a motion for an order authorizing the payment of prepetition sales and

---

[9] All of this amount is subject to reduction to zero as this consists of employee claims that have been paid in full per Bankruptcy Court order.

DOCS_LA:307113.9 13817/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

use and similar taxes [Docket No. 12; order, Docket No. 63], (ii) a motion for an order authorizing the Debtor to pay and/or honor certain prepetition wages, salaries, and employee benefits [Docket No. 6; order, Docket No. 61], (iii) a motion for an order authorizing the Debtor to honor certain prepetition customer obligations and continue certain customer programs in the ordinary course [Docket No. 10; order, Docket No. 59], (iv) a motion to maintain existing bank accounts and cash management system [Docket No. 9; order, Docket Nos. 58 & 78], (v) a motion regarding the continuation of utility services [Docket No. 7; order, Docket No. 57], and (vi) an application authorizing the retention of Prime Clerk LLC as noticing and claims agent for the Clerk of the Bankruptcy Court [Docket No. 18; order, Docket No. 95].

By its DIP financing motion [Docket No. 3], the Debtor also sought orders ("DIP Order(s)") authorizing the Debtor to implement the debtor-in-possession financing outlined in the term sheet attached to the interim order, with BWCF (the "DIP Lender"), an insider of the Debtor, to obtain extensions of credit on a priming senior secured, term basis, in an aggregate principal amount not to exceed $5,000,000 at any time outstanding (the "DIP Facility") on the terms of the DIP loan documents.  Without this postpetition financing, as well as related use of cash collateral, the Debtor would not have any liquidity to operate its business, and accordingly, the Debtor had an urgent and immediate need for the borrowings under the DIP Facility and use of cash collateral.  The Court entered an interim order on October 21, 2016 [Docket No. 76] and a final order on November 9, 2016 [Docket No. 110].

The Debtor also sought an order pursuant to Bankruptcy Code section 363, approving of the engagement contract of David Tiffany and CR3 Partners, LLC ("CR3"), as Chief Restructuring Officer of the Debtor [Docket No. 8].  CR3 specializes in providing restructuring advisory and crisis management services to troubled companies, including services relating to working capital management, debt capacity and restructuring, and business plan analysis.  The Bankruptcy Court entered an order on October 27, 2016, granting the Debtor's motion [Docket No. 90].

**B.     Sale Related Motions**

The Debtor has filed various sale related motions in order to maximize the value from the disposition of certain of the Debtor's assets.

20

Upon the Debtor's motion [Docket No. 112], the Bankruptcy Court approved of omnibus procedures for the sale, transfer and/or abandonment of certain equipment, finished goods, inventory, work-in-process inventory, documents and/or surplus, obsolete, non-core, or burdensome assets (either specific to certain customers or contracts and/or of immaterial value), free and clear of all liens and interests, relating to sales/transfers of assets with a net selling price less than $300,000, pursuant to an order entered on December 7, 2016 [Docket No. 133].

Upon the Debtor's motion [Docket No. 122], the Bankruptcy Court approved of the private sale of certain assets related to Debtor's MSI business division, to MSI Transducers Corp., free and clear of all liens, for approximately $1.175 million in cash, pursuant to an order entered on December 14, 2016 [Docket No. 150].

Upon the Debtor's motion [Docket No. 189], the Bankruptcy Court approved the private sale of certain inventory, supplies, work-in-process, documentation, tooling and equipment, other personal property, files, drawings, and other intellectual property, to BAE Systems Information and Electronic Systems Integration, Inc., free and clear of liens and interests, for $800,000 cash, pursuant to an order entered on February 15, 2017 [Docket No. 205].

Upon the Debtor's motion [Docket No. 211], the Bankruptcy Court approved the private sale of certain assets used in connection with Debtor's classified "Sonatech" project activities and operations, to Sonatech, LLC, free and clear of liens and interests, for $328,750 cash, pursuant to an order entered on March 22, 2017 [Docket No. 230].

Upon the Debtor's motion [Docket No. 225], pursuant to Court-approved bid procedures and a sale order entered on April 12, 2017 [Docket No. 268], the Bankruptcy Court approved the sale of certain assets related to Debtor's transducer design and manufacturing business operated by the divisions formerly known as International Transducers Corp. and the Internal Machine Shop, to Gavial ITC, LLC, free and clear of liens and interests, for approximately $1.075 million cash, and granted related relief.

Upon the Debtor's motion [Docket No. 225], pursuant to Court-approved bidding procedures and a sale order entered on April 12, 2017 [Docket No. 267], the Bankruptcy Court approved the sale of certain assets related to Debtor's piezoelectric ceramics business, to Piezo Kinetics, Inc., free

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

and clear of liens and encumbrances, for approximately $985,000 cash, and granting related relief.

**C.    Claims Bar Date**

Pursuant to an order entered on May 9, 2017 [Docket No. 311], the Bankruptcy Court set July 14, 2017 as (i) the general deadline for filing proofs of claim for any claims against the Debtor that arose prior to the Petition Date; (ii) the deadline for filing requests for administrative claims, arising between the Petition Date and April 30, 2017; (iii) the deadline for filing section 365 rejection claims (or, if applicable, the deadline is 30 days after the rejection effective date of the applicable contract or lease); and (iv) the deadline for filing any claims arising from the avoidance of a transfer under chapter 5 of the Bankruptcy Code (or, if applicable, the deadline is 30 days after the entry of judgment avoiding the transfer).

**D.    Retention of Debtor's Professionals**

The Debtor has retained (1) Pachulski Stang Ziehl & Jones LLP, as its bankruptcy counsel, pursuant to an order entered on November 1, 2016 [Docket No. 94], and (ii) Fernald Law Group LLP, as special counsel in connection with disputes with a customer, pursuant to an order entered on December 14, 2016 [Docket No. 146].  As noted above, the Bankruptcy Court also authorized the appointment of David Tiffany as the Debtor's CRO (with CR3 to perform services related thereto).

**E.    Miscellaneous Motions**

Pursuant to a motion filed on May 23, 2017 [Docket Nos. 325 & 327], the Court entered an order on June 20, 2017 [Docket No. 338], authorizing the rejection of customer contracts between the Debtor and Northrop Grumman, the Debtor's real property lease with Alta Properties, and specified supplier/vendor, customer and certain other contracts.

Pursuant to a motion filed on December 12, 2016 [Docket No. 141], the Bankruptcy Court entered an order on January 4, 2017 [Docket No. 170], authorizing the Debtor to terminate its 401(k) plan, effective January 31, 2017, and granting related relief.

Upon the Debtor's motion [Docket No. 151], the Bankruptcy Court entered an order [Docket No. 171], approving of employee incentive payments to certain employees conditioned on the volume of product runs for a customer, Alcon Laboratories, Inc.

DOCS_LA:307113.9 13817/002

**F.    Appointment of Committee and Retention of Committee Professionals**

On or about April 7, 2017, the United States Trustee appointed the Committee to represent the interest of general unsecured creditors [Docket No. 255].  The current members are Lockheed Martin Corp. and Advanced GeoEnvironmental, Inc.  The Committee employed Winthrop Couchot Golubow Hollander, LLP, as its bankruptcy counsel, approved by order entered on May 17, 2017, effective as of April 10, 2017 [Docket No. 322].

**G.    Extension of Deadline to Remove Actions**

The Debtor filed three motions seeking to extend the deadline to remove actions pursuant to 28 U.S.C § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure.  The most recent motion sought to extend the period from September 11, 2017 through and including January 9, 2018 in order to analyze the actions (as well as any related proofs of claim that have been filed) in order to make well-informed decisions concerning the removal of the Actions and to ensure that the Debtor's rights provided by 28 U.S.C. § 1452 can be exercised in an appropriate manner. The Court entered the most recent Order approving the most recent motion on September 26, 2017 [Docket No. 385].

**H.    Stipulation to Modify Terms of Compensation for CR3 Partners, LLC and
        David  Tiffany, Chief Restructuring Officer**

On October 27, 2016, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code Approving the Engagement Contract of David Tiffany and CR3 Partners, LLC as Chief Restructuring Officer* (the "CR3 Employment Order") [Docket No. 90], pursuant to which David Tiffany was retained to serve as the Debtor's Chief Restructuring Officer and CR3 was retained to perform services related thereto.

The CR3 Employment Order provides that, subject to Bankruptcy Court approval of fee applications and prevailing compensation procedures, Mr. Tiffany is to receive $15,000 per week as compensation plus reimbursement of his expenses and CR3 will bill its other professionals assisting Mr. Tiffany on an hourly basis plus reimbursement of expenses

Beginning July 2017, Mr. Tiffany began voluntarily reducing his fees to $7,500 per week given his reduced workload.  Thereafter, pursuant to an *Order Approving Stipulation to Modify Terms of Compensation for CR3 Partners LLC and David Tiffany, Chief Restructuring Officer (*the "Modification Order") entered on September 6, 2017 [Docket No. 374], during the pendency of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case, CR3 agreed to charge $425 per hour for David Tiffany, in lieu of the $15,000 per week previously approved by the Court (or the $7,500 per week voluntarily reduced rate.

The Modification Order also provides that in the event CR3 and Mr. Tiffany determine that they might exceed $15,000 in total fees for a given month, they shall obtain the consent of the Committee (via its counsel) whose consent shall not be unreasonably withheld.

## I. Rejection of Executory Contracts and Unexpired Leases

The Debtor filed a *Motion for Order Authorizing Debtor to Reject Certain Executory Contracts and Unexpired Leases* (the "Rejection Motion") [Docket 325]. The Rejection Motion sought to reject numerous executory contracts and unexpired leases (the "Rejected Agreements") effective as of the day of the filing of the Rejection Motion. The Court entered an Order granting the Rejection Motion on June 20, 2017 [Docket 338]. Thus, the Debtor has rejected approximately 370 Rejected Agreements.

## J. Settlement with Nightline, Inc.

Prior to the commencement of the Case, Nightline, Inc. ("Nightline") and Electro Optical Industries, LLC ("EOI") entered into an agreement (the "EOI Agreement") regarding the development and delivery of commercial grade night vision test modules, including certain test sets (the "Test Sets"). A dispute arose between Nightline and EOI regarding their respective rights and obligations under the EOI Agreement following which Nightline alleged a setoff against amounts owed due to purported defects in the Test Sets. The Debtor subsequently succeeded to or otherwise acquired EOI's right to collect all amounts due or payable by Nightline under the EOI Agreement.

On April 5, 2017, the Debtor filed a demand for arbitration before the American Arbitration Association with a principal demand of $252,000 against Nightline, commencing Case No. 01-17-0001-9977 (the "Arbitration Proceeding").[10] Subsequently, the Parties held negotiations and reached an agreement to resolve the Arbitration Proceeding and the disputes between them. (the "Settlement").

---

[10] On November 23, 2016, the Debtor moved the Court for entry of an order authorizing the Debtor to employ Fernald Law Group LLP ("FLG") as the Debtor's special counsel to collect the Nightline Account from Nightline. [Docket No. 119] and, thereafter, on December 15, 2016, the Court granted the Debtor's application to employ FLG [Docket No. 146].

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Pursuant to the Settlement, Nightline shall pay to the Debtor, the amount of $145,000 to be paid in three installments over a period of five (5) months. The Debtor believed that when considered in light of the risk associated with continued litigation, and the certain continued delay and expense of litigation and the payment of approximately $145,000 to the Estate, the Settlement was the most prudent and economical method for resolving the Arbitration Proceeding and the underlying disputes.

In light of the Settlement, the Firm, on behalf of the Debtor, filed a *Motion for Order Approving Settlement With Nightline, Inc.* [Docket 383].  On October 2, 2017, the Court approved said motion [Docket No. 388].

## XI.

## SUMMARY OF THE PLAN

A.    **Treatment of Unclassified Claims Under the Plan**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Section B below.

1.    **DIP Financing Claims.**

The DIP Financing Claim has been satisfied in full during the Chapter 11 Case.

2.    **Administrative Expenses.**

Subject to the allowance procedures and deadlines provided below, the Liquidating Trustee (or its agent) shall pay to each holder of an Allowed Administrative Expense, on account of the Allowed Administrative Expense, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense, unless the holder agrees to other treatment.  Except as otherwise provided in the Plan or in a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense that is an Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date such payment would have become due for payment of such Allowed Administrative Expense in the absence of the Chapter 11 Case, whether pursuant to contract or applicable non-bankruptcy law; and (ii) payment of an Administrative Expense that becomes an Allowed Claim

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25

following the Effective Date shall be made on or before the date that is thirty (30) days after an order

deeming such Administrative Expense an Allowed Claim becomes a Final Order.

### a.    Administrative Expenses Arising Before or On April 30, 2017.

In accordance with the Claims Bar Date Order, all applications for payment of

Administrative Expenses incurred between the Petition Date and April 30, 2017, must have Filed

such applications prior to the First Administrative Expenses Bar Date. Persons that failed to File

such applications on or before the First Administrative Expenses Bar Date shall be barred from

asserting such Administrative Expenses against the Debtor, the Estate, the Liquidating Trust, the

Liquidating Trustee, or any of their respective property.

### b.    Administrative Expenses Arising Between April 30, 2017 and Effective Date; Professional Persons Fees.

All applications for final compensation of Professional Persons for services rendered and for

reimbursement of expenses incurred on or before the Effective Date and all other requests for

payment of Administrative Expenses incurred between April 30, 2017 and the Effective Date

pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), 507(a)(1) or 1103 (except only for

post-petition obligations incurred through the Effective Date in the ordinary course of the Debtor's

post-petition business and obligations under section 1930 of title 28 of the United States Code) shall

be filed no later than forty-five (45) days after the Effective Date. Professional Persons and others

that do not File such requests on or before the Second Administrative Expenses Bar Date shall be

barred from asserting such Administrative Expenses against the Debtor, the Estate, the Liquidating

Trust, the Liquidating Trustee, or any of their respective property. Objections to applications of

Professional Persons or others for compensation or reimbursement of expenses must be Filed and

served on the Liquidating Trustee and its counsel, as well as the Professional Persons and others to

whose application the objection is addressed, in accordance with the Bankruptcy Code, the

Bankruptcy Rules or pursuant to any other procedure set forth by an order of the Bankruptcy Court.

### 3.    Priority Tax Claims

Except as otherwise agreed to by the parties, or ordered by the Bankruptcy Court, as soon as

practicable after the Effective Date, each holder of an unpaid Allowed Priority Tax Claim shall

receive payment in full in an amount equal to the Allowed Priority Tax Claim.

26

Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, all requests for payment of Claims by a governmental unit (as defined under section 101(27) of the Bankruptcy Code) for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established or is governing (including the First Administrative Expenses Bar Date), must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) ninety (90) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Except as otherwise provided in section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes is required to File a request for a payment of the post-petition taxes and other monies due related to such taxes. Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no Distribution under the Plan or otherwise on account of such Claim.

**B.    Classification and Treatment of Claims and Interests Under the Plan**

The following is a description of those Claims and Equity Interests subject to classification and their treatment under the Plan.

**1.    Class 1 (Other Priority Claims)**

**a.    Classification**

Class 1 consists of all Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, except Priority Tax Claims and Administrative Expenses.

**b.    Treatment**

The Liquidating Trustee shall pay all Allowed Claims in this Class in full, in Cash, on the later of: (i) the Effective Date; and (ii) the date on which an order allowing such Claim becomes a

DOCS_LA:307113.9 13817/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Final Order, and in each case or as soon thereafter as is practicable.  Class 1 is not Impaired, and the holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

**2.    Class 2 (Secured Claims)**

**a.    Classification**

Class 2 consists of Secured Claims. For purposes of Distributions under the Plan, each Holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

**b.    Treatment**

Except to the extent that a Holder of an Allowed Secured Claim has been paid by the Debtor, in whole or in part, prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter, at the option of the Debtor, each Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Secured Claim, (y) return of the collateral securing such Claim or (z) such other treatment as may be agreed to by the Holder.  The Debtor shall inform each Holder of a Secured Claim of the treatment of such creditor's Secured Claim not less than ten (10) days prior to the Confirmation Hearing.  Class 2 is not Impaired, and the Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

**3.    Class 3 (General Unsecured Claims)**

**a.    Classification**

Class 3 consists of all Allowed General Unsecured Claims.

**b.    Treatment**

On the Effective Date, unless a Holder of an Allowed Class 3 Claim agrees to accept a lesser treatment of such Claim, each Holder of an Allowed Class 3 Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such General Unsecured Claim, an allocated Class 3 Trust Interest, which shall entitle the Holder to receive its Pro Rata share of funds available to Holders of Class 3 Trust Interests pursuant to the Liquidating Trust Agreement.  Class 3 is Impaired, and the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

28

### c.    Timing of Distributions

The Liquidating Trustee shall make Distributions to the Holders of Allowed Class 3 Claims on account of their respective Class 3 Trust Interests. All Holders of Allowed Class 3 Claims shall receive an initial Distribution of their respective Class 3 Trust Interests within 120 days following the Effective Date, or on such later date as the Liquidating Trustee determines to be practicable, in the exercise of its sole and absolute discretion, and shall receive thereafter Distributions of their respctive Class 3 Trust Interests on each 180th-day anniversary of the Effective Date, or on such later date as the Liquidating Trustee determines to be practicable in the exercise of its sole and absolute discretion.  Holders of Allowed Class 3 Claims shall receive any final Distribution of their respective Class 3 Trust Interests within ten (10) days after the Liquidating Trustee's filing of the Liquidating Trustee's Certification (as such term is defined in Section V.B.17 hereof), or as soon thereafter as is practicable.

### d.    Post-Petition Interest

In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed Class 3 Claim shall not include post-petition interest on account of such Allowed Class 3 Claim, except to the extent that all of the following are satisfied and paid in full:  (i) all Allowed Administrative Claims; (ii) all Allowed Priority Tax Claims; (iii) all Allowed Other Priority Claims; (iv) all Allowed Secured Claims; (v) all Allowed General Unsecured Claims; (vi) all late-filed Claims; (vii) all Post-Effective Date Plan Expenses; and (viii) all Allowed Claims for fines, penalties, or forfeiture, or for multiple, exemplary or punitive damages, arising before the Petition Date, to the extent that such Claims are not for actual pecuniary loss suffered by the Holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy Code.  Any post-petition interest that may be payable on an Allowed General Unsecured Claim shall be calculated from the Petition Date through the date on which such Allowed General Unsecured Claim is paid in full.

### e.    Conditions to Payment of Distributions

Notwithstanding any other provision to the contrary contained in the Plan, no Distribution shall be made on account of any Allowed Class 3 Claim until each of the following occurs:  (i) all Administrative Claims are paid or are reserved for; (ii) all Priority Tax Claims are paid or are reserved for; (iii) all Other Priority Claims are paid or are reserved for; (iv) all Allowed Secured

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

Claims are paid or are reserved for (subject to the elections provided pursuant to Section II.C.2.d hereof); and (v) all outstanding Post-Effective Date Plan Expenses have been paid in full and an adequate reserve is established by the Liquidating Trustee providing for full payment of the estimated amount of all Post-Effective Date Plan Expenses through the Case Closing Date, in an amount to be determined by the Liquidating Trustee in the exercise of its sole and absolute discretion.

**4.    Class 4 (Equity Interests)**

**a.    Classification**

Class 4 consists of all Equity Interests in the Debtor.

**b.    Treatment**

As of the Effective Date, each Holder of record of an Allowed Equity Interest shall not receive a Distribution under the Plan and all Equity Interests will be deemed to be cancelled and void; provided, however, that, in the event that each Allowed Claim, plus any post-petition interest to which the Holder thereof is entitled, is paid in full, each Holder of record of an Allowed Equity Interest shall receive, in full and complete satisfaction, exchange and release of such Allowed Equity Interest, its Pro Rata share of any funds remaining in the Liquidating Trust, payable as soon as practicable as determined by the Liquidating Trustee in the exercise of its sole and absolute discretion.

For the purpose only of determining any Distributions to which Holders of Allowed Equity Interests may be entitled under the Plan, each beneficial Holder of record of an Equity Interest in the Debtor as of the Effective Date shall be deemed to have an Allowed Equity Interest for the number of shares of stock in the Debtor held by it as of the Effective Date.  In the event that any entity that is neither the Holder of record of an Equity Interest in the Debtor as of the Effective Date nor the beneficial owner of an Equity Interest in the Debtor as of the Effective Date files a proof of right to record status pursuant to Rule 3003(d) of the Bankruptcy Rules, such proof of right shall be disallowed automatically and without any need for the Debtor, the Liquidating Trustee, or any other party-in-interest to object thereto or otherwise take any act with respect thereto.

DOCS_LA:307113.9 13817/002

Class 4 is Impaired, but because it is very likely that no Distributions shall be made to Holders of Equity Interests in Class 4, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore the Holders of Interests in Class 4 are not entitled to vote to accept or reject the Plan.

**C.    Provisions for Treatment of Disputed, Contingent, or Unliquidated Claims and Administrative Expenses**

**1.    Resolution of Disputed Claims**

As of the Effective Date, and subject to the provisions of the Plan, the Liquidating Trustee shall have the sole authority to investigate, administer, monitor, implement, litigate and settle all Disputed Claims. From and after the Effective Date, the Liquidating Trustee may file and prosecute objections to Claims, including, but not limited to, Administrative Expenses, Priority Tax Claims, and Other Priority Claims. All objections shall be filed prior to the Liquidating Trustee Claim Objection Deadline and served upon the Holder of the Claim to which the objection is made.

**2.    Reserve for Disputed Claims**

Cash which would be distributed on account of Holders of Disputed Claims, in the event that such Disputed Claims become Allowed Claims, shall instead be placed in the Disputed Claims Reserve maintained by the Liquidating Trustee. Such Cash in the Disputed Claims Reserve will be reserved for the benefit of Holders of such Disputed Claims pending determination of their entitlement thereto. Unless the Bankruptcy Court orders otherwise, the Liquidating Trustee will reserve Pro Rata Distributions for such Disputed Claims based upon the full amount of the Disputed Claims or, in the case of a Disputed Claim that is an Administrative Expense, Priority Tax Claim or Other Priority Claim, Cash in the full amount of such Disputed Claim. No reserve shall be required for any Disputed Claim to the extent of any effective insurance coverage therefor. Such Cash so reserved shall be distributed by the Liquidating Trustee to the holder of a Disputed Claim to the extent that such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.

To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of Cash that has been reserved, the resulting surplus Cash shall be allocated among Holders of Allowed Claims in the Class in which the Disputed Claim was classified as provided in the Plan.

31

To the extent that any portion of a Disputed Claim is not disputed, the Liquidating Trustee shall establish a reserve in the Disputed Claims Reserve only on account of that portion of the Disputed Claim that is in dispute and shall make one or more interim Distributions on account of the portion of such Disputed Claim that is not in dispute.

The Liquidating Trustee may, at the Liquidating Trustee's sole discretion, file a tax election to treat the Disputed Claims Reserve as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes, rather than tax such reserve as a part of the grantor liquidating trust.  If the election is made, the Liquidating Trustee shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

### 3.    Exclusive Right to Object to Claims

From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims.  As the representative of the Estate, the Liquidating Trustee shall succeed to all of the rights and powers of the Debtor and the Estate with respect to all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor and the Estate as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

### 4.    Investigation Regarding Disputed Claims

Notwithstanding the fact that the Liquidating Trustee shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained herein shall be deemed to obligate the Liquidating Trustee to file any objection to a Claim, which action shall be determined by the Liquidating Trustee in the exercise of its sole and absolute discretion.

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE CLAIMS IN THE CHAPTER 11 CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS.  THIS INVESTIGATION IS ONGOING AND, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.  AS A RESULT, HOLDERS OF CLAIMS AND OTHER**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

**PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE.  THE LIQUIDATING TRUSTEE SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY RESPECT.**

       **5.**     **Distribution After Allowance**

Within fourteen (14) days following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Liquidating Trustee, as disbursing agent under the Plan, shall distribute to the Holder of such Allowed Claim any Cash or other property that would have been distributable to such Holder as if, at the time of the making of any Distribution to the Class of which such Holder is a member, such Claim had been an Allowed Claim and not a Disputed Claim.

**D.**    **Implementation of the Plan**

On or soon as practicable after the Effective Date, the following shall occur with respect to the implementation of the Plan:  (i) all acts, documents and agreements appropriate to implement the Plan shall be executed; (ii) the Liquidating Trustee, as disbursing agent under the Plan, shall make all Distributions required to be made on or about the Effective Date of the Plan in accordance with the terms and conditions of the Plan; and (iii) the Liquidating Trustee, as disbursing agent under the Plan, shall fund reserves required to be funded pursuant to the Plan.

Upon the Effective Date, all transactions and matters provided for under the Plan shall be deemed to have been authorized and approved by the Debtor without any requirement of further action by the Debtor, or Holders of Equity Interests in the Debtor.

       **1.**     **Vesting of Assets**

Unless otherwise expressly provided under the Plan, on the Effective Date, the Debtor's Assets, including, without limitation, all Estate Causes of Action, will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33

provisions of the Plan.  On and after the Effective Date, the transfer of the Debtor's Assets from the Estate to the Liquidating Trust will be deemed final and irrevocable and Distributions may be made from the Liquidating Trust.

In connection with the foregoing:

(a)     On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code.  The Liquidating Trustee shall have the rights, powers and duties provided for by the Plan, the Liquidating Trust Agreement, and by the Confirmation Order.  The Liquidating Trustee, in the exercise of its reasonable business judgment, shall be responsible for liquidating the remaining assets of the Debtor, winding up the financial affairs of the Debtor, and for making Distributions to Holders of Claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for Holders of Claims as favorable a recovery on their Claims as is reasonably possible under the circumstances of this case.

(b)     The Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including, without limitation, by set-off) any and all Estate Causes of Action and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court.

(c)     As of the Effective Date, the Liquidating Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Equity Interests, except as otherwise provided in the Plan.

**2.     Establishment of the Liquidating Trust**

**a.     Generally**

On the Effective Date the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtor and the Liquidating Trustee will execute the Liquidating Trust Agreement.  The Liquidating Trust is organized and established as a trust for the benefit of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34

Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury

Regulation Section 301.7701-4(d).

### b.    Beneficiaries

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the

Liquidating Trust will be the Holders of all Allowed Claims against the Debtor.  The Holders of such

Allowed Claims will receive an allocation of the Liquidating Trust Assets as provided for in the Plan

and the Liquidating Trust Agreement.  The Beneficiaries of the Liquidating Trust shall be treated as

the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

### c.    Implementation of the Liquidating Trust

On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidating Trustee will

be authorized and directed to take all such actions as required to transfer to the Liquidating Trust,

from the Debtor and Estate, the Debtor's Assets.  From and after the Effective Date, the Liquidating

Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust

Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating

Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims,

objecting, compromising and settling Claims (including, without limitation, exercising set-off rights

and/or seeking the subordination and/or reclassification of Claims), prosecuting or otherwise

resolving Estate Causes of Action and causing Distributions from the Liquidating Trust to be made

to the Beneficiaries.  The funding of the Liquidating Trust will be from the Debtor's Cash on hand as

of the Effective Date and the proceeds of the liquidation by the Liquidating Trustee of any other

Liquidating Trust Assets.

### d.    Transfer of the Debtor's Assets

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the

Bankruptcy Code, the Debtor is authorized and directed to transfer, grant, assign, convey, set over,

and deliver to the Liquidating Trustee all of the Debtor's and Estate's right, title and interest in and

to its Assets, including all Estate Causes of Action, free and clear of all liens, Claims, encumbrances

or interests of any kind in such property, except as otherwise expressly provided in the Plan.  To the

extent required to implement the transfer of the Debtor's Assets from the Debtor and Estate to the

35

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Liquidating Trust, all Persons will cooperate with the Debtor and Estate to assist the Debtor and Estate to implement said transfers.

### e.    Representative of the Estate

The Debtor shall identify the Liquidating Trustee in its sole discretion subject to consultation with the Committee.  The Liquidating Trustee will be appointed as the representative of the Debtor's Estate pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to the Liquidating Trust Agreement) to *inter alia*: (i) object to, settle and compromise Claims (including any Claim for payment of any Administrative Expense) against the Debtor (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of Claims) and Equity Interests in the Debtor; (ii) administer, investigate, prosecute, settle and abandon all Estate Causes of Action assigned to the Liquidating Trust; (iii) make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Case.  Except only for the filing of a final decree to close the Chapter 11 Case pursuant to Rule 3022 of the Bankruptcy Rules, the Liquidating Trustee may take, as representative of the Estate, all acts to implement and consummate the Plan and the Liquidating Trust Agreement, including the acts set forth in this Section V.B.5, without any need for notice to creditors or order or approval of the Bankruptcy Court.  As the representative of the Estate, the Liquidating Trustee will be vested with all of the rights and powers of the Debtor and Estate with respect to all Estate Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtor and Estate, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Liquidating Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Liquidating Trust Agreement incurred by the Liquidating Trust.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 3.    No Liability of Liquidating Trustee

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, and representatives, and professionals employed or retained by the Liquidating Trustee (the "Liquidating Trustee's Agents"), will not have or incur liability to any Person for an act taken or omission made in good faith in connection with or related to the administration of the Liquidating Trust Assets, the implementation of the Plan and the Distributions made thereunder or Distributions made under the Liquidating Trust Agreement; **provided, however, that the foregoing limitation shall not apply to any damages suffered or incurred by any Holder of a Claim or Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, willful misconduct, or from profit derived from a breach of trust by the Liquidating Trustee or the Liquidating Trustee's Agents**.  The Liquidating Trustee, the Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members, and representatives, and professionals employed or retained by any of them, will in all respects be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement.  Entry of the Confirmation Order constitutes a judicial determination that the exculpation provision contained in this Section of the Plan is necessary to, *inter alia*, facilitate Confirmation and feasibility and to minimize potential claims arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the Liquidating Trust, or their respective property.  The entry of the Confirmation Order confirming the Plan will also constitute a res judicata determination of the matters included in the exculpation provisions of the Plan.  Notwithstanding the foregoing, nothing herein or in this Section of the Plan will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of the Liquidating Trustee to any Person.

### 4.    Provisions Relating to Federal Income Tax Compliance

A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are Beneficiaries.  For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274.  Any such transfer shall be treated for

37

federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the Liquidating Trusts.  The Beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

**5.    Cooperation with Liquidating Trustee**

All Holders of Claims, Holders of Equity Interests and other parties-in-interest shall cooperate with the Liquidating Trustee by executing any documents, and by taking any acts, appropriate to implement the provisions of the Plan.

**6.    Compensation of the Liquidating Trustee/Removal of the Liquidating Trustee**

On the Effective Date of the Plan, the Liquidating Trustee shall be appointed to serve under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee's compensation shall be as provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall serve during the term of the Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing given to the Post-Effective Date Notice Parties, any party-in-interest shall be entitled to request, for cause shown, that the Bankruptcy Court terminate the employment of the Liquidating Trustee and replace it with another Person, who if appointed by Final Order of the Bankruptcy Court, will have all of the rights, powers and duties provided to the Liquidating Trustee by the Plan, the Liquidating Trust Agreement, the Confirmation Order and by the provisions of the Final Order of the Bankruptcy Court appointing such replacement Liquidating Trustee.

**7.    Resignation of the Liquidating Trustee**

Upon any resignation, death, disability or inability to serve of the Liquidating Trustee ("Liquidating Trustee Service Termination Event"), the members of the Committee as of the Confirmation Date may appoint a replacement Liquidating Trustee after notice to the Post-Effective Date Notice Parties.  In the event that no replacement Liquidating Trustee is appointed within sixty (60) days after the date of any Liquidating Trustee Service Termination Event, the Office of the United States Trustee may, after notice and an opportunity for hearing, request that the Chapter 11 Case be converted to one under chapter 7 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

38

### 8. Funding of Post-Effective Date Plan Expenses

The Liquidating Trust shall be entitled to incur, and to be reimbursed for, Post-Effective Plan Expenses in performing its duties and obligations under the Plan and Liquidating Trust Agreement. All Post-Effective Date Plan Expenses shall be expenses of the Liquidating Trust. The Liquidating Trustee shall have no personal liability for any Post-Effective Date Plan Expenses. The Liquidating Trustee shall disburse funds from the Liquidating Trust Assets for the purpose of funding the Post-Effective Date Plan Expenses.

### 9. Estate Causes of Action

The right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf of the Debtor and the Estate any and all Estate Causes of Action, including, but not limited to, any Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estate to the Liquidating Trustee.

As of the Effective Date, the Liquidating Trustee shall be authorized to exercise and to perform the rights, powers and duties held by the Estate with respect to the Estate Causes of Action, and, from and after the Effective Date, the Liquidating Trustee, shall have the sole and exclusive right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and interests of the Estate with respect to the Estate Causes of Action, without the consent or approval of any third party, and without any further approval or order of the Bankruptcy Court.

The Liquidating Trustee shall make the decision, in the exercise of its business judgment, whether to prosecute or to continue to prosecute any Estate Cause of Action. This decision shall be based, in part, upon the Liquidating Trustee's evaluation of the merits of the Estate Cause of Action as well as the costs required to prosecute such Estate Cause of Action taking into account the resources available to make Distributions to Creditors. The Liquidating Trustee, shall be entitled to determine, in the exercise of its business judgment, not to prosecute, or to abandon, any Estate Cause of Action.

The Liquidating Trustee may retain professionals to represent it in prosecuting Estate Causes of Action, including professionals who were employed by the Debtor or the Committee in the Chapter 11 Case. The Liquidating Trustee shall determine the terms of the retention of

39

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a

contingency fee basis to prosecute some or all of the Estate Causes of Action.

Unless an Estate Cause of Action is expressly waived, relinquished, released, compromised,

or settled in the Plan or in any Final Order, such Estate Cause of Action is expressly reserved for

later adjudication by the Liquidating Trustee (including, without limitation, any Estate Causes of

Action of which the Debtor presently may be unaware, or which may arise or exist by reason of facts

or circumstances unknown to the Debtor at this time, or facts or circumstances which may change or

be different from those which the Debtor now believes to exist) and, therefore, no preclusion

doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue

preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall

apply to the Liquidating Trustee's prosecution of Estate Causes of Action based on the Disclosure

Statement, the Plan, or the Confirmation Order.  Without limiting the generality of the foregoing,

any Person with respect to which the Debtor has incurred an obligation (whether on account of

services, purchase or sale of property, or otherwise), or who has received services from the Debtor or

a transfer of money or property of the Debtor, or who has transacted business with the Debtor,

should assume that such obligation, transfer, or transaction may be evaluated by the Liquidating

Trustee subsequent to the Effective Date and may be the subject of an Avoidance Action or other

action or proceeding filed after the Effective Date.

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE
EXISTENCE OF ESTATE CAUSES OF ACTION.  THE INVESTIGATION IN THIS
REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY
ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY
PARTICULAR ESTATE CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR
SET FORTH IN THE PLAN, AN ESTATE CAUSE OF ACTION MAY BE FILED AGAINST
ANY CREDITOR OR OTHER PARTY AS THE LIQUIDATING TRUSTEE MAY
DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 10.  Post-Effective Date Professional Fees

The Liquidating Trustee may employ, without any need to give notice to Holders of Claims or other parties-in-interest or obtain any approval of the Bankruptcy Court, any professional to aid the Liquidating Trustee in performing the Liquidating Trustee's duties under the Plan or the Liquidating Trust Agreement, as the Liquidating Trust deems appropriate in the exercise of its sole and absolute discretion, including professionals who were employed by the Debtor or the Committee in the Chapter 11 Case.  Any professional employed by the Liquidating Trustee after the Effective Date shall be entitled to obtain from the Liquidating Trustee payment of the professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without any need to give notice to Holders of Claims or other parties-in-interest or to obtain any approval or order of the Bankruptcy Court.  Notwithstanding the foregoing, if the Liquidating Trustee should fail to pay any post-Effective Date fees and costs of a professional entitled to such payment, within thirty (30) days after the professional's rendering of its billing statement, the professional shall be entitled to seek, by application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court requiring the Liquidating Trustee to forthwith pay to the professional its fees and costs.

### 11.  Approval for Disposition of Assets

From and after the Effective Date, the Liquidating Trustee shall be entitled to sell, transfer, assign, encumber or otherwise dispose of any interest in any of the Liquidating Trust Assets, without any need to give notice to Holders of Claims or parties-in-interest or to obtain any approval or order of the Bankruptcy Court.  Notwithstanding the foregoing, the Liquidating Trustee shall be entitled to seek, from the Bankruptcy Court, an order authorizing the sale of any Liquidating Trust Asset free and clear of liens pursuant to the provisions of section 363(f) of the Bankruptcy Code.

### 12.  Compromise of Controversies

From and after the Effective Date, the Liquidating Trustee shall be entitled to compromise any objections to a Disputed Claim, or any controversies relating to Estate Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to creditors or parties-in-interest or to obtain any approval or order of the Bankruptcy Court.

DOCS_LA:307113.9 13817/002

### 13. Bankruptcy Court Approval Relative to Post-Confirmation Matters

Nothing contained in the Plan shall be deemed to impair in any manner the right of the Liquidating Trustee to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken, or granting relief, consistent with the Plan as may be necessary or desirable to effectuate the provisions of the Plan.

### 14. Liquidating Trustee Certification

On or before the date upon which the Liquidating Trustee determines, in the exercise of its sole and absolute discretion, that all Estate Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Liquidating Trust Assets have been liquidated or otherwise disposed of, and that all Distributions required to be made under the Plan have been made or that final Distributions are being made or will be made within ten (10) days or as soon thereafter as is practicable by the Liquidating Trustee, the Liquidating Trustee shall file with the Bankruptcy Court and serve upon the Office of the United States Trustee and any other Post-Effective Date Notice Party a certification attesting to such determination ("Liquidating Trustee Certification").

### 15. Final Decree

Unless earlier filed by the Liquidating Trustee, by the thirtieth (30th) day after the filing of the Liquidating Trustee Certification, the Liquidating Trustee shall file, in accordance with Rule 3022 of the Chapter 11 Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Case.

### 16. Other Rights, Powers and Duties of Liquidating Trustee

In addition to the rights, powers and duties granted expressly to the Liquidating Trustee pursuant to the Plan, the Liquidating Trustee shall have such other rights, powers and duties that are appropriate to implement and to carry out the provisions of the Plan for the benefit of Holders of Claims that are not inconsistent with the provisions of the Plan.

### 17. Resolution of Disputes

In the event that a dispute should arise between the Liquidating Trustee and any party-in-interest in the Chapter 11 Case regarding any matters pertaining to the Plan, the Liquidating Trust Agreement or pertaining to the Liquidating Trustee's performance of its duties and exercise of its

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

rights, powers and remedies under the Plan, either of them may request, pursuant to the provisions of the Bankruptcy Rules, that the Bankruptcy Court resolve the merits of such dispute.

**18.    Termination of Employment of Liquidating Trustee**

Upon the Case Closing Date, the rights, powers and duties granted to the Liquidating Trustee hereunder or under the Liquidating Trust Agreement shall terminate and the Liquidating Trustee shall be discharged.

**19.    Bar Date for Filing Avoidance Action Payment Claims**

Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Estate and shall not be entitled to any Distribution under the Plan, unless a proof of Claim for such Avoidance Action Payment Claim is filed and served on the Liquidating Trustee within thirty (30) days after the later of (a) the date of entry of the order of the Bankruptcy Court adjudging the creditor's liability to the Debtor on account of such Avoidance Action, or (b) the Effective Date.

**E.    Prosecution of Estate Causes of Action by the Liquidating Trustee**

**1.    In General**

Pursuant to the Confirmation Order, on the Effective Date, the Debtor irrevocably assigns, transfers and conveys to the Liquidating Trustee the right to manage and control all property of the Estate, including, but not limited to, all Estate Causes of Action. Subject to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the sole power and authority to prosecute, compromise or otherwise resolve after the Effective Date any and all such Estate Causes of Action, with all recoveries derived therefrom to be included within the Liquidating Trust Assets.

**2.    Existing and Potential Causes of Action**

Due to the size, nature and scope of the Debtor's business operations and the multitude of business transactions therein, there may be Estate Causes of Actions that currently exist, or may subsequently arise, in addition to the matters identified below.  The Debtor is not, and it should not be assumed that, because any existing or potential Estate Causes of Action have not yet been pursued or have not yet been identified by the Debtor, any such Estate Causes of Action have been

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

waived.  Under the Plan, the Liquidating Trust retains all rights to pursue any and all Estate Causes

of Action to the extent the Liquidating Trustee deems appropriate (under any theory of law or equity,

including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in

any court or other tribunal, including, without limitation, in an adversary proceeding filed in the

Chapter 11 Case).

Existing or potential Estate Causes of Action that may be pursued by the Liquidating Trustee

after the Effective Date, include, without limitation, (i) any and all Estate Causes of Action pursuant

to any applicable section of the Bankruptcy Code, including, but not limited to, (a) any claims of the

Debtor arising under section 362 of the Bankruptcy Code; (b) turnover claims arising under section

542 or 543 of the Bankruptcy Code and (c) any Avoidance Actions; (ii) objections to Claims; (iii)

claims that the Estate is entitled to set off or recoup against parties with Claims against the Estate;

and (iv) any action for equitable subordination of any Claim against the Estate pursuant to section

510 of the Bankruptcy Code.  Moreover, the Liquidating Trustee may pursue existing or potential

Estate Causes of Action related to any other litigation or Estate Causes of Action, whether legal,

equitable, or statutory in nature, arising out of, or in connection with, the Debtor's business, assets,

or operations, or otherwise affecting the Debtor, including without limitation, possible claims against

the following types of parties for the following types of claims: (a) possible claims against vendors,

customers, or suppliers for warranty, indemnity, charge back/set-off issues, overpayment or

duplicate payment issues, and collections/accounts receivable matters; (b) possible claims against

persons or parties for wrongful or improper termination of services or goods to the Debtor;

(c) failure of any persons or parties to fully perform under contracts with the Debtor before the

assumption or rejection of such contracts; (d) possible claims for deposits or other amounts owed by

any creditor, lessor, supplier, vendor, factor, or other person; (e) actions against insurance carriers

relating to coverage, indemnity, or other matters; (f) counterclaims and defenses relating to Claims

against the Debtor; (g) possible claims against local, state, and federal taxing authorities (including,

without limitation, any claims for refunds of overpayments, challenges to audits, assessments,

penalties, interest or any other obligations imposed by governmental agencies); (h) except as

otherwise previously released or settled, possible claims against secured creditors, including, without

44

limitation, claims relating to the inclusion of improper charges, fees, interest, penalties in any alleged Secured Claim and the nature, extent, priority and validity of any lien; and (j) contract, tort, or equitable claims that may exist or subsequently arise.

THE LIQUIDATING TRUSTEE WILL DECIDE WHETHER TO PURSUE ESTATE CAUSES OF ACTION.  THE LIQUIDATING TRUSTEE MAY SEEK TO RETAIN COUNSEL ON A CONTINGENCY BASIS TO PROSECUTE SOME OR ALL OF SUCH ESTATE CAUSES OF ACTION OR MAY DECIDE NOT TO PURSUE THEM AT ALL.  THE LIQUIDATING TRUSTEE, ITS EMPLOYEES, CONTRACTORS, OFFICERS, DIRECTORS, SUCCESSORS, AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE LIQUIDATING TRUSTEE'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OF ANY CAUSE OF ACTION.

Unless an Estate Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or in any Final Order, such Estate Cause of Action is expressly reserved for later adjudication by the Liquidating Trustee (including, without limitation, any Estate Causes of Action of which the Debtor presently may be unaware, or which may arise or exist by reason of facts or circumstances unknown to the Debtor at this time, or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Liquidating Trustee's prosecution of Estate Causes of Action based on the Disclosure Statement, the Plan, or the Confirmation Order.  Without limiting the generality of the foregoing, any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, should assume that such obligation, transfer, or transaction may be evaluated by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an Avoidance Action or other action or proceeding filed after the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE EXISTENCE OF ESTATE CAUSES OF ACTION.  THE INVESTIGATION IN THIS REGARD IS ONGOING.  AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR ESTATE CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THE PLAN, AN ESTATE CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY AS THE LIQUIDATING TRUSTEE MAY DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

**F.      Issuance and Execution of Plan Related Documents.**

As of the Effective Date, the Debtor and/or the Liquidating Trustee will execute such amendments, modifications, supplements, and other documents as may be reasonably appropriate to implement the Plan.  The Debtor and/or the Liquidating Trustee are authorized to execute such amendments, modifications, supplements and other documents as provided for in the Plan without any further corporate action, and upon such execution, such amendments, modifications, supplements and other documents as provided for in the Plan shall be deemed binding upon the Debtor and/or the Liquidating Trustee and such other parties as applicable.

**G.      Dissolution of the Debtor and Termination of Current Officers, Directors, Employees and Counsel; Dissolution of the Committee.**

From and after the Effective Date, the Debtor and the Committee shall be dissolved, and the Liquidating Trustee shall be authorized to take all action necessary to dissolve the Debtor.  On the Effective Date, the employment, retention, appointment and authority of all officers (including, without limitation, the Chief Restructuring Officer of the Debtor), directors, employees and professionals of the Debtor, and all professionals of the Committee, shall be deemed to terminate; provided, however that such parties shall be entitled to prosecute final fee applications as necessary.

On the Effective Date, the Committee shall cease to exist and its members, designated representatives and/or agents (including, without limitation, attorneys and other advisors and agents) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Committee.  The Committee shall continue to exist after such date solely with respect to all the

46

applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional.

**H.    Distributions Under the Plan**

**1.    In General**

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Allowed Claims, other than Allowed Class 3 Claims, shall be made on or soon as reasonably practicable after the Effective Date.  The date(s) for Distributions to be made on account of Allowed Class 3 Claims shall be selected by the Liquidating Trustee in accordance with the Liquidating Trust Agreement, provided, however, that the date(s) selected shall be made as soon as reasonably practicable after the Effective Date, subject to the terms of the Liquidating Trust Agreement.

**2.    Manner of Payment Under the Plan**

Any payment of Cash made by the Liquidating Trustee pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

**3.    Manner of Distribution of Other Property**

Any Distribution under the Plan of property other than Cash shall be made by the Liquidating Trustee (or its agent) in accordance with the terms of the Plan.

**4.    Set-offs**

The Liquidating Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor, Estate or the Liquidating Trust may have against the Holder of such Claim; *provided* that neither the failure to effect such set-off nor the allowance of any Claim that otherwise would be subject to set-off, shall constitute a waiver or release by the Debtor, Estate or Liquidating Trust of any such claim that the Debtor, Estate or Liquidating Trust may have against such Holder.

**5.    Distribution of Unclaimed Property**

Except as otherwise provided in the Plan, any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one hundred eighty (180) days following the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Effective Date or (ii) ninety (90) days after such Distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

**6.     De Minimis Distributions**

No cash payment of less than fifty dollars ($50.00) shall be made by the Liquidating Trustee to any Holder of a Claim unless a request therefor is made in writing to the Liquidating Trustee.

**7.     Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**8.     Delivery of Distributions, Address of Holder**

For purposes of all notices and Distributions under the Plan, the Liquidating Trustee shall be entitled to rely on, and Distributions to Holders of Allowed Claims shall be made by regular U.S. first class mail to, the following name and address for the Holder of each such Claim:  (a) the address set forth in the proof of Claim Filed by such Holder; (b) the address set forth in any written notice of address change delivered by the Holder to the Debtor or the Liquidating Trustee after the date on which any related proof of Claim was Filed, or (c) the address reflected on the Schedules if no proof of Claim is Filed and neither the Debtor nor the Liquidating Trustee has received a written notice of a change of address.  The Liquidating Trustee shall be under no duty to attempt to locate Holders of Allowed Claims who are entitled to unclaimed Distributions.

**9.     Payment of Fees and Expenses of Disbursing Agent**

The fees and expenses incurred by the Liquidating Trustee, in connection with the performance of its duties as disbursing agent under the Plan, shall be paid from the Liquidating Trust Assets.

**10.     Approval for Schedule of Proposed Distributions**

In the discretion of the Liquidating Trustee, the Liquidating Trustee shall be entitled to prepare a preliminary schedule of proposed Distributions to Holders of Claims ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the

48

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

making of such Distributions pursuant to the Distribution Schedule.  Notice of any such application shall be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

**11.**    **Further Assurances Regarding Distributions**

As a condition to obtaining Distributions under the Plan, each Holder of a Claim shall execute and deliver to the Liquidating Trustee, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of the Plan.

**12.**    **Creditors' Payment Obligations or Turn Over of Property to the Liquidating Trustee**

As a condition to obtaining Distributions under the Plan, any Holder of a Claim from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall pay to the Liquidating Trustee the amount, or turn over to the Liquidating Trustee any such property, for which such Holder of a Claim is liable to the Debtor.

**I.**    **Executory Contracts and Unexpired  Leases**

**1.**    **Rejection**

On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected.  The Confirmation Order shall constitute a Final Order approving this rejection.  All Allowed Rejection Damage Claims shall be treated as Class 3 Claims under the Plan.

**2.**    **Bar Date for Rejection Damage Claims**

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidating Trustee and its counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, and their property, and the entities holding

49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

these Claims will be barred from receiving any Distributions under the Plan on account of their

Rejection Damage Claims.  The Liquidating Trustee shall have the right to object to any such

Rejection Damage Claims; provided, however, that any such objections must be served and filed not

later than one hundred twenty (120) days after the Effective Date.

### 3.    Insurance Policies

For the avoidance of doubt, all of the Debtor's rights with respect to all insurance policies

under which the Debtor may be a beneficiary (including all insurance policies that may have expired

prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance

policies entered into by the Debtor after the Petition Date, and all insurance policies under which the

Debtor holds rights to make, amend, prosecute and benefit from claims) are retained according to

their respective terms and will be transferred or assigned to the Liquidating Trust pursuant to the

Plan.

Notwithstanding the foregoing and any provision providing for the rejection of executory

contracts herein, any insurance policy that is deemed to be an executory contract shall neither be

rejected nor assumed  by operation of the Plan and shall be the subject of a specific motion by the

Liquidating Trustee who shall retain the right to assume or reject any such executory contract

pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the

Effective Date; until such time as the Liquidating Trustee rejects any such executory contract, all

rights, interests, and remedies under such executory contract shall be retained fully by the

Liquidating Trustee.

### J.    Effectiveness of the Plan

### 1.    Conditions Precedent

The Effective Date shall not occur until the following Conditions Precedent have been

satisfied or waived:

(i)    the Bankruptcy Court shall have entered a Confirmation Order that is in form

and substance reasonably satisfactory to the Debtor and the Committee;

(ii)    the Confirmation Order shall have become a Final Order; and

(iii)    no stay of the Confirmation Order is in effect.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

50

Notwithstanding the foregoing, the Conditions Precedent set forth in Section VIII.A.iii of the Plan may be waived by the Debtor and the Committee (such waiver shall not require any notice, Bankruptcy Court order, or any further action).

**2.      Notice of the Effective Date**

As soon as practicable after the Effective Date has occurred, the Liquidating Trustee shall file with the Bankruptcy Court an informational notice specifying the Effective Date, as a matter of record.

**K.      Retention of Jurisdiction**

The Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. The Bankruptcy Court will retain and have exclusive jurisdiction to the fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in or related to the Chapter 11 Case or the Plan, including but not limited to the following:

a)      To hear and determine pending motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, if any are pending as of the Effective Date, the determination of any cure payments related thereto, and the allowance or disallowance of Claims resulting therefrom;

b)      To determine any and all adversary proceedings, applications, motions, and contested matters instituted prior to the closing of the Chapter 11 Case;

c)      To ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

d)      To hear and determine any objections to Administrative Expenses and to proofs of Claims filed both before and after the Effective Date (including, without limitation, whether all or any part of any Claim set forth in any such proof of Claim or Administrative Expense is subject to partial or complete subordination pursuant to applicable law), and to allow or disallow any Disputed Claim in whole or in part, provided, however, that, for the avoidance of doubt, the Liquidating Trustee may settle or compromise (including by set-off) any Disputed Claim without further Order of the Court;

51

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

e)      To hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under sections 330, 331, and 503(b) of the Bankruptcy Code;

f)      To hear and determine any disputes arising in connection with the interpretation, implementation, execution, or enforcement of the Plan, the Liquidating Trust Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

g)      To hear or determine any action to recover assets of the Estate, wherever located;

h)      To hear and determine any actions or matters related to Estate Causes of Action, whether or not such actions or matters are pending on the Effective Date;

i)      To hear and determine any matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

j)      To hear and determine any objections to the allowance of Claims or Administrative Claims, whether filed before or after the Confirmation Date, including any objections to the classification of any Claim, and any proceedings to allow, disallow, determine, liquidate, estimate, or establish the priority or the secured or unsecured status of any Claim, or to establish reserves pending the resolution of Disputed Claims;

k)      To hear and determine any proceeding to modify the Plan, after confirmation of the Plan, and, if in the best interests of Holders of Claims, modification of the Plan even after the Plan has been substantially consummated;

l)      To consider the issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of the Plan or to restrain interference by any entity with the consummation or the enforcement of the Plan;

m)      To hear any other matter not inconsistent with the Bankruptcy Code;

n)      To hear any other matter deemed relevant by the Bankruptcy Court; and

o)      To enter a final decree closing the Chapter 11 Case.

**L.      Releases, Exculpation and Injunction**

**1.      Releases by the Debtor**

*In consideration for services rendered to the Estate and for the consideration as more fully set forth herein, to the greatest extent permissible by law, and except as otherwise specifically*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

52

*provided in the Plan, as of the Effective Date, the Debtor shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtor or the Released Parties (in each case, solely in their capacities as such) occurring from the beginning of time to and including the Effective Date related in any way, directly or indirectly, arising out of, and/or connected with any or all of the Debtor or the Estate; provided, however, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, or any order confirming the Plan shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction.  Notwithstanding anything to the contrary in the Plan, this Article does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.  Furthermore, nothing in the Plan shall affect the liability of any Claims held by any third party against any of the Released Parties.*

2.    **Exculpation**

*None of the Exculpated Parties shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the administration of the*

DOCS_LA:307113.9 13817/002

*Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan, provided, however, that the foregoing provisions shall not affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order of the Court to have constituted willful misconduct or gross negligence or breach of fiduciary duty; provided further, however, that this provision shall not limit the Debtor's obligations under the Plan; provided further, however, that notwithstanding the foregoing or any other provision of the Plan, nothing in the Plan, or any order confirming the Plan shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction.*

### 3. <u>No Liability for Solicitation or Participation</u>

As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### 4. <u>Good Faith</u>

Confirmation of the Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### 5. <u>Injunction Enjoining Holders of Claims Against Debtor</u>

The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests.  To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtor, arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim or Equity Interest, against the Debtor, the Estate,

54

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Liquidating Trust or its property (other than actions brought to enforce any rights or obligations

under the Plan):

(a)    commencing, conducting or continuing in any manner, directly or indirectly any suit,

action, or other proceeding of any kind against the Debtor and/or Estate, the Liquidating Trust, or the

Liquidating Trustee, their successors, or their respective property or assets (including, without

limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be

deemed to be withdrawn or dismissed with prejudice);

(b)    Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any

manner or means whether directly or indirectly any judgment, award, decree, or order against the

Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their

respective property or assets;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any

lien, security interest or encumbrance against the Debtor, the Estate, the Liquidating Trust, or the

Liquidating Trustee, their successors, or their respective property or assets; and

(d)    proceeding in any manner in any place whatsoever against the Debtor, the Estate, the

Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets

that does not conform to or comply with the provisions of the Plan.

**6.**    **Nondischarge of the Debtor**

In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not

discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse

against, any assets that are to be distributed under the Plan other than assets required to be

distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are

enjoined from asserting against any property that is to be distributed under the Plan, any Claims,

rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or

other activity that occurred before the Confirmation Date except as expressly provided in the Plan or

the Confirmation Order.

DOCS_LA:307113.9 13817/002

## M.    Miscellaneous  Provisions

### 1.    Payment of Statutory Fees

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.  The Liquidating Trust shall be responsible for timely payment of such quarterly fees due and payable after the Effective Date and until the Chapter 11 Case is closed, pursuant to section 1930(a)(6) of title 28 of the United States Code, with respect to cash disbursements made by the Liquidating Trustee under the Plan. After the Effective Date and until the Chapter 11 Case is closed, the Liquidating Trustee shall file with the Office of the United States Trustee monthly financial reports specifying all disbursements made pursuant to the Plan and shall make all payments based upon such disbursements as required by applicable law.

### 2.    Preservation of Rights of Action

Except to the extent any rights, claims, defenses, and counterclaims are expressly and specifically released in connection with the Plan or in any settlement agreement approved during the Chapter 11 Case: (i) any and all Estate Causes of Action accruing to the Debtor's Estate shall vest in the Liquidating Trust on the Effective Date, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, and (ii) the Debtor's  Estate does not waive, release, relinquish, forfeit, or abandon (and it shall not be estopped or otherwise precluded or impaired from asserting) any Estate Cause of Action that constitutes property of the Debtor' Estate: (a) whether or not such Estate Cause of Action has been listed or referred to in the Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Estate Cause of Action is currently known to the Debtor or the Liquidating Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action filed a proof of claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against the Plan, or received or retained any consideration under the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

56

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 3.    Exemption from Stamp, Transfer and Other Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 4.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor' Estate, Holders of Claims, Holders of Equity Interests, and their respective successors or assigns.

### 5.    Revocation or Withdrawal

If the Debtor revokes the Plan prior to the Confirmation Date or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Debtor or Estate, or any other person or to prejudice in any manner the rights of the Debtor or Estate, or any person in any further proceedings involving the Debtor.

### 6.    Withholding, Reporting, and Payment of Taxes

In connection with the Plan and all instruments issued  in connection therewith and Distributions thereon, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed  by any federal,  state, local, or foreign  taxing authority and all Distributions hereunder shall be subject  to any such withholding and reporting requirements. The Liquidating Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as required by applicable law.  In addition, to the extent required by applicable law, reported Distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

### 7.    Other Documents and Actions

The Debtor on and prior to the Effective Date and the Liquidating Trustee after the Effective Date may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

DOCS_LA:307113.9 13817/002

## 8.    Modification of the Plan

Prior to the Effective Date, the Plan may be altered, amended, or modified  pursuant to section 1127 of the Bankruptcy Code by the Debtor.  After the Effective Date, the Liquidating Trustee shall have the sole authority and power to alter, amend, or modify the Plan pursuant to section 1127 of the Bankruptcy Code.

## 9.    Post-Confirmation Notice

From and after the Effective Date, any person who desires notice of any pleading or document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Liquidating Trustee; provided, however, the United States Trustee shall be deemed to have requested post-confirmation notice.

## 10.    Books and Records

Upon the Case Closing Date, the Liquidating Trustee shall be authorized, in the exercise of its sole and absolute discretion, to discard or destroy any and all pre-Effective Date books and records of the Debtor in the Liquidating Trustee's custody or control.  The Liquidating Trustee shall continue to preserve post-Effective Date books and records in its custody or control through the Case Closing Date, or as otherwise provided by order of the Bankruptcy Court.

## 11.    Effectiveness of Court Orders

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the Chapter 11 Case, and in existence on the Confirmation Date, shall remain in full force and effect from and after the Effective Date, to the extent not inconsistent with the provisions of the Plan or the Confirmation Order.

## 12.    No Waiver

Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure to object to any Claim for purposes of voting, the failure to object to a Claim or Administrative Claim prior to the Effective Date, the failure to assert an Estate Cause of Action prior to the Effective Date, nor any action or inaction with respect to a Claim, Administrative Claim, or Estate Cause of Action, other than a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of the Liquidating Trustee to object to or examine such Claim or Administrative Claim, in

58

whole or in part, or retain and assert, pursue, prosecute, litigate, or otherwise enforce any Estate

Cause of Action.

### 13.    Other Documents and Actions

The Debtor and the Liquidating Trustee may execute such other documents and take such

other actions as may be necessary or appropriate to effectuate the transactions contemplated under

the Plan.

### 14.    Inconsistencies

In the event that any provisions of the Plan are inconsistent with the provisions of this

Disclosure Statement, the provisions of the Plan shall control.

### 15.    Implementation of Section 1142 of the Bankruptcy Code

Pursuant to section 1142(a) of the Bankruptcy Code, the Debtor and the Liquidating Trustee

are authorized to carry out the terms of the Plan.  Pursuant to section 1142(b) of the Bankruptcy

Code, all Holders of Claims and Holders of Equity Interests shall execute and deliver, or join in the

execution and delivery of, any instrument or document appropriate to effectuate the Plan, and

perform any other act that is appropriate for the consummation of the Plan.  To the extent that any

Holder of a Claim or Holder of an Equity Interest fails to comply with these provisions, the Debtor

and the Liquidating Trustee shall be entitled to obtain, on an expedited basis, an order of the

Bankruptcy Court compelling such Holder's compliance with these provisions, and, during the time

period encompassed by such Holder's non-compliance, no payment shall be made to such Holder

under the Plan.

### 16.    Confirmation Request

In the event that all of the applicable requirements of section 1129(a) are met other than

section 1129(a)(8), if applicable, the Debtor requests confirmation of the Plan notwithstanding the

requirements of such paragraph under section 1129(b).  If and to the extent applicable, the Debtor

will provide further support for Confirmation of the Plan under the "cram down" provisions of

section 1129(b) in its brief to be filed in support of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# XII.

## CERTAIN RISK FACTORS TO BE CONSIDERED

Holders of Impaired Claims should read and consider carefully the factors set forth below, as well as other information set forth in this Disclosure Statement and the documents delivered together herewith and/or incorporated by reference herein, prior to voting to accept or reject the Plan.

**A.    Risks Regarding the Distributions to Be Made to Creditors**

While the Debtor has endeavored to project what it believes is likely to be the amount distributed to parties holding Allowed Claims, there can be no certainty that the Debtor's projections will be accurate, and that creditors will receive the distributions described in the Disclosure Statement and Plan.  The Debtor's projections will necessarily be affected by, among other things: (1) recoveries (if any) that the Liquidating Trustee may generate from Estate Causes of Action; (2) the outcome of objections to Claims; and (3) the cost and expenses of such actions.

**B.    Bankruptcy Risks**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that the Plan satisfies all the requirements for confirmation of a plan as discussed below and that the Bankruptcy Court would also conclude that the requirements for Confirmation of the Plan have been satisfied.  However, the Bankruptcy Court might disagree and might not confirm the Plan.

# XIII.

## VOTING PROCEDURES AND REQUIREMENTS

The Bankruptcy Code defines acceptance of a Plan by a Class of Claims as acceptance by Holders of at least two-thirds in dollar amount and more than one-half in number of the Claims of that Class that actually cast ballots for acceptance or rejection of the Plan.  Thus, acceptance by a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

Class of Claims occurs only if at least two-thirds in dollar amount and a majority in number of the Holders of such Claims voting cast their ballots in favor of acceptance.

IT IS IMPORTANT THAT HOLDERS OF GENERAL UNSECURED CLAIMS (CLASS 3) EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.  All known Holders of General Unsecured Claims entitled to vote on the Plan have been sent a ballot together with this Disclosure Statement and Plan.  Such Holders should read the ballot carefully and follow the instructions contained therein.  Please use only the ballot that accompanies this Disclosure Statement and Plan.

FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE ACTUALLY RECEIVED BY DEBTOR'S COUNSEL, PACHULSKI STANG ZIEHL & JONES LLP, 10100 SANTA MONICA BOULEVARD, SUITE 1300, LOS ANGELES, CA 90067, ATTN: _____, NO LATER THAN 5:00 P.M., PACIFIC TIME, ON _____, 2018.  BALLOTS WILL NOT BE ACCEPTED ORALLY, BY FACSIMILE OR EMAIL.

ANY BALLOT THAT IS EXECUTED AND RETURNED BUT THAT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DEEMED AN ACCEPTANCE OF THE PLAN.  IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES OR IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT DEBTOR'S COUNSEL, PACHULSKI STANG ZIEHL & JONES LLP, 10100 SANTA MONICA BOULEVARD, SUITE 1100, LOS ANGELES, CA 90067; TELEPHONE: (310) 277-6910; FAX: (310) 201-0760; EMAIL: JDULBERG@PSZJLAW.COM.

## XIV.

## CONFIRMATION OF THE PLAN

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

### A.    Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of a Plan.  By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for _____ , 2018 at __:_____ __.m. Pacific Time.  The Confirmation

61

Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

**B.**    **Objections to Confirmation of the Plan**

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of a Plan, whether or not such party is entitled to vote on the Plan. Any objection to Confirmation of the Plan must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, set forth the name of the objecting party, the nature and amount of the Claim or Equity Interest held or asserted by the objecting party against the Debtor, the basis for the objection, and the specific grounds therefor.

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**C.**    **Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation are that the Plan (1) is accepted by all Impaired Classes of Claims and Equity Interests or, if rejected by an Impaired Class, that the Plan is accepted by at least one Impaired Class of Claims and, as to the rejecting Class, "does not discriminate unfairly" and is "fair and equitable," (2) is feasible, and (3) is in the "best interests" of Holders of Claims and Equity Interests Impaired under the Plan.

**1.**    **Acceptance**

Claims and Equity Interests in Class 3 and Class 4, respectively, are Impaired. The Holders of Claims in Class 3 are entitled to vote on the Plan and the Holders of Equity Interests in Class 4 are deemed to have rejected the Plan. Class 3 must accept the Plan in order for it to be confirmed. As stated above, Class 3 will have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and a majority in number of the Claims in Class 3 (other than any Claims of creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

designated under section 1126(e) of the Bankruptcy Code) that have actually been voted by their Holders to accept or reject the Plan.

Claims in Classes 1 and 2 are not Impaired by the Plan, and the Holders thereof are conclusively presumed to have accepted the Plan.

### 2.    Fair and Equitable Test

Class 4 is deemed to have rejected the Plan.  The Debtor will seek to confirm the Plan notwithstanding the non-acceptance of the Plan by Class 4, as long as Class 3 accepts the Plan. To obtain such Confirmation, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to Class 4.

A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class, and if no class receives more than it is entitled to for its claims or interests.  The Debtor believes that the Plan satisfies this requirement.

The Bankruptcy Code establishes the "fair and equitable" test for interests as follows:

Either (i) each holder of an impaired interest receives or retains on account of such interest property of a value equal to the value of such interest, or (ii) the holders of any interest that is junior to the interests in Class 4 will not receive or retain any property under the Plan on account of their junior interests.  Under the Plan, the Equity Interests have no value because the amount of Allowed Claims is more than the value of the Debtor's assets and further there are no interests junior to the Equity Interests in Class 4 to receive any property under the Plan.

### 3.    Feasibility

The Plan cannot be confirmed unless the Court finds that it is "feasible."  In general, there are two elements of feasibility.  The first element is whether there will be sufficient funds to make distributions required to be made on the Effective Date, or as soon thereafter as is practicable, including to Holders of Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Other Priority Claims.  Based upon the Debtor's holding over $1.1 million in Cash (projected as of the Effective Date) and the estimated amounts of valid Administrative Expenses,

63

DOCS_LA:307113.9 13817/002

Allowed Priority Tax Claims, and Allowed Other Priority Claims, the Debtor believes that the Liquidating Trust will have sufficient funds to meet this element of feasibility.

Further, the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor, unless such liquidation or reorganization is proposed in such plan.  The Plan contemplates that all Assets ultimately will be liquidated, sold, transferred, abandoned, or otherwise disposed of, and all proceeds of the Assets will be utilized to pay creditors.  Since no further financial reorganization of the Debtor will be possible or is contemplated and the liquidation of the Debtor is provided for in the Plan, the Plan satisfies this element of feasibility as well.

Based on the foregoing, the Debtor believes that the Plan is feasible.

### 4.    **"Best Interests" Test**

With respect to each Impaired Class of Claims and Equity Interests, the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (a) accepts the Plan, or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  This analysis requires the Bankruptcy Court to determine what the Holders of Allowed Claims or Equity Interests in each Impaired Class would receive from the liquidation of the Debtor's Assets in the context of a chapter 7 liquidation case.

The Debtor's Liquidation Analysis includes **Exhibit B** attached hereto.  If the Chapter 11 Case were converted to a case under chapter 7, liquidation under chapter 7 would result in the incurrence of administrative costs in excess of those to be incurred under the Plan because a chapter 7 trustee that would be appointed in the case would likely seek to retain counsel and potentially other professionals that are completely unfamiliar with the Debtor, its ongoing responsibilities, remaining assets and liabilities.  The appointment of another group of professionals at this stage of the bankruptcy of the Debtor, in addition to the Professional Persons in this case, would increase administrative claims including additional professional fees.  Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estate.  Conversion of the case to a case under chapter 7 and

64

1  appointment of a trustee for administration of the Estate could also delay the prosecution of Estate

2  Causes of Action and the distributions to creditors while the chapter 7 trustee and its new

3  professionals familiarized themselves with the case and Estate Causes of Action.

4      The Debtor contemplates an orderly administration and winding down of the Estate by

5  parties that are already familiar with the Debtor, its Assets, and its creditors and liabilities.  Such

6  familiarity will allow the Liquidating Trust to complete liquidation of the Assets, distribute the

7  proceeds to the creditors more efficiently and expeditiously than a chapter 7 trustee, while

8  maximizing the value of the Assets for the benefit of creditors.

9      In a chapter 7 liquidation, therefore, it is highly likely that there would be less money

10  available for distribution to Holders of Allowed Class 3 Claims than under the Plan.  *See* **Exhibit B**.

11                                          **XV.**

12              **ALTERNATIVES TO CONFIRMATION OF THE PLAN**

13      Because the Debtor has ceased operations, any plan other than a liquidating plan is not

14  viable.  Congress expressly permitted liquidating chapter 11 plans, and did not limit the kinds of

15  plans that would satisfy section 1112(b) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1123(b)(4),

16  1141(d)(3) (providing for liquidation under chapter 11).  The Plan, as discussed above, more than the

17  alternative of conversion to a chapter 7, maximizes recoveries by efficiently administering the

18  Debtor's remaining responsibilities and assets and providing for an expeditious distribution of

19  available cash to creditors.

20      Among other things, as set forth above, the administrative costs associated with converting

21  the Chapter 11 Case to a chapter 7 liquidation would be higher than if the prosecution of Estate

22  Causes of Action, the resolution/administration of Claims, the winding down of the Debtor's

23  operations, and the distributions to creditors is accomplished pursuant to the Plan.  The Debtor

24  believes that the Plan enables creditors to realize the most possible under the circumstances.  In a

25  chapter 7 liquidation, holders of Allowed Claims receive distributions based on the liquidation or

26  collection of the Debtor's assets.  Such assets would include the same assets being collected under

27  the Plan – or which have already been sold or collected during the Chapter 11 Case.  However, the

28  net proceeds from the collection and sale of property of the Estate available for distribution to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

65

creditors would be reduced by the commission payable to the chapter 7 trustee and the trustee's

attorneys and accounting fees, as an addition to the already incurred administrative costs of the

Chapter 11 Case and delayed while the chapter 7 trustee and its professionals familiarized

themselves with the case.  Moreover, a chapter 7 trustee would continue to be encumbered by

Bankruptcy Court supervision and the need for Bankruptcy Court approval of its decisions, further

delaying distributions to creditors and increasing expense.

In a chapter 7 case, the trustee is entitled to seek a sliding scale commission based upon the

funds distributed by such trustee to creditors, in addition to the fees and expenses of the trustee's

professionals incurred in liquidating the Debtor's assets.  Although under section 326 of the

Bankruptcy Code the trustee's compensation is capped by this sliding scale and the trustee should be

required to demonstrate the reasonableness of its commissions in relation to work actually performed

or results obtained, the Debtor cannot predict whether the trustee will seek or obtain a straight

commission based solely on distributions or some lesser amount.  Nonetheless, whatever the amount

of compensation for a trustee, there is a reasonable likelihood that the chapter 7 trustee would be

entitled to receive a commission in some amount for distributing the substantial amount of Cash that

would be simply "handed over" to the trustee by the Debtor.

In addition, a chapter 7 trustee would employ legal counsel and potentially accountants that

would add additional administrative expenses and would be paid ahead of general unsecured

creditors.  The costs of familiarizing a chapter 7 trustee, new counsel, and perhaps new staff with

issues relating to the case will also increase the administrative expenses that are paid ahead of

general unsecured creditors.  The Plan presents a better alternative to creditors than a chapter 7

liquidation because the Liquidating Trust can realize upon the Debtor's assets more quickly and

cheaply than a trustee.

## XVI.

## CERTAIN U.S. TAX CONSEQUENCES OF THE PLAN

THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED

FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A

SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

FROM, A TAX PROFESSIONAL.  THE SELECTED FEDERAL AND STATE TAX

CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND

LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX

AND, IN SOME CASES, UNCERTAIN.  SUCH TAX CONSEQUENCES MAY ALSO VARY

BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED

CLAIM OR EQUITY INTEREST.  ACCORDINGLY, EACH HOLDER OF AN ALLOWED

CLAIM OR EQUITY INTEREST IS STRONGLY ADVISED TO CONSULT WITH ITS OWN

TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES

OF THE PLAN.  THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED

TO BE AND IS NOT TAX ADVICE.

THE DEBTOR DOES NOT INTEND TO REQUEST A TAX RULING FROM THE

INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT

TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.  CONSEQUENTLY, THE

INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE

WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED

HEREIN TO THE DEBTOR, HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS.

A.    **Federal Income Tax Consequences to Certain Creditors**

1.    **In General**

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or

loss equal to the difference between the "amount realized" by such holder in exchange for its Claim

and such holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the

cash and the fair market value of any other consideration received under a plan of reorganization in

respect of a holder's Claim.  The tax basis of a holder in a Claim will generally be equal to the

holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*,

ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the

holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its

acquisition, the holder's holding period of the Claim, and the extent to which the holder previously

claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is

67

a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their Allowed Claims. As discussed herein, members of Class 3 (General Unsecured Claims) will receive Class 3 Trust Interests, which is discussed further below. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

## 2. Non-United States Persons

A holder of a Claim that is a Non-U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such holder is an individual, such holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

68

### 3.    <u>Tax Consequences in Relation to Liquidating Trust</u>

As of the Effective Date, the Liquidating Trust will be established for the benefit of the holders of Allowed Claims in Class 3 (General Unsecured Claims).  The tax consequences of the Plan in relation to the Liquidating Trust and the beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's claims reserves) among holders of Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.  Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of, Disputed Claims (the "<u>Trust Claims Reserve</u>") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, any Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the trust assets in such reserves, and all distributions from

69

such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtor.  All parties (including, without limitation, the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax purposes.  In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (*i.e.*, a pass-through entity).  The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trust has been structured with the intention of complying with such general criteria.  Pursuant to the Plan and Liquidating Trust Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidating Trust) are required to treat for federal income tax purposes, the Liquidating Trust as a grantor trust of which the holders of the applicable Allowed Claims are the owners and grantors.  While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust.  If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a beneficiary of the Liquidating Trust will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such beneficiary in satisfaction of its applicable Allowed Claim, and (ii) such beneficiary's adjusted tax basis in such Claim.  The "amount realized" by a beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust).  Where gain or loss is recognized by a beneficiary in respect of its Allowed Claim, the character of such gain or loss (*i.e.*, long-term or short-term capital, or ordinary income) will be determined by a number of factors

70

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a distribution from the Liquidating Trust in respect of its beneficial interest in the Liquidating Trust should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Claim, but should be separately treated as a distribution received in respect of such party's beneficial interest in the Liquidating Trust.

In general, a beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the beneficiary's holding period in such assets will begin the day following the Effective Date.  Distributions to any beneficiary will be allocated first to the original principal portion of the beneficiary's Allowed Claim as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Liquidating Trustee and the holders of beneficial interests in the Liquidting Trust) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the holders of the applicable Allowed Claims followed by the transfer of such assets by such holders to the Liquidating Trust.  Consistent therewith, all parties will treat the Liquidating Trust as a grantor trust of which such holders are to be owners and grantors. Thus, such holders (and any subsequent holders of interests in the Liquidating Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes.  Accordingly, each holder of a beneficial interest in the Liquidating Trust will be required to report on its federal income tax return(s) the holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

71

The Liquidating Trust's taxable income will be allocated to the holders of beneficial interests in the Liquidating Trust in accordance with each such holder's *pro rata* share. The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deductions or losses may depend on the particular situation of such holder.

The federal income tax reporting obligation of a holder of a beneficial interest in the Liquidating Trust is not dependent upon the Liquidating Trust distributing any cash or other proceeds. Therefore, a holder of a beneficial interest in the Liquidating Trust may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the holder. If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Liquidating Trust it holds, the holder may be allowed a subsequent or offsetting loss.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Liquidating Trust will also send to each holder of a beneficial interest in the Liquidating Trust a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

**B.    Information Reporting and Backup Withholding**

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer

identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## XVII.

## SECURITIES LAW MATTERS

### A.    In General

The Plan provides for the establishment of the Liquidating Trust and for the issuance of beneficial interests therein. In general, beneficial interests in trusts may sometimes be subject to regulation under applicable federal and state securities laws. However, as discussed herein, the Debtor does not believe that the Liquidating Trust interests constitute "securities" for purposes of applicable nonbankruptcy law. Alternatively, even if the Liquidating Trust interests were to constitute "securities," the Debtor believes that they would be exempt from registration pursuant to Bankruptcy Code section 1145(a)(1).

### B.    Initial Issuance

Unless an exemption is available, the offer and sale of a security generally is subject to registration with the United States Securities and Exchange Commission (the "SEC") under Section 5 of the Securities Act of 1933, as amended (the "Securities Act"). In the Debtor's opinion, and based on "no action" letters by the SEC, the Liquidating Trust interests will not be considered "securities" within the definition of Section 2(11) of the Securities Act and corresponding definitions under state securities laws and regulations ("Blue Sky Laws") because the Liquidating Trust interests will be uncertified and non-transferable other than by operation of law. Accordingly, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Liquidating Trust interests should be issuable in accordance with the Plan without registration under the Securities Act or any Blue Sky Law.

Alternatively, in the event that the Liquidating Trust interests are deemed to constitute securities, section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under the Securities Act and Blue Sky Laws if three principal requirements are satisfied:

> A.    the securities are offered and sold under a plan of reorganization and are securities of the debtor, of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan;
>
> B.    the recipients of the securities hold a pre-petition or administrative claim against the debtor or an interest in the debtor; and
>
> C.    the securities are issued entirely in exchange for recipient's claim against or interest in the debtor, or principally in such exchange and partly for cash or property.

If and to the extent that the Liquidating Trust interests may constitute securities, the Debtor believes that these beneficial interests issued in respect of certain Allowed Claims will qualify as securities "of the debtor … or of a successor to the debtor" pursuant to section 1145(a)(1).  In addition, the Liquidating Trust interests will be issued entirely in exchange for such Claims.  Thus, the Debtor believes that the issuance of the Liquidating Trust interests pursuant to the Plan will satisfy the applicable requirements of section 1145(a)(1) of the Bankruptcy Code, and that such issuance should be exempt from registration under the Securities Act and any applicable Blue Sky Law.

The Debtor believes that its reliance upon the foregoing exemptions is consistent with positions taken by the SEC with respect to similar transactions and arrangements by other chapter 11 debtors in possession.  However, the Debtor has not sought any "no-action" letter by the SEC with respect to any such matters, and therefore no assurance can be given regarding the availability of any exemptions from registration with respect to any securities, if any, issued pursuant to the Plan.

## C.    Resales

The Liquidating Trust interests will be subject to transfer restrictions under the terms of the Liquidating Trust Agreement.  As provided in said agreement, generally, the Liquidating Trust

74

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interests cannot be assigned or transferred other than by operation of law, and will not be represented by certificates.

**D.** **Exchange Act Compliance**

Section 12(g) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), applies only to a company that has both (i) total assets in excess of $10.0 million and (ii) a class of equity securities held of record by more than 2,000 persons or 500 persons who are not accredited investors (within 120 days after the last day of the company's fiscal year). The Debtor believes it unlikely conditions (i) and (ii) will be deemed satisfied in respect to the Liquidating Trust and Liquidating Trust interests, and in any event, the Liquidating Trust should not be required to register under Section 12(g) of the Exchange Act. The Debtor has been advised that the staff of the SEC has issued no-action letters with respect to the non-necessity of Exchange Act registration of a bankruptcy plan trust when the following are true:

A. the beneficial interests in the trust are not represented by certificates or, if they are, the certificates bear a legend stating that the certificates are transferable only upon death or by operation of law;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:307113.9 13817/002

B.      the trust exists only to effect a liquidation and will terminate within a reasonable period of time; and

C.      the trust will issue annual unaudited financial information to all beneficiaries.

Based on the foregoing, the Debtor believes that the Liquidating Trust will not be subject to registration under the Exchange Act. However, the views of the SEC on the matter have not been sought by the Debtor and, therefore, no assurance can be given regarding this matter.

## XVIII.

## **RECOMMENDATION**

The Debtor recommends that all creditors that receive a ballot and are eligible to vote on the Plan vote in favor of the Plan. The Debtor has thoroughly evaluated various alternatives to the Plan. After studying the other alternatives, the Debtor has concluded that the Plan is the best alternative, and will maximize recoveries to unsecured creditors. Specifically, it allows creditors to obtain distributions likely in excess of those that would be available if the Debtor were liquidated under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to all creditors.

Dated: November 7, 2017                    CHANNEL TECHNOLOGIES GROUP, LLC

By:     _____

        Name: David Tiffany
        Title: Chief Restructuring Officer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

76

# Exhibit A

# Liquidating Plan

(Filed as Docket No. 410.  Will be annexed to Disclosure Statement for Plan solicitation.)

Laura Davis Jones (DE Bar No. 2436) *(Admitted Pro Hac Vice)*
Jeffrey W. Dulberg (CA Bar No. 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   ljones@pszjlaw.com
          jdulberg@pszjlaw.com

Attorneys for Channel Technologies Group, LLC, Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| In re: | Case No.: 9:16-bk-11912-PC |
|---|---|
| CHANNEL TECHNOLOGIES GROUP, LLC, [1] | Chapter 11 |
| Debtor. | **DEBTOR'S PROPOSED CHAPTER 11 LIQUIDATING PLAN** |

## THIS PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT

**This proposed Plan is not a solicitation of acceptance or rejection of the Plan. Acceptances or rejections may not be solicited until the Bankruptcy Court has approved the related Disclosure Statement under Bankruptcy Code §1125. The proposed Disclosure Statement is being submitted separately for approval, and has not yet been approved by the Bankruptcy Court.**

[1] The last four digits of the Debtor's Tax Identification Number are: 0460. The Debtor's mailing address is: 8714 East Sandalwood Dr., Scottsdale, AZ 85250.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TABLE OF CONTENTS**

Page

I.   DEFINITIONS AND RULES OF CONSTRUCTION ................................................. 1
     A.   Defined Terms. .................................................................................................. 1
     B.   Other Terms. ................................................................................................... 11
     C.   Computation of Time. ..................................................................................... 11
     D.   Exhibits. ......................................................................................................... 11
II.  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS 12
     A.   Summary. ......................................................................................................... 12
     B.   Unclassified Claims. ....................................................................................... 12
          1.   In General. ............................................................................................ 12
          2.   DIP Financing Claim. .......................................................................... 12
          3.   Administrative Expenses. ..................................................................... 12
          4.   Priority Tax Claims .............................................................................. 14
     C.   Classification and Treatment. ......................................................................... 14
          1.   Class 1:  Other Priority Claims. .......................................................... 15
          2.   Class 2:  Secured Claims. ..................................................................... 15
          3.   Class 3:  General Unsecured Claims. ................................................... 15
          4.   Class 4:  Equity Interests...................................................................... 17
III. ACCEPTANCE OR REJECTION OF THE PLAN ................................................ 18
     A.   Voting Classes. ............................................................................................... 18
     B.   Voting Rights of Holders of Disputed Claims. ............................................... 18
     C.   Acceptance by Impaired Classes. .................................................................... 18
     D.   Presumed Acceptance/Rejection of the Plan. .................................................. 18
IV.  PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR
     UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES...................... 19
     A.   Resolution of Disputed  Claims. .................................................................... 19
     B.   Reserve for Disputed Claims. ......................................................................... 19
     C.   Exclusive Right to Object to Claims. .............................................................. 20
     D.   Investigation Regarding Disputed Claims. ...................................................... 20
     E.   Distribution After Allowance. ......................................................................... 21
V.   IMPLEMENTATION OF THE PLAN. ................................................................... 21
     A.   Vesting of Assets. ........................................................................................... 21
     B.   Establishment of the Liquidating Trust........................................................... 22
          1.   Generally. ............................................................................................. 22
          2.   Beneficiaries. ........................................................................................ 23
          3.   Implementation of the Liquidating Trust. ............................................ 23
          4.   Transfer of the Debtor's Assets. ........................................................... 23
          5.   Representative of the Estate. ................................................................ 24
          6.   No Liability of Liquidating Trustee...................................................... 24
          7.   Provisions Relating to Federal Income Tax Compliance. ..................... 25
          8.   Cooperation with Liquidating Trustee. ................................................. 26
          9.   Compensation of the Liquidating Trustee/Removal of the Liquidating
               Trustee. ................................................................................................ 26
          10.  Resignation of Liquidating Trustee. ..................................................... 26
          11.  Funding of Post-Effective Date Plan Expenses. ................................... 27
          12.  Estate Causes of Action. ....................................................................... 27
          13.  Post-Effective Date Professional Fees. ................................................ 29
          14.  Approval for Disposition of Assets....................................................... 29
          15.  Compromise of Controversies. ............................................................. 29
          16.  Bankruptcy Court Approval Relative to Post-Confirmation Matters. ..... 30
          17.  Liquidating Trustee Certification.......................................................... 30
          18.  Final Decree. ........................................................................................ 30
          19.  Other Rights, Powers and Duties of Liquidating Trustee. ..................... 30
          20.  Resolution of Disputes.......................................................................... 30

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21.     Termination of Employment of Liquidating Trustee. .............................. 31
22.     Bar Date for Filing Avoidance Action Payment Claims. ....................... 31
C.      Prosecution of Estate Causes of Action by the Liquidating Trustee. ................. 31
D.      Issuance and Execution of Plan Related Documents. ................................... 31
E.      Dissolution of the Debtor and Termination of Current Officers, Directors,
        Employees and Counsel; Dissolution of the Committee. ............................ 32
VI.     DISTRIBUTIONS UNDER THE PLAN ........................................................ 32
A.      In General. ............................................................................................ 32
B.      Manner of Payment Under the Plan. ........................................................ 33
C.      Manner of Distribution of Other Property. ................................................ 33
D.      Set-offs. ................................................................................................ 33
E.      Distribution of Unclaimed Property ......................................................... 33
F.      De Minimis Distributions. ...................................................................... 33
G.      Saturday, Sunday or Legal Holiday. ........................................................ 33
H.      Delivery of Distributions, Address of Holder. ........................................... 34
I.      Payment of Fees and Expenses of Disbursing Agent. ................................. 34
J.      Approval for Schedule of Proposed Distributions. ..................................... 34
K.      Further Assurances Regarding Distributions. ............................................ 34
L.      Creditor's Payment of Obligations or Turn Over of Property to the
        Liquidating Trustee. .............................................................................. 35
VII.    EXECUTORY CONTRACTS AND UNEXPIRED  LEASES .............................. 35
A.      Rejection. ............................................................................................. 35
B.      Bar Date for Rejection Damage Claims. ................................................... 35
C.      Insurance Policies. ................................................................................. 36
VIII.   EFFECTIVENESS OF THE PLAN .............................................................. 36
A.      Conditions Precedent. ............................................................................ 36
B.      The Effective Date. ................................................................................ 37
C.      Confirmation Request. ........................................................................... 37
D.      Notice of the Effective Date. ................................................................... 37
IX.     RETENTION OF JURISDICTION ............................................................... 37
X.      RELEASES, EXCULPATION AND INJUNCTION .......................................... 39
A.      Releases by the Debtor. .......................................................................... 39
B.      Exculpation .......................................................................................... 40
C.      No Liability for Solicitation or Participation. ............................................ 40
D.      Good Faith. ........................................................................................... 41
E.      Injunction Enjoining Holders of Claims Against Debtor. ............................ 41
F.      Nondischarge of the Debtor. ................................................................... 42
XI.     MISCELLANEOUS  PROVISIONS ............................................................. 42
A.      Payment of Statutory Fees. ..................................................................... 42
B.      Preservation of Rights of Action. ............................................................ 42
C.      Exemption from Stamp, Transfer and Other Taxes. .................................... 43
        1.      Headings. ................................................................................... 43
        2.      Binding Effect. ........................................................................... 43
D.      Revocation or Withdrawal. ..................................................................... 43
        1.      Right to Revoke. ......................................................................... 43
        2.      Effect of Revocation. ................................................................... 43
        3.      Governing Law. .......................................................................... 44
        4.      Withholding, Reporting, and Payment of Taxes. .............................. 44
        5.      Other Documents and Actions. ...................................................... 44
        6.      Modification of the Plan. .............................................................. 44
        7.      Notices. ..................................................................................... 45
E.      Severability of Plan Provisions. .............................................................. 45
F.      Successors and Assigns. .......................................................................... 46
G.      Post-Confirmation Notice. ...................................................................... 46
H.      Books and Records. ............................................................................... 46
I.      Effectiveness of Court Orders. ................................................................ 46

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

J.    No Waiver. .................................................................................. 46

K.    Other Documents and Actions. ................................................ 47

L.    Inconsistencies. ........................................................................ 47

M.    Implementation of Section 1142 of the Bankruptcy Code. ...... 47

XII.    RECOMMENDATION ...................................................................... 48

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

Channel Technologies Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor" or "CTG"), through its undersigned counsel, proposes the following *Proposed Chapter 11 Liquidating Plan* (along with any amendments, supplements and exhibits hereto, collectively, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code for resolution of all Claims against and interests in the Debtor and its Estate.

The Disclosure Statement, which will accompany the Plan, discusses the Debtor's history, business, Chapter 11 Case, and estimates of the distributions of the Debtor's remaining assets to creditors, and contains a summary and discussion of the Plan. Holders of Claims are encouraged to read the Disclosure Statement before voting to accept or reject the Plan.

Following solicitation of acceptances for the Plan, the Debtor will seek the Bankruptcy Court's Confirmation of the Plan. No solicitation materials other than the Disclosure Statement and any schedules, exhibits or other documents attached thereto or referenced therein have been authorized by the Debtor or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## I.   DEFINITIONS AND RULES OF CONSTRUCTION

### A.   Defined Terms.

As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined):

1.    "Administrative Expense" means any cost or expense of administration of the Chapter 11 Case under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary post-petition expenses of preserving the Estate, any actual and necessary post-petition expenses of administering and liquidating the Estate, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330, 331, 363 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code.

2.    "Allowed" means with respect to any Claim or Equity Interest: (a) a Claim or Equity Interest that is evidenced by a proof of Claim or proof of Equity Interest, as applicable, filed by the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

applicable Claims Bar Date (or for which Claim or Equity Interest under the Plan, the Bankruptcy Code, or a Final Order of the Court, a proof of Claim is not required to be filed); (b) a Claim or Equity Interest that is listed in the Schedules, but is not listed as contingent, unliquidated, or disputed, and for which no proof of Claim or proof of Equity Interest, as applicable, has been timely filed; or (c) a Claim or Equity Interest allowed pursuant to the Plan or a Final Order of the Court; provided that with respect to a Claim or Equity Interest described in clauses (a) and (b) above, such Claim or Equity Interest, as applicable, shall be considered Allowed only if and to the extent that with respect to such Claim or Equity Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Equity Interest, as applicable, shall have been Allowed for voting purposes only by a Final Order. Any Claim or Equity Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no proof of Claim or proof of Equity Interest is or has been timely filed shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Any portion of a Claim that is satisfied or released during the Chapter 11 Case is not an Allowed Claim.

3.   "Allowed Class ____ Claim" means an Allowed Claim in the Class specified.

4.   "Assets" means all assets of the Debtor's Estate including "property of the estate" as described in section 541 of the Bankruptcy Code and shall, without limitation, include Cash, Estate Causes of Action, any and all claims and causes of action that may be asserted by the Debtor against any third party or third parties, securities, proceeds of insurance and insurance policies, all rights and interests, all real and personal property, and all files, books and records of the Debtor' Estate.

5.   "Available Cash" means the Cash in the Liquidating Trust that is not otherwise designated by the Liquidating Trustee as Cash to be used to satisfy Allowed Administrative Expenses, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Other Priority Claims, and expenses of the Liquidating Trust or otherwise subject to a reserve established by the Liquidating Trustee.

DOCS_LA:306860.7 13817/002

6.      "Avoidance Action" means any claim or right under the following: sections 544, 545, 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code; all prevailing fraudulent conveyance and fraudulent transfer laws; all non-bankruptcy laws vesting in creditors' rights to avoid, rescind, or recover on account of transfers, including, but not limited to, claims relating to illegal dividends; all preference laws; the Uniform Fraudulent Transfer Act; and California Civil Code sections 3439 and 3440, et seq.

7.      "Avoidance Action Payment Claim" means a Claim based upon or arising from an entity's payment to the Debtor or the Liquidating Trustee of a claim asserted against the entity pursuant to an Avoidance Action.  Any Avoidance Action Payment Claim shall be treated hereunder as a Class 3 Claim.

8.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

9.      "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, Northern Division or, in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such other court that exercises jurisdiction over the Chapter 11 Case.

10.     "Bankruptcy Rules" means, collectively, (i) the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, and (ii) the Local Bankruptcy Rules applicable to cases pending before the Bankruptcy Court, as now in effect or hereafter amended.

11.     "Bar Date Order" means the *Order (A) Establishing Procedures and Deadlines for Filing (i) Proofs of Claim; (ii) Requests for Payment of Administrative Expense Pursuant to 11 U.S.C. § 503 For the Period October 14, 2016 Through April 30, 2017; (B) Approving Manner of Notice of Bar Dates; and (C) Granting Related Relief* entered by the Bankruptcy Court on May 9, 2017 (Docket No.311).

12.     "Beneficiaries" means the Holders of Claims who are the beneficiaries of the Liquidating Trust.

13.     "Blue Wolf Capital Fund" means Blue Wolf Capital Fund II, L.P. and/or its successor or assignee.

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14.     "Blue Wolf Secured Claims" means the Secured Claims of Blue Wolf Capital Fund.

15.     "Business Day" means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

16.     "Cash" means cash or cash equivalents.

17.     "Case Closing Date" means the date on which the Bankruptcy Court enters a final decree closing the Chapter 11 Case, in accordance with section 350 of the Bankruptcy Code.

18.     "Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code, commenced by the Debtor on the Petition Date in the Bankruptcy Court, styled "*In re Channel Technologies Group, LLC*," assigned Case No. 9:16-11912-PC.

19.     "Claim" means (a) any right to payment from the Debtor' Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor' Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

20.     "Claims Bar Date" means July 14, 2017, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtor that arose prior to the Petition Date.

21.     "Class" means one of the Classes of Claims or Classes of Equity Interests designated in the Plan.

22.     "Class 3 Trust Interest" means a proportional beneficial interest in the Liquidating Trust to be provided to each holder of an Allowed Class 3 Claim pursuant to Section II.C of the Plan and the Liquidating Trust Agreement.  The Class 3 Trust Interests shall be uncertificated and non-transferable, except by will, intestate succession, or operation of law, or as otherwise provided in the Liquidating Trust Agreement.

23.     "Committee" means the Official Committee of Unsecured Claims appointed in the Debtor's Chapter 11 Case, as it may be reconstituted from time to time.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

24. "Conditions Precedent" shall have the meaning ascribed to such term in Section VIII. A. of the Plan.

25. "Confirmation" means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26. "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

27. "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code to consider confirmation of the Plan.

28. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

29. "DIP Financing Claims" means any Secured Claims and/or Administrative Expenses of the DIP Lender against the Debtor under or evidenced by the DIP Financing Order and DIP Loan Documents.

30. "DIP Financing Order" means the *Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (1) Authorizing Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay* [Docket No. 110] entered by the Court in the Chapter 11 Case.

31. "DIP Lender" means Blue Wolf Capital Fund II, L.P.

32. "DIP Loan Documents" has the meaning ascribed to this term in the DIP Financing Order.

33. "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by agreement with the creditor, (ii) has been disallowed by Final Order, (iii) is listed in the Schedules in an unknown amount, as zero, as contingent, disputed, or unliquidated, or is not listed in the Schedules, and as to which no proof of Claim or Administrative Expense has been Filed, or (iv) has been withdrawn by the applicable creditor.

34. "Disclosure Statement" means that certain document entitled "*Disclosure Statement in Support of the Debtor's Proposed Chapter 11 Liquidating Plan*" filed in the Chapter 11 Case,

5

DOCS_LA:306860.7 13817/002

including the exhibits attached thereto, either in its present form or as it may be amended, modified or supplemented from time to time.

35.     "Disputed Claim" means any Claim (i) which is listed in any of the Schedules of the Debtor as unliquidated, disputed, contingent, and/or unknown and for which no proof of Claim has been filed; (ii) as to which a proof of Claim has been filed and the dollar amount of such Claim is not specified in a fixed amount; or (iii) as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan and/or any order of the Bankruptcy Court, which objection or request for estimation has not been withdrawn or determined by a Final Order.

36.     "Disputed Claims Reserve" means the Cash to be set aside for, and in an amount sufficient to pay the required Distribution under the Plan to, all Disputed Claims which have not been finally adjudicated as of the Effective Date and which may become Allowed Claims after the Effective Date.  The Disputed Claims Reserve may be established as a separate account, or in an account containing other funds, in the Liquidating Trustee's discretion.

37.     "Distribution(s)" means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

38.     "Effective Date" means the first day when all the Conditions Precedent have been satisfied or waived pursuant to Section VIII of the Plan.

39.     "Equity Interests" means any equity interest in the Debtor, including, without limitation, the membership interest(s) in the Debtor held directly or indirectly by BW Piezo Holding, LLC.

40.     "Estate" shall mean the estate created by section 541(a) of the Bankruptcy Code upon the Petition Date.

41.     "Estate Cause of Action" shall mean any and all manner of causes of action, claims, obligations, suits, debts, judgments, demands, rights of offset or recoupment, damages (actual, compensatory or punitive), counterclaims or affirmative defenses, whatsoever, whether in law or in equity of the Debtor and Estate, including, but not limited to, Avoidance Actions and any and all

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

claims (if any) against former managers, officers, directors, employees and/or agents of the Debtor (except as such claims may be subject to exculpation under Section X.A. of the Plan)

42. "Exculpated Parties" means the following: (a) CR3, LLC, (b) David Tiffany, (c) Pachulski Stang Ziehl & Jones, LLP, (d) Lockheed Martin Corporation (solely in its capacity as a Committee member), (e) Advanced GeoEnvironmental, Inc. (solely in its capacity as a Committee member), (f) Winthrop Couchot Golubow Hollander LLP, and (g) Charles Miller.

43. "File," "Filed," "Files," or "Filing" means any document(s) properly and timely filed with the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Case, and served on parties, as and to the extent that such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

44. "Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, reargue, rehear, or petition for certiorari shall have been waived in writing in form and substance satisfactory to the Debtor prior to the Effective Date, or the Liquidating Trustee after the Effective Date, respectively, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed or from which reargument or rehearing was sought, or certiorari shall have been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

45. "First Administrative Expenses Bar Date" means July 14, 2017, which is the deadline set pursuant to the Bar Date Order for filing requests for Administrative Expenses arising between the Petition Date and April 30, 2017.

46. "General Unsecured Claim" means any Claim that is not an Administrative Expense, Priority Tax Claim, a Claim classified in Class 1 or 2, or an Equity Interest in the Debtor.  General

DOCS_LA:306860.7 13817/002

Unsecured Claims include, without limitation, unsecured Claims arising from the rejection of executory contracts and unexpired leases.

47.    "Holder" means the owner of a Claim or Equity Interest.

48.    "Impaired" has the meaning set forth in § 1124 of the Bankruptcy Code.

49.    "Liquidating Trust" means the trust created pursuant to the Plan, Confirmation Order, and the Liquidating Trust Agreement, and created for the benefit of Holders of all Allowed Claims. Except as otherwise expressly provided in the Plan, all of the Assets of the Debtor will be transferred to the Liquidating Trust on the Effective Date of the Plan.  The Liquidating Trust will continue and conclude the liquidation of such assets and the Debtor, including the resolution of all Estate Causes of Action, and make Distributions to the Holders of Allowed Claims and pay the expenses of the Liquidating Trust, all as provided in the Plan.

50.    "Liquidating Trust Agreement" means that certain liquidating trust agreement by and between the Debtor and the Liquidating Trustee to be entered into pursuant to the Plan and the Confirmation Order, as such may be amended from time to time.

51.    "Liquidating Trust Assets" means any and all Assets of the Debtor and Estate, including Cash, Estate Causes of Action and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan, free and clear of any liens or claims that might otherwise have existed in favor of any party.

52.    "Liquidating Trustee" means [TBD], and any successor trustee appointed pursuant to the Liquidating Trust Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement and in such capacity shall act as a liquidator of the Debtor and its assets for the benefit of Holders of Allowed Claims.  Whenever the Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating Trustee's powers, rights and obligations as set forth in the Liquidating Trust Agreement.

53.    "Liquidating Trustee Claim Objection Deadline" shall mean the first Business Day to occur after 120 days after the Effective Date, provided, however, that such date may be extended by (i) order of the Bankruptcy Court to a later date upon motion brought by the Liquidating Trustee at any time before the occurrence thereof, or (ii) in the case of any Claim, by agreement between the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

Holder of the Claim and the Liquidating Trustee.  Any such later date shall then become the

Liquidating Trustee Claim Objection Deadline.

54.    "Other Priority Claim" means any Claim accorded priority in right of payment under

section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative

Expense.

55.    "Other Secured Claim" means any Secured Claim other than a Secured Claim of a

taxing authority or any Blue Wolf Secured Claims.

56.    "Person" means any individual, corporation general partnership, limited partnership,

association, joint stock company, joint venture, estate, trust, government or any political subdivision,

governmental unit, official committee appointed by the Office of the United States Trustee,

unofficial committee of creditors, or other entity.

57.    "Petition Date" means October 14, 2016, the date on which the Debtor filed its

voluntary petition commencing the Chapter 11 Case.

58.    "Plan" means this chapter 11 plan of liquidation, including all exhibits hereto, either

in their present form or as they may be altered, amended, or modified from time to time.

59.    "Post-Effective Date Notice Party" has the meaning set forth in Section XI.N of this

Plan.

60.    "Post-Effective Date Plan Expenses" means all voluntary and involuntary costs,

expenses, charges, obligations, or liabilities of any kind or nature, whether matured, unmatured,

non-contingent, contingent, liquidated, or unliquidated (collectively, "Expenses") incurred after the

Effective Date related to the implementation of this Plan, including, but not limited to:  (a) the

Expenses associated with administering this Plan, including any taxes assessed against the

Liquidating Trust Assets; (b) all fees of the Office of the United States Trustee; (c) the Expenses

associated with making the Distributions required by this Plan; (d) any Expenses associated with

preparing and filing tax returns and paying taxes; (e) the Expenses of independent contractors and

professionals providing services to the Liquidating Trustee; and (f) the fees of the Liquidating

Trustee, and the reimbursement of expenses, to which the Liquidating Trustee is entitled under the

Liquidating Trust Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

61.     "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

62.     "Pro Rata," "Pro Rata Share," and "Pro Rata Basis" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class; and "face amount," as used herein, means (a) when used in reference to a Disputed Claim, the full stated liquidated amount claimed by the Holder of the Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicably bankruptcy law; and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

63.     "Professional Person" means, for purposes of this Plan, any person (a) employed in accordance with an order of the Bankruptcy Court under sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, or (b) for which compensation or reimbursement is requested under section 503(b)(2)-(b)(6) of the Bankruptcy Code.

64.     "Rejection Damage Claim" means a Claim for any obligations or damages arising under an unexpired real-property or personal-property lease or executory contract that the Estate rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

65.     "Released Parties" means the following: (a) CR3, LLC, (b) David Tiffany, (c) Pachulski Stang Ziehl & Jones, LLP, and (d) Charles Miller.

66.     "Schedules" means the schedules of assets and liabilities, list of equity security holders, and statement of financial affairs filed by the Debtor as required by section 521(a)(l) of the Bankruptcy Code, Bankruptcy Rules 1007(a)(l) and(3) and (b)(l), and Official Bankruptcy Form Nos. 6 and 7, as amended from time to time.

67.     "Second Administrative Expenses Bar Date" has the meaning ascribed to this term in Section II.B.3.b(ii) of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

68.     "Secured Claim" means a Claim against the Debtor to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's Estate securing such Claim.

69.     "Voting Deadline" means 5:00 p.m. (Pacific Time) on the date established by order of the Bankruptcy Court for receipt of ballots voting to accept or reject the Plan.

**B.    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and shall be construed in accordance with the rules of construction thereunder. The definition given to any term or provision in this Plan supersedes any different meaning that may be given to that term or provision in the Disclosure Statement. Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Each pronoun stated in the masculine, feminine or neuter includes each of the masculine, feminine and neuter. Any reference to an exhibit, schedule, instrument or other document means such exhibit, schedule, instrument or other document as it has been, or may be, amended, modified, restated or supplemented as of the Confirmation Date, and any such exhibit, schedule, instrument or other document shall be deemed to be included in this Plan, regardless of when it is filed.

**C.    Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**D.    Exhibits.**

Any and all exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

## II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary.

The chart below summarizes the Classes of Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan:

| CLASS | STATUS |
|-------|--------|
| Class 1: Other Priority Claims | Unimpaired - not entitled to vote |
| Class 2: Secured Claims | Unimpaired - not entitled to vote |
| Class 3: General Unsecured Claims | Impaired - entitled to vote |
| Class 4: Equity Interests | Impaired - deemed to reject |

### B.    Unclassified Claims.

#### 1.    In General.

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving Distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, together with DIP Financing Claims, are instead treated separately in accordance herewith and in accordance with the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

#### 2.    DIP Financing Claim.

The DIP Financing Claim has been satisfied in full during the Chapter 11 Case.

#### 3.    Administrative Expenses.

##### a.    General.

Subject to the allowance procedures and deadlines provided herein, the Liquidating Trustee (or its agent) shall pay to each Holder of an Allowed Administrative Expense, on account of the Allowed Administrative Expense, and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense, unless the Holder agrees to other treatment.  Except as otherwise provided herein or in a prior order of the Bankruptcy Court: (i) payment of an Administrative Expense that is an Allowed Claim as of the Effective Date shall be made on the later of the Effective Date or the date such payment would have become due for payment of such Allowed Administrative

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

Expense in the absence of the Chapter 11 Case, whether pursuant to contract or applicable non-bankruptcy law; and (ii) payment of an Administrative Expense that becomes an Allowed Claim following the Effective Date shall be made on or before the date that is thirty (30) days after an order deeming such Administrative Expense an Allowed Claim becomes a Final Order.

                b.        Deadlines for Filing Claims.

                *(i)*        *Administrative Expenses Arising Before or On April 30, 2017.*

In accordance with the Claims Bar Date Order, all applications for payment of Administrative Expenses incurred between the Petition Date and April 30, 2017 (other than Professional Persons), must have Filed such applications prior to the First Administrative Expenses Bar Date.  Persons that failed to File such applications on or before the First Administrative Expenses Bar Date shall be barred from asserting such Administrative Expenses against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective property.

                *(ii)*        *Administrative Expenses Arising Between April 30, 2017 and Effective Date; Professional Persons' Fees.*

All applications for final compensation of Professional Persons for services rendered  and for reimbursement of expenses  incurred  on or before the Effective Date and all other requests for payment of Administrative Expenses incurred between April 30, 2017 and the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), 507(a)(1) or 1103 (except only for post-petition obligations incurred through the Effective  Date in the ordinary course of the Debtor's post-petition business and obligations under section 1930 of title 28 of the United States Code) shall be filed no later than sixty (60) days after the Effective  Date (the "Second Administrative Expenses Bar Date").  Professional Persons and others that do not File such requests on or before the Second Administrative Expenses Bar Date shall be barred from asserting such Administrative Expenses against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective property.  Objections to applications of Professional Persons or others for compensation or reimbursement of expenses must be Filed and served on the Liquidating Trustee and its counsel, as well as the Professional Persons and others to whose application the objection is addressed, in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

accordance with the Bankruptcy Code, the Bankruptcy Rules or pursuant to any other procedure set forth by an order of the Bankruptcy Court.

### 4. Priority Tax Claims

Except as otherwise agreed to by the parties, or ordered by the Bankruptcy Court, as soon as practicable after the Effective Date, each holder of an unpaid Allowed Priority Tax Claim shall receive payment in full in an amount equal to the Allowed Priority Tax Claim.

Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, all requests for payment of Claims by a governmental unit (as defined under section 101(27) of the Bankruptcy Code) for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective  Date, and for which no bar date has otherwise been previously established or is governing (including the First Administrative Expenses Bar Date), must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) ninety (90) days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Except as otherwise provided in section 503(b)(1)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes is required to File a request for a payment of the post-petition taxes and other monies due related to such taxes.  Except as otherwise provided in section 503(b)(l)(D) of the Bankruptcy Code and 28 U.S.C. § 960, any Holder of a Claim for taxes which does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective property, whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date, and shall receive no Distribution under the Plan or otherwise on account of such Claim.

### C. Classification and Treatment.

The treatment of Claims and Equity Interests under this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Holder or a Claim or Holder of an Equity Interest may have in or against the Debtor or its property.  This treatment supersedes and replaces any agreements or rights which those entities have in or against the Debtor or its property.

14

DOCS_LA:306860.7 13817/002

**NO DISTRIBUTIONS SHALL BE MADE, AND NO RIGHTS SHALL BE RETAINED, ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

        1.      **Class 1:  Other Priority Claims.**

        a.      Classification:  Class 1 consists of all Claims entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, except Priority Tax Claims and Administrative Expenses.

        b.      Treatment:  The Liquidating Trustee shall pay all Allowed Claims in this Class in full, in Cash, on the later of: (i) the Effective Date; and (ii) the date on which an order allowing such Claim becomes a Final Order, and in each case or as soon thereafter as is practicable. Class 1 is not Impaired, and the holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

        2.      **Class 2:  Secured Claims.**

        a.      Classification:  Class 2 consists of Secured Claims. For purposes of Distributions under the Plan, each Holder of a Secured Claim in Class 2 is considered to be in its own separate subclass within Class 2 (*i.e.*, Class 2A, Class 2B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

        b.      Treatment:  Except to the extent that a Holder of an Allowed Secured Claim has been paid by the Debtor, in whole or in part, prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter, at the option of the Debtor, each Holder of an Allowed Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed Secured Claim, (y) return of the collateral securing such Claim or (z) such other treatment as may be agreed to by the Holder.  The Debtor shall inform each Holder of a Secured Claim of the treatment of such creditor's Secured Claim not less than ten (10) days prior to the Confirmation Hearing.  Class 2 is not Impaired, and the Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

        3.      **Class 3:  General Unsecured Claims.**

        a.      Classification:  Class 3 consists of all General Unsecured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

b.      Treatment:  On the Effective Date, unless a Holder of an Allowed Class 3 Claim agrees to accept a lesser treatment of such Claim, each Holder of an Allowed Class 3 Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such General Unsecured Claim, an allocated Class 3 Trust Interest, which shall entitle the Holder to receive its Pro Rata share of funds available to Holders of Class 3 Trust Interests pursuant to the Liquidating Trust Agreement.  Class 3 is Impaired, and the Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

c.      Timing of Distributions:  The Liquidating Trustee shall make Distributions to the Holders of Allowed Class 3 Claims on account of their respective Class 3 Trust Interests. All Holders of Allowed Class 3 Claims shall receive an initial Distribution of their respective Class 3 Trust Interests within 120 days following the Effective Date, or on such later date as the Liquidating Trustee determines to be practicable, in the exercise of its sole and absolute discretion, and shall receive thereafter Distributions of their respctive Class 3 Trust Interests on each 180th-day anniversary of the Effective Date, or on such later date as the Liquidating Trustee determines to be practicable in the exercise of its sole and absolute discretion.  Holders of Allowed Class 3 Claims shall receive any final Distribution of their respective Class 3 Trust Interests within ten (10) days after the Liquidating Trustee's filing of the Liquidating Trustee's Certification (as such term is defined in Section V.B.17 hereof), or as soon thereafter as is practicable.

d.      Post-Petition Interest:  In accordance with section 726(a)(5) of the Bankruptcy Code, an Allowed Class 3 Claim shall not include post-petition interest on account of such Allowed Class 3 Claim, except to the extent that all of the following are satisfied and paid in full:  (i) all Allowed Administrative Claims; (ii) all Allowed Priority Tax Claims; (iii) all Allowed Other Priority Claims; (iv) all Allowed Secured Claims; (v) all Allowed General Unsecured Claims; (vi) all late-filed Claims; (vii) all Post-Effective Date Plan Expenses; and (viii) all Allowed Claims for fines, penalties, or forfeiture, or for multiple, exemplary or punitive damages, arising before the Petition Date, to the extent that such Claims are not for actual pecuniary loss suffered by the Holder of such Claim, as set forth in section 726(a)(4) of the Bankruptcy Code.  Any post-petition interest

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

that may be payable on an Allowed General Unsecured Claim shall be calculated from the Petition

Date through the date on which such Allowed General Unsecured Claim is paid in full.

        e.      Conditions to Payment of Distributions:  Notwithstanding any

other provision to the contrary contained in this Plan, no Distribution shall be made on account of

any Allowed Class 3 Claim until each of the following occurs:  (i) all Administrative Claims are paid

or are reserved for; (ii) all Priority Tax Claims are paid or are reserved for; (iii) all Other Priority

Claims are paid or are reserved for; (iv) all Allowed Secured Claims are paid or are reserved for

(subject to the elections provided pursuant to Section II.C.2.d hereof); and (v) all outstanding

Post-Effective Date Plan Expenses have been paid in full and an adequate reserve is established by

the Liquidating Trustee providing for full payment of the estimated amount of all Post-Effective

Date Plan Expenses through the Case Closing Date, in an amount to be determined by the

Liquidating Trustee in the exercise of its sole and absolute discretion.

        **4.**      **Class 4:  Equity Interests.**

        a.      Classification:  Class 4 consists of Equity Interests.

        b.      Treatment:  As of the Effective Date, each Holder of record of an

Allowed Equity Interest shall not receive a Distribution under the Plan and all Equity Interests will

be deemed to be cancelled and void; provided, however, that, in the event that each Allowed Claim,

plus any post-petition interest to which the Holder thereof is entitled, is paid in full, each Holder of

record of an Allowed Equity Interest shall receive, in full and complete satisfaction, exchange and

release of such Allowed Equity Interest, its Pro Rata share of any funds remaining in the Liquidating

Trust, payable as soon as practicable as determined by the Liquidating Trustee in the exercise of its

sole and absolute discretion.

        For the purpose only of determining any Distributions to which Holders of

Allowed Equity Interests may be entitled under this Section II.C.4, each beneficial Holder of record

of an Equity Interest in the Debtor as of the Effective Date shall be deemed to have an Allowed

Equity Interest for the number of shares of stock in the Debtor held by it as of the Effective Date.  In

the event that any entity that is neither the Holder of record of an Equity Interest in the Debtor as of

the Effective Date nor the beneficial owner of an Equity Interest in the Debtor as of the Effective

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

Date files a proof of right to record status pursuant to Rule 3003(d) of the Bankruptcy Rules, such proof of right shall be disallowed automatically and without any need for the Debtor, the Liquidating Trustee, or any other party-in-interest to object thereto or otherwise take any act with respect thereto.

Class 4 is Impaired, but because it is every likely that  no Distributions shall be made to Holders of Equity Interests in Class 4, such Holders are deemed conclusively to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore the Holders of Interests in Class 4 are not entitled to vote to accept or reject the Plan.

## III.     ACCEPTANCE OR REJECTION OF THE PLAN
### A.     Voting Classes.

Each Holder of an Allowed Class 3 Claim shall be entitled to vote to accept or reject the Plan.  No other Holder of a Claim or Interest Equity shall be entitled to cast a vote with respect to the Plan.

### B.     Voting Rights of Holders of Disputed Claims.

A Disputed Claim will not be counted for purposes of voting on the Plan to the extent it is disputed, provided an objection to such Claim has been filed no later than seven (7) calendar days prior to the deadline for casting ballots on the Plan, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a).

### C.     Acceptance by Impaired Classes.

An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) more than one-half in number of the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

### D.     Presumed Acceptance/Rejection of the Plan.

Classes 1 and 2 are unimpaired under the Plan and, therefore, are conclusively presumed by the Bankruptcy Code to accept the Plan.  Class 4 is very likely not receiving a Distribution under the Plan and therefore, for the purpose of the Plan, is conclusively presumed by the Bankruptcy Code to reject the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

## IV. PROVISIONS FOR TREATMENT OF DISPUTED, CONTINGENT, OR UNLIQUIDATED CLAIMS AND ADMINISTRATIVE EXPENSES

### A. Resolution of Disputed Claims.

As of the Effective Date, and subject to the provisions of this Plan, the Liquidating Trustee shall have the sole authority to investigate, administer, monitor, implement, litigate and settle all Disputed Claims. From and after the Effective Date, the Liquidating Trustee may file and prosecute objections to Claims, including, but not limited to, Administrative Expenses, Priority Tax Claims, and Other Priority Claims. All objections shall be filed prior to the Liquidating Trustee Claim Objection Deadline and served upon the Holder of the Claim to which the objection is made.

### B. Reserve for Disputed Claims.

Cash which would be distributed on account of Holders of Disputed Claims, in the event that such Disputed Claims become Allowed Claims, shall instead be placed in the Disputed Claims Reserve maintained by the Liquidating Trustee. Such Cash in the Disputed Claims Reserve will be reserved for the benefit of Holders of such Disputed Claims pending determination of their entitlement thereto. Unless the Bankruptcy Court orders otherwise, the Liquidating Trustee will reserve Pro Rata Distributions for such Disputed Claims based upon the full amount of the Disputed Claims or, in the case of a Disputed Claim that is an Administrative Expense, Priority Tax Claim or Other Priority Claim, Cash in the full amount of such Disputed Claim. No reserve shall be required for any Disputed Claim to the extent of any effective insurance coverage therefor. Such Cash so reserved shall be distributed by the Liquidating Trustee to the holder of a Disputed Claim to the extent that such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.

To the extent that a Disputed Claim ultimately is disallowed or allowed in an amount less than the amount of Cash that has been reserved, the resulting surplus Cash shall be allocated among Holders of Allowed Claims in the Class in which the Disputed Claim was classified as provided in the Plan.

To the extent that any portion of a Disputed Claim is not disputed, the Liquidating Trustee shall establish a reserve in the Disputed Claims Reserve only on account of that portion of the Disputed Claim that is in dispute and shall make one or more interim Distributions on account of the portion of such Disputed Claim that is not in dispute.

19

The Liquidating Trustee may, at the Liquidating Trustee's sole discretion, file a tax election to treat the Disputed Claims Reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes, rather than tax such reserve as a part of the grantor liquidating trust.  If the election is made, the Liquidating Trustee shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

## C.    Exclusive Right to Object to Claims.

From and after the Effective Date, the Liquidating Trustee shall have the sole and exclusive right to file, litigate and settle objections to Disputed Claims.  As the representative of the Estate, the Liquidating Trustee shall succeed to all of the rights and powers of the Debtor and the Estate with respect to all objections to Disputed Claims, and shall be substituted for, and shall replace, the Debtor and the Estate as the party-in-interest in all litigation regarding Disputed Claims pending as of the Effective Date.

## D.    Investigation Regarding Disputed Claims.

Notwithstanding the fact that the Liquidating Trustee shall have, after the Effective Date, the sole and exclusive right to file objections to Disputed Claims, nothing contained herein shall be deemed to obligate the Liquidating Trustee to file any objection to a Claim, which action shall be determined by the Liquidating Trustee in the exercise of its sole and absolute discretion.

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE CLAIMS IN THE CHAPTER 11 CASE AND THE FILING OF OBJECTIONS TO DISPUTED CLAIMS.  THIS INVESTIGATION IS ONGOING AND, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE, MAY OCCUR AFTER THE CONFIRMATION DATE.  AS A RESULT, HOLDERS OF CLAIMS AND OTHER PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT AN OBJECTION TO A DISPUTED CLAIM MAY BE FILED AT ANY TIME, SUBJECT ONLY TO THE LIQUIDATING TRUSTEE CLAIM OBJECTION DEADLINE.  THE LIQUIDATING TRUSTEE SHALL HAVE THE RIGHT TO OBJECT TO AMOUNTS THAT HAVE BEEN**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

**SCHEDULED BY THE DEBTOR, OR THAT ARE REFLECTED IN THE DEBTOR'S BOOKS AND RECORDS, AND WHICH ARE FOUND TO BE OBJECTIONABLE IN ANY RESPECT.**

E.    **Distribution After Allowance.**

Within fourteen (14) days following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Liquidating Trustee, as disbursing agent under this Plan, shall distribute to the Holder of such Allowed Claim any Cash or other property that would have been distributable to such Holder as if, at the time of the making of any Distribution to the Class of which such Holder is a member, such Claim had been an Allowed Claim and not a Disputed Claim.

V.    **IMPLEMENTATION OF THE PLAN**

On or soon as practicable after the Effective Date, the following shall occur with respect to the implementation of this Plan:  (i) all acts, documents and agreements appropriate to implement this Plan shall be executed; (ii) the Liquidating Trustee, as disbursing agent under this Plan, shall make all Distributions required to be made on or about the Effective Date of this Plan in accordance with the terms and conditions of this Plan; and (iii) the Liquidating Trustee, as disbursing agent under this Plan, shall fund reserves required to be funded pursuant to this Plan.

Upon the Effective Date, all transactions and matters provided for under this Plan shall be deemed to have been authorized and approved by the Debtor without any requirement of further action by the Debtor, or Holders of Equity Interests in the Debtor.

A.    **Vesting of Assets.**

Unless otherwise expressly provided under this Plan, on the Effective Date, the Debtor's Assets, including, without limitation, all Estate Causes of Action, will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, subject to the provisions of the Plan.  On and after the Effective Date, the transfer of the Debtor's Assets from the Estate to the Liquidating Trust will be deemed final and irrevocable and Distributions may be made from the Liquidating Trust.

In connection with the foregoing:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

(a)    On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement and the Plan and may use, acquire and dispose of property of the Liquidating Trust free of any restrictions imposed under the Bankruptcy Code.  The Liquidating Trustee shall have the rights, powers and duties provided for by this Plan, the Liquidating Trust Agreement, and by the Confirmation Order.  The Liquidating Trustee, in the exercise of its reasonable business judgment, shall be responsible for liquidating the remaining assets of the Debtor, winding up the financial affairs of the Debtor, and for making Distributions to Holders of Claims in as efficient, effective and economical manner as is reasonably practicable so as to produce for Holders of Claims as favorable a recovery on their Claims as is reasonably possible under the circumstances of this case.

(b)    The Confirmation Order will provide the Liquidating Trustee with express authority to convey, transfer and assign any and all of the Liquidating Trust Assets and to take all actions necessary to effectuate same and to prosecute, settle and compromise (including, without limitation, by set-off) any and all Estate Causes of Action and Disputed Claims, without any need for notice to creditors or order or approval of the Bankruptcy Court.

(c)    As of the Effective Date, the Liquidating Trust Assets will be free and clear of all liens, claims and interests of Holders of Claims and Equity Interests, except as otherwise provided in the Plan.

**B.    Establishment of the Liquidating Trust.**

**1.    Generally.**

On the Effective Date the Liquidating Trust Agreement will become effective, and, if not previously signed, the Debtor and the Liquidating Trustee will execute the Liquidating Trust Agreement.  The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**2.     Beneficiaries.**

In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the Liquidating Trust will be the Holders of all Allowed Class 3 Claims against the Debtor.  The Holders of such Allowed Claims will receive an allocation of the Liquidating Trust Assets as provided for in the Plan and the Liquidating Trust Agreement.  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of such Beneficiaries' respective portion of the Liquidating Trust.

**3.     Implementation of the Liquidating Trust.**

On the Effective Date, the Debtor, on behalf of the Estate, and the Liquidating Trustee will be authorized and directed to take all such actions as required to transfer to the Liquidating Trust, from the Debtor and Estate, the Debtor's Assets.  From and after the Effective Date, the Liquidating Trustee will be authorized to, and will, take all such actions to implement the Liquidating Trust Agreement and the provisions of the Plan as are contemplated to be implemented by the Liquidating Trustee, including, without limitation, directing Distributions to Holders of Allowed Claims, objecting, compromising and settling Claims (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of Claims), prosecuting or otherwise resolving Estate Causes of Action and causing Distributions from the Liquidating Trust to be made to the Beneficiaries.  The funding of the Liquidating Trust will be from the Debtor's Cash on hand as of the Effective Date and the proceeds of the liquidation by the Liquidating Trustee of any other Liquidating Trust Assets.

**4.     Transfer of the Debtor's Assets.**

On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor is authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee all of the Debtor's and Estate's right, title and interest in and to its Assets, including all Estate Causes of Action, free and clear of all liens, Claims, encumbrances or interests of any kind in such property, except as otherwise expressly provided in the Plan.  To the extent required to implement the transfer of the Debtor's Assets from the Debtor and Estate to the Liquidating Trust, all Persons will cooperate with the Debtor and Estate to assist the Debtor and Estate to implement said transfers.

23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 5.     Representative of the Estate.

The Debtor shall identify the Liquidating Trustee in its sole discretion subject to consultation with the Committee.  The Liquidating Trustee will be appointed as the representative of the Debtor's Estate pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power (subject to the Liquidating Trust Agreement) to *inter alia*: (i) object to, settle and compromise Claims (including any Claim for payment of any Administrative Expense) against the Debtor (including, without limitation, exercising set-off rights and/or seeking the subordination and/or reclassification of Claims) and Equity Interests in the Debtor; (ii) administer, investigate, prosecute, settle and abandon all Estate Causes of Action assigned to the Liquidating Trust; (iii) make Distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind-down, and close the Chapter 11 Case.  Except only for the filing of a final decree to close the Chapter 11 Case pursuant to Rule 3022 of the Bankruptcy Rules, the Liquidating Trustee may take, as representative of the Estate, all acts to implement and consummate the Plan and the Liquidating Trust Agreement, including the acts set forth in this Section V.B.5, without any need for notice to creditors or order or approval of the Bankruptcy Court.  As the representative of the Estate, the Liquidating Trustee will be vested with all of the rights and powers of the Debtor and Estate with respect to all Estate Causes of Action assigned and transferred to the Liquidating Trust, and the Liquidating Trustee will be substituted in place of the Debtor and Estate, as applicable, as the party in interest in all such litigation pending as of the Effective Date.

From and after the Effective Date, the Liquidating Trustee shall, without any further notice or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and consummation of the Plan and Liquidating Trust Agreement incurred by the Liquidating Trust.

### 6.     No Liability of Liquidating Trustee.

To the maximum extent permitted by law, the Liquidating Trustee, its employees, officers, directors, agents, members, and representatives, and professionals employed or retained by the Liquidating Trustee (the "Liquidating Trustee's Agents"), will not have or incur liability to any

24

Person for an act taken or omission made in good faith in connection with or related to the
administration of the Liquidating Trust Assets, the implementation of the Plan and the Distributions
made thereunder or Distributions made under the Liquidating Trust Agreement; **provided, however,
that the foregoing limitation shall not apply to any damages suffered or incurred by any
Holder of a Claim or Beneficiary that are found in a final judgment by a court of competent
jurisdiction (not subject to further appeal) to have resulted primarily and directly from the
fraud, gross negligence, willful misconduct, or from profit derived from a breach of trust by
the Liquidating Trustee or the Liquidating Trustee's Agents**.  The Liquidating Trustee, the
Liquidating Trustee's Agents, and their respective employees, officers, directors, agents, members,
and representatives, and professionals employed or retained by any of them, will in all respects be
entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities
under the Plan and the Liquidating Trust Agreement.  Entry of the Confirmation Order constitutes a
judicial determination that the exculpation provision contained in this Section of the Plan is
necessary to, *inter alia*, facilitate Confirmation and feasibility and to minimize potential claims
arising after the Effective Date for indemnity, reimbursement or contribution from the Estate, or the
Liquidating Trust, or their respective property.  The entry of the Confirmation Order confirming the
Plan will also constitute a res judicata determination of the matters included in the exculpation
provisions of the Plan.  Notwithstanding the foregoing, nothing herein or in this Section of the Plan
will alter any provision in the Liquidating Trust Agreement that provides for the potential liability of
the Liquidating Trustee to any Person.

   **7.    Provisions Relating to Federal Income Tax Compliance.**

   A transfer to the Liquidating Trust shall be treated for all purposes of the Internal Revenue
Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent
creditors are Beneficiaries.  For example, such treatment shall apply for purposes of Internal
Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274.  Any such transfer shall be treated for
federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed
transfer by the beneficiary-creditors to the Liquidating Trusts.  The Beneficiaries of the Liquidating

Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the

Liquidating Trust.

### 8.    Cooperation with Liquidating Trustee.

All Holders of Claims, Holders of Equity Interests and other parties-in-interest shall

cooperate with the Liquidating Trustee by executing any documents, and by taking any acts,

appropriate to implement the provisions of this Plan.

### 9.    Compensation of the Liquidating Trustee/Removal of the Liquidating Trustee.

On the Effective Date of this Plan, the Liquidating Trustee shall be appointed to serve under

this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee's compensation shall be as

provided in the Liquidating Trust Agreement.  The Liquidating Trustee shall serve during the term of

this Plan; provided, however, that, upon motion made with notice and an opportunity for a hearing

given to the Post-Effective Date Notice Parties, any party-in-interest shall be entitled to request, for

cause shown, that the Bankruptcy Court terminate the employment of the Liquidating Trustee and

replace it with another Person, who if appointed by Final Order of the Bankruptcy Court, will have

all of the rights, powers and duties provided to the Liquidating Trustee by this Plan, the Liquidating

Trust Agreement, the Confirmation Order and by the provisions of the Final Order of the Bankruptcy

Court appointing such replacement Liquidating Trustee.

### 10.    Resignation of Liquidating Trustee.

Upon any resignation, death, disability or inability to serve of the Liquidating Trustee

("Liquidating Trustee Service Termination Event"), the members of the Committee as of the

Confirmation Date may appoint a replacement Liquidating Trustee after notice to the Post-Effective

Date Notice Parties.  In the event that no replacement Liquidating Trustee is appointed within

sixty (60) days after the date of any Liquidating Trustee Service Termination Event, the Office of the

United States Trustee may, after notice and an opportunity for hearing, request that the Chapter 11

Case be converted to one under chapter 7 of the Bankruptcy Code.

DOCS_LA:306860.7 13817/002

**11.  Funding of Post-Effective Date Plan Expenses.**

The Liquidating Trust shall be entitled to incur, and to be reimbursed for, Post-Effective Plan Expenses in performing its duties and obligations under the Plan and Liquidating Trust Agreement. All Post-Effective Date Plan Expenses shall be expenses of the Liquidating Trust.  The Liquidating Trustee shall have no personal liability for any Post-Effective Date Plan Expenses.  The Liquidating Trustee shall disburse funds from the Liquidating Trust Assets for the purpose of funding the Post-Effective Date Plan Expenses.

**12.  Estate Causes of Action.**

The right to enforce, file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon on behalf of the Debtor and the Estate any and all Estate Causes of Action, including, but not limited to, any Avoidance Actions, is deemed automatically transferred on the Effective Date from the Estate to the Liquidating Trustee.

As of the Effective Date, the Liquidating Trustee shall be authorized to exercise and to perform the rights, powers and duties held by the Estate with respect to the Estate Causes of Action, and, from and after the Effective Date, the Liquidating Trustee, shall have the sole and exclusive right, to file, litigate, prosecute, settle, adjust, retain, enforce, collect and abandon claims and interests of the Estate with respect to the Estate Causes of Action, without the consent or approval of any third party, and without any further approval or order of the Bankruptcy Court.

The Liquidating Trustee shall make the decision, in the exercise of its business judgment, whether to prosecute or to continue to prosecute any Estate Cause of Action.  This decision shall be based, in part, upon the Liquidating Trustee's evaluation of the merits of the Estate Cause of Action as well as the costs required to prosecute such Estate Cause of Action taking into account the resources available to make Distributions to Creditors.  The Liquidating Trustee, shall be entitled to determine, in the exercise of its business judgment, not to prosecute, or to abandon, any Estate Cause of Action.

The Liquidating Trustee may retain professionals to represent it in prosecuting Estate Causes of Action, including professionals who were employed by the Debtor or the Committee in the Chapter 11 Case.  The Liquidating Trustee shall determine the terms of the retention of

27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

professionals, in the exercise of its business judgment, and shall be entitled to retain counsel on a contingency fee basis to prosecute some or all of the Estate Causes of Action.

Unless an Estate Cause of Action is expressly waived, relinquished, released, compromised, or settled in this Plan or in any Final Order, such Estate Cause of Action is expressly reserved for later adjudication by the Liquidating Trustee (including, without limitation, any Estate Causes of Action of which the Debtor presently may be unaware, or which may arise or exist by reason of facts or circumstances unknown to the Debtor at this time, or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to the Liquidating Trustee's prosecution of Estate Causes of Action based on the Disclosure Statement, this Plan, or the Confirmation Order. Without limiting the generality of the foregoing, any Person with respect to which the Debtor has incurred an obligation (whether on account of services, purchase or sale of property, or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, should assume that such obligation, transfer, or transaction may be evaluated by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an Avoidance Action or other action or proceeding filed after the Effective Date.

**THE DEBTOR HAS NOT COMPLETED ITS INVESTIGATION REGARDING THE EXISTENCE OF ESTATE CAUSES OF ACTION. THE INVESTIGATION IN THIS REGARD IS ONGOING. AS A RESULT, ALL PARTIES-IN-INTEREST ARE HEREBY ADVISED THAT, NOTWITHSTANDING THE FACT THAT THE EXISTENCE OF ANY PARTICULAR ESTATE CAUSE OF ACTION MAY NOT BE LISTED, DISCLOSED OR SET FORTH IN THIS PLAN, AN ESTATE CAUSE OF ACTION MAY BE FILED AGAINST ANY CREDITOR OR OTHER PARTY AS THE LIQUIDATING TRUSTEE MAY DETERMINE, IN THE EXERCISE OF ITS SOLE AND ABSOLUTE DISCRETION.**

DOCS_LA:306860.7 13817/002

## 13.    Post-Effective Date Professional Fees.

The Liquidating Trustee may employ, without any need to give notice to Holders of Claims or other parties-in-interest or obtain any approval of the Bankruptcy Court, any professional to aid the Liquidating Trustee in performing the Liquidating Trustee's duties under this Plan or the Liquidating Trust Agreement, as the Liquidating Truste deems appropriate in the exercise of its sole and absolute discretion, including rofessionals who were employed by the Debtor or the Committee in the Chapter 11 Case.  Any professional employed by the Liquidating Trustee after the Effective Date shall be entitled to obtain from the Liquidating Trustee payment of the professional's fees and costs as a Post-Effective Date Plan Expense, in the ordinary course, without any need to give notice to Holders of Claims or other parties-in-interest or to obtain any approval or order of the Bankruptcy Court.  Notwithstanding the foregoing, if the Liquidating Trustee should fail to pay any post-Effective Date fees and costs of a professional entitled to such payment, within thirty (30) days after the professional's rendering of its billing statement, the professional shall be entitled to seek, by application filed in accordance with the Bankruptcy Rules, an order of the Bankruptcy Court requiring the Liquidating Trustee to forthwith pay to the professional its fees and costs.

## 14.    Approval for Disposition of Assets.

From and after the Effective Date, the Liquidating Trustee shall be entitled to sell, transfer, assign, encumber or otherwise dispose of any interest in any of the Liquidating Trust Assets, without any need to give notice to Holders of Claims or parties-in-interest or to obtain any approval or order of the Bankruptcy Court.  Notwithstanding the foregoing, the Liquidating Trustee shall be entitled to seek, from the Bankruptcy Court, an order authorizing the sale of any Liquidating Trust Asset free and clear of liens pursuant to the provisions of section 363(f) of the Bankruptcy Code.

## 15.    Compromise of Controversies.

From and after the Effective Date, the Liquidating Trustee shall be entitled to compromise any objections to a Disputed Claim, or any controversies relating to Estate Causes of Action or other litigation pending after the Confirmation Date, without any need to give notice to creditors or parties-in-interest or to obtain any approval or order of the Bankruptcy Court.

DOCS_LA:306860.7 13817/002

**16.    Bankruptcy Court Approval Relative to Post-Confirmation Matters.**

Nothing contained in this Plan shall be deemed to impair in any manner the right of the Liquidating Trustee to seek at any time after the Effective Date orders of the Bankruptcy Court approving actions to be taken, or granting relief, consistent with this Plan as may be necessary or desirable to effectuate the provisions of this Plan.

**17.    Liquidating Trustee Certification.**

On or before the date upon which the Liquidating Trustee determines, in the exercise of its sole and absolute discretion, that all Estate Causes of Action and objections to Disputed Claims have been resolved by Final Order, that all other Liquidating Trust Assets have been liquidated or otherwise disposed of, and that all Distributions required to be made under this Plan have been made or that final Distributions are being made or will be made within ten (10) days or as soon thereafter as is practicable by the Liquidating Trustee, the Liquidating Trustee shall file with the Bankruptcy Court and serve upon the Office of the United States Trustee and any other Post-Effective Date Notice Party a certification attesting to such determination ("Liquidating Trustee Certification").

**18.    Final Decree.**

Unless earlier filed by the Liquidating Trustee, by the thirtieth (30th) day after the filing of the Liquidating Trustee Certification, the Liquidating Trustee shall file, in accordance with Rule 3022 of the Chapter 11 Bankruptcy Rules, an application with the Bankruptcy Court to obtain a final decree to close the Case.

**19.    Other Rights, Powers and Duties of Liquidating Trustee.**

In addition to the rights, powers and duties granted expressly to the Liquidating Trustee pursuant to this Plan, the Liquidating Trustee shall have such other rights, powers and duties that are appropriate to implement and to carry out the provisions of this Plan for the benefit of Holders of Claims that are not inconsistent with the provisions of this Plan.

**20.    Resolution of Disputes.**

In the event that a dispute should arise between the Liquidating Trustee and any party-in-interest in the Chapter 11 Case regarding any matters pertaining to this Plan, the Liquidating Trust Agreement or pertaining to the Liquidating Trustee's performance of its duties and exercise of its

30

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rights, powers and remedies under this Plan, either of them may request, pursuant to the provisions of the Bankruptcy Rules, that the Bankruptcy Court resolve the merits of such dispute.

### 21.   Termination of Employment of Liquidating Trustee.

Upon the Case Closing Date, the rights, powers and duties granted to the Liquidating Trustee hereunder or under the Liquidating Trust Agreement shall terminate and the Liquidating Trustee shall be discharged.

### 22.   Bar Date for Filing Avoidance Action Payment Claims.

Any Avoidance Action Payment Claim shall be forever barred, shall not be enforceable against the Debtor or the Estate and shall not be entitled to any Distribution under this Plan, unless a proof of Claim for such Avoidance Action Payment Claim is filed and served on the Liquidating Trustee within thirty (30) days after the <u>later</u> of (a) the date of entry of the order of the Bankruptcy Court adjudging the creditor's liability to the Debtor on account of such Avoidance Action, or (b) the Effective Date.

### C.   Prosecution of Estate Causes of Action by the Liquidating Trustee.

Pursuant to the Confirmation Order, on the Effective Date, the Debtor irrevocably assigns, transfers and conveys to the Liquidating Trustee the right to manage and control all property of the Estate, including, but not limited to, all Estate Causes of Action. Subject to the provisions of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall have the sole power and authority to prosecute, compromise or otherwise resolve after the Effective Date any and all such Estate Causes of Action, with all recoveries derived therefrom to be included within the Liquidating Trust Assets.

### D.   Issuance and Execution of Plan Related Documents.

As of the Effective Date, the Debtor and/or the Liquidating Trustee will execute such amendments, modifications, supplements, and other documents as may be reasonably appropriate to implement the Plan.  The Debtor and/or the Liquidating Trustee are authorized to execute such amendments, modifications, supplements and other documents as provided for in the Plan without any further corporate action, and upon such execution, such amendments, modifications,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

supplements and other documents as provided for in the Plan shall be deemed binding upon the

Debtor and/or the Liquidating Trustee and such other parties as applicable.

E.     **Dissolution of the Debtor and Termination of Current Officers, Directors,**
       **Employees and Counsel; Dissolution of the Committee.**

From and after the Effective Date, the Debtor and the Committee shall be dissolved, and the

Liquidating Trustee shall be authorized to take all action necessary to dissolve the Debtor.  On the

Effective Date, the employment, retention, appointment and authority of all officers (including,

without limitation, the Chief Restructuring Officer of the Debtor), directors, employees and

professionals of the Debtor, and all professionals of the Committee, shall be deemed to terminate;

provided, however that such parties shall be entitled to prosecute final fee applications as necessary.

On the Effective Date, the Committee shall cease to exist and its members, designated

representatives and/or agents (including, without limitation, attorneys and other advisors and agents)

shall, subject to those matters set forth below, be released and discharged from any further authority,

duties, responsibilities and obligations relating to, arising from, or in connection with the

Committee.  The Committee shall continue to exist after such date solely with respect to all the

applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees

and expenses incurred by any professional.

VI.    **DISTRIBUTIONS UNDER THE PLAN**

       A.     **In General.**

Except as otherwise provided herein, or as may be ordered by the Bankruptcy Court,

Distributions to be made on account of Allowed Claims, other than Allowed Class 3 Claims, shall be

made on or soon as reasonably practicable after the Effective Date.  The date(s) for Distributions to

be made on account of Allowed Class 3 Claims shall be selected by the Liquidating Trustee in

accordance with the Liquidating Trust Agreement, provided, however, that the date(s) selected shall

be made as soon as reasonably practicable after the Effective Date, subject to the terms of the

Liquidating Trust Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

**B.     Manner of Payment Under the Plan.**

Any payment of Cash made by the Liquidating Trustee pursuant to the Plan may be made either by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

**C.     Manner of Distribution of Other Property.**

Any Distribution under the Plan of property other than Cash shall be made by the Liquidating Trustee in accordance with the terms of the Plan.

**D.     Set-offs.**

The Liquidating Trustee may set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever that the Debtor, Estate or the Liquidating Trust may have against the Holder of such Claim; *provided* that neither the failure to effect such set-off nor the allowance of any Claim that otherwise would be subject to set-off, shall constitute a waiver or release by the Debtor, Estate or Liquidating Trust of any such claim that the Debtor, Estate or Liquidating Trust may have against such Holder.

**E.     Distribution of Unclaimed Property.**

Except as otherwise provided in the Plan, any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after the later of (i) one hundred eighty (180) days following the Effective Date or (ii) ninety (90) days after such Distribution has been remitted to the Holder of the Allowed Claim, shall be deemed Available Cash and distributed as provided for under the Plan.

**F.     De Minimis Distributions.**

No cash payment of less than fifty dollars ($50.00) shall be made by the Liquidating Trustee to any Holder of a Claim unless a request therefor is made in writing to the Liquidating Trustee.

**G.     Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**H.    Delivery of Distributions, Address of Holder.**

For purposes of all notices and Distributions under this Plan, the Liquidating Trustee shall be entitled to rely on, and Distributions to Holders of Allowed Claims shall be made by regular U.S. first class mail to, the following name and address for the Holder of each such Claim:  (a) the address set forth in the proof of Claim Filed by such Holder; (b) the address set forth in any written notice of address change delivered by the Holder to the Debtor or the Liquidating Trustee after the date on which any related proof of Claim was Filed, or (c) the address reflected on the Schedules if no proof of Claim is Filed and neither the Debtor nor the Liquidating Trustee has received a written notice of a change of address.  The Liquidating Trustee shall be under no duty to attempt to locate Holders of Allowed Claims who are entitled to unclaimed Distributions.

**I.    Payment of Fees and Expenses of Disbursing Agent.**

The fees and expenses incurred by the Liquidating Trustee, in connection with the performance of its duties as disbursing agent under this Plan, shall be paid from the Liquidating Trust Assets.

**J.    Approval for Schedule of Proposed Distributions.**

In the discretion of the Liquidating Trustee, the Liquidating Trustee shall be entitled to prepare a preliminary schedule of proposed Distributions to Holders of Claims ("Distribution Schedule"), and to apply, on an expedited basis, for an order of the Bankruptcy Court approving the making of such Distributions pursuant to the Distribution Schedule.  Notice of any such application shall be served on the Post-Effective Date Notice Parties or as otherwise determined by the Bankruptcy Court.

**K.    Further Assurances Regarding Distributions.**

As a condition to obtaining Distributions under this Plan, each Holder of a Claim shall execute and deliver to the Liquidating Trustee, or join in the execution and delivery of, any agreement or instrument appropriate for the consummation of this Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

**L.** **Creditor's Payment of Obligations or Turn Over of Property to the Liquidating Trustee.**

As a condition to obtaining Distributions under this Plan, any Holder of a Claim from which property is recoverable pursuant to a Final Order of the Bankruptcy Court under sections 542, 543, 550 or 553 of the Bankruptcy Code, or otherwise, or that is a transferee of a transfer avoidable pursuant to a Final Order of the Bankruptcy Court under sections 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code or otherwise, shall pay to the Liquidating Trustee the amount, or turn over to the Liquidating Trustee any such property, for which such Holder of a Claim is liable to the Debtor.

**VII.** **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.** **Rejection.**

On the Effective Date, any and all agreements executed by the Debtor before the Effective Date, other than agreements that were previously either assumed and assigned or rejected either by a Final Order or under Bankruptcy Code section 365, to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365, shall be rejected. The Confirmation Order shall constitute a Final Order approving this rejection. All Allowed Rejection Damage Claims shall be treated as Class 3 Claims under the Plan.

**B.** **Bar Date for Rejection Damage Claims.**

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidating Trustee and its counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Liquidating Trustee shall have the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than one hundred twenty (120) days after the Effective Date, subject to extension for cause.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

35

C.     **Insurance Policies.**

For the avoidance of doubt, all of the Debtor's rights with respect to all insurance policies under which the Debtor may be a beneficiary (including all insurance policies that may have expired prior to the Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into by the Debtor after the Petition Date, and all insurance policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims) are retained according to their respective terms and will be transferred or assigned to the Liquidating Trust pursuant to this Plan.

Notwithstanding the foregoing and any provision providing for the rejection of executory contracts herein, any insurance policy that is deemed to be an executory contract shall neither be rejected nor assumed  by operation of this Plan and shall be the subject of a specific motion by the Liquidating Trustee who shall retain the right to assume or reject any such executory contract pursuant to and subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date; until such time as the Liquidating Trustee rejects any such executory contract, all rights, interests, and remedies under such executory contract shall be retained fully by the Liquidating Trustee.

**VIII.   EFFECTIVENESS OF THE PLAN**

A.     **Conditions Precedent.**

The Effective Date shall not occur until the following condition(s) (the "Conditions Precedent") have been satisfied or waived:

(i)     the Bankruptcy Court shall have entered an order granting approval of the Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code and that order shall have become a Final Order;

(ii)     the Bankruptcy Court shall have entered a Confirmation Order that is in form and substance satisfactory to the Debtor and the Committee;

(iii)     the Confirmation Order shall have become a Final Order; and

(iv)     no stay of the Confirmation Order is in effect.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

Notwithstanding the foregoing, the Conditions Precedent set forth in Section VIII.A.iii hereof may be waived by the Debtor and the Committee (such waiver shall not require any notice, Bankruptcy Court order, or any further action).

**B.    The Effective Date.**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the later of: the date that is the first day of the month following the date on which all Conditions Precedent have been satisfied or waived.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**C.    Confirmation Request.**

In the event that all of the applicable requirements of section 1129(a) are met other than section 1129(a)(8), the Debtor requests confirmation of the Plan under section 1129(b).  The Debtor will provide further support for Confirmation of the Plan under the "cram down" provisions of section 1129(b) in its brief to be filed in support of the Plan.  **[O.K., but cram down is not possible here in that there is only one impaired class.]**

**D.    Notice of the Effective Date.**

As soon as practicable after the Effective  Date has occurred, the Liquidating Trustee shall file with the Bankruptcy Court an informational notice specifying  the Effective Date, as a matter of record.

**IX.    RETENTION OF JURISDICTION**

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code.  The Bankruptcy Court will retain and have exclusive jurisdiction to the fullest extent permissible over any proceeding (i) arising under the Bankruptcy Code or (ii) arising in or related to the Chapter 11 Case or the Plan, including but not limited to the following:

a)    To hear and determine pending  motions for the assumption, assumption and assignment, or rejection  of executory contracts  or unexpired leases, if any are pending  as of the Effective  Date, the determination of any cure payments related thereto, and the allowance or disallowance of Claims resulting therefrom;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

37

b)      To determine any and all adversary proceedings, applications, motions, and contested matters instituted prior to the closing of the Chapter 11 Case;

c)      To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

d)      To hear and determine any objections to Administrative Expenses and to proofs of Claims filed both before and after the Effective Date (including, without limitation, whether all or any part of any Claim set forth in any such proof of Claim or Administrative Expense is subject to partial or complete subordination pursuant to applicable law), and to allow or disallow any Disputed Claim in whole or in part, provided, however, that, for the avoidance of doubt, the Liquidating Trustee may settle or compromise (including by set-off) any Disputed Claim without further Order of the Court;

e)      To hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under sections 330, 331, and 503(b) of the Bankruptcy Code;

f)      To hear and determine any disputes arising in connection with the interpretation, implementation, execution, or enforcement of the Plan, the Liquidating Trust Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

g)      To hear or determine any action to recover assets of the Estate, wherever located;

h)      To hear and determine any actions or matters related to Estate Causes of Action, whether or not such actions or matters are pending on the Effective Date;

i)      To hear and determine any matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

j)      To hear and determine any objections to the allowance of Claims or Administrative Claims, whether filed before or after the Confirmation Date, including any objections to the classification of any Claim, and any proceedings to allow, disallow, determine, liquidate, estimate, or establish the priority or the secured or unsecured status of any Claim, or to establish reserves pending the resolution of Disputed Claims;

DOCS_LA:306860.7 13817/002

k)     To hear and determine any proceeding to modify this Plan, after confirmation of this Plan, and, if in the best interests of Holders of Claims, modification of this Plan even after this Plan has been substantially consummated;

l)     To consider the issuance of injunctions or other orders as may be necessary or appropriate to aid in the implementation of this Plan or to restrain interference by any entity with the consummation or the enforcement of this Plan;

m)     To hear any other matter not inconsistent with the Bankruptcy Code;

n)     To hear any other matter deemed relevant by the Bankruptcy Court; and

o)     To enter a final decree closing the Chapter 11 Case.

## X.    RELEASES, EXCULPATION AND INJUNCTION

### A.    Releases by the Debtor

*In consideration for services rendered to the Estate and for the consideration as more fully set forth herein, to the greatest extent permissible by law, and except as otherwise specifically provided in this Plan, as of the Effective Date, the Debtor shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each of the Released Parties of and from any and all past, present and future legal actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences, amounts paid in settlement, costs, fees, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind, character or nature whatsoever, whether in law, equity or otherwise (including, without limitation, those arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law, and any and all alter-ego, lender liability, indemnification or contribution theories of recovery, and interest or other costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against the Debtor or the Released Parties (in each case, solely in their capacities as such) occurring from the beginning of time to and including the Effective Date related in any way,*

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

39

*directly or indirectly, arising out of, and/or connected with any or all of the Debtor or the Estate;*

*provided, however, that notwithstanding the foregoing or any other provision of this Plan, nothing*

*in this Plan, or any order confirming this Plan shall affect any causes of action, claims, or*

*counterclaims that may be asserted in connection with an objection to a Claim that has not been*

*Allowed, in each case as determined by a court of competent jurisdiction.  Notwithstanding*

*anything to the contrary in this Plan, this Article does not release any post-Effective Date*

*obligations of any party under this Plan or any document, instrument, or agreement executed to*

*implement this Plan.  Furthermore, nothing in this Plan shall affect the liability of any Claims*

*held by any third party against any of the Released Parties.*

### B.     Exculpation

*None of the Exculpated Parties shall have or incur any liability for any act or omission in*

*connection with, related to, or arising out of, the Chapter 11 Case, the formulation, preparation,*

*dissemination, implementation, confirmation, or approval of this Plan, the administration of this*

*Plan, or any contract, instrument, release, or other agreement or document provided for or*

*contemplated in connection with the consummation of the transactions set forth in this Plan,*

*provided, however, that the foregoing provisions shall not affect the liability of any Person that*

*would result solely from any such act or omission to the extent that act or omission is determined*

*by a Final Order of the Court to have constituted willful misconduct or gross negligence or*

*breach of fiduciary duty; provided further, however, that this provision shall not limit the Debtor's*

*obligations under this Plan; provided further, however, that notwithstanding the foregoing or any*

*other provision of this Plan, nothing in this Plan, or any order confirming this Plan shall affect*

*any causes of action, claims, or counterclaims that may be asserted in connection with an*

*objection to a Claim that has not been Allowed, in each case as determined by a court of*

*competent jurisdiction.*

### C.     No Liability for Solicitation or Participation.

As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or

rejections of this Plan, in good faith and in compliance with the applicable provisions of the

Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of

40

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

### D. Good Faith.

Confirmation of this Plan shall constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with applicable provisions of the Bankruptcy Code.

### E. Injunction Enjoining Holders of Claims Against Debtor.

The Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests. To that end, except as expressly provided in the Plan, at all times on and after the Effective Date, all Persons who have been, are, or may be holders of Claims against or Interests in the Debtor, arising prior to the Effective Date, will be permanently enjoined from taking any of the following actions, on account of any such Claim or Equity Interest, against the Debtor, the Estate, the Liquidating Trust or its property (other than actions brought to enforce any rights or obligations under the Plan):(a)     commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtor and/or Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);

(b)     Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets;

(c)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or encumbrance against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets; and

(d)     proceeding in any manner in any place whatsoever against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets that does not conform to or comply with the provisions of the Plan.

41

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.    Nondischarge of the Debtor.**

In accordance with Bankruptcy Code section 1141(d)(3), the Confirmation Order will not discharge Claims.  However, no Holder of a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Holder pursuant to the Plan.  As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under the Plan, any Claims, rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in the Plan or the Confirmation Order.

## XI.    MISCELLANEOUS PROVISIONS

**A.    Payment of Statutory Fees.**

All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code shall be duly paid in full on or before the Effective Date, as required by section 1129(a)(12) of the Bankruptcy Code.  The Liquidating Trust shall be responsible for timely payment of such quarterly fees due and payable after the Effective Date and until the Chapter 11 Case is closed, pursuant to section 1930(a)(6) of title 28 of the United States Code, with respect to cash disbursements made by the Liquidating Trustee under the Plan. After the Effective Date and until the Chapter 11 Case is closed, the Liquidating Trustee shall file with the Office of the United States Trustee monthly financial reports specifying all disbursements made pursuant to the Plan and shall make all payments based upon such disbursements as required by applicable law.

**B.    Preservation of Rights of Action.**

Except to the extent any rights, claims, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Chapter 11 Case: (i) any and all Estate Causes of Action accruing to the Debtor's Estate shall vest in the Liquidating Trust on the Effective Date, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

42

and (ii) the Debtor's Estate does not waive, release, relinquish, forfeit, or abandon (and it shall not be estopped or otherwise precluded or impaired from asserting) any Estate Cause of Action that constitutes property of the Debtor' Estate: (a) whether or not such Estate Cause of Action has been listed or referred to in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court, (b) whether or not such Estate Cause of Action is currently known to the Debtor or the Liquidating Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action filed a proof of claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against this Plan, or received or retained any consideration under this Plan.

### C.    Exemption from Stamp, Transfer and Other Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of assets under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

#### 1.    Headings.

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

#### 2.    Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtor' Estate, Holders of Claims, Holders of Equity Interests, and their respective successors or assigns.

### D.    Revocation or Withdrawal.

#### 1.    Right to Revoke.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

#### 2.    Effect of Revocation.

If the Debtor revokes the Plan prior to the Confirmation Date or if the Confirmation Date or the Effective Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or

43

against the Debtor or Estate, or any other person or to prejudice in any manner the rights of the Debtor or Estate, or any person in any further proceedings involving the Debtor.

### 3.    Governing Law.

Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, this Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

### 4.    Withholding, Reporting, and Payment of Taxes.

In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, the Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall report and pay taxes on the income of the Liquidating Trust Assets, if any, as required by applicable law. In addition, to the extent required by applicable law, reported Distributions from such reserves shall include all interest and investment income, if any, attributable to the Cash or property being distributed net of taxes which are, or are estimated to be, due and payable thereon.

### 5.    Other Documents and Actions.

The Debtor on and prior to the Effective Date and the Liquidating Trustee after the Effective Date may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

### 6.    Modification of the Plan.

Prior to the Effective Date, the Plan may be altered, amended, or modified pursuant to section 1127 of the Bankruptcy Code by the Debtor. After the Effective Date, the Liquidating Trustee shall have the sole authority and power to alter, amend, or modify the Plan pursuant to section 1127 of the Bankruptcy Code.

44

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7.    **Notices.**

Any notice to the Debtor or Liquidating Trustee required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

**Debtor:**

Channel Technologies Group, LLC
Attn: David Tiffany
8714 East Sandalwood Dr
Scottsdale, AZ 85250

**With a copy to:**

Pachulski Stang Ziehl & Jones LLP
Attention: Jeffrey Dulberg
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760

**Liquidating Trustee:**

[TO COME]

E.    **Severability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is found by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:306860.7 13817/002

determination and shall provide that each term and provision of the Plan, as it may have been altered

or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**F.    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be

binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and

assigns of such entity.

**G.    Post-Confirmation Notice.**

From and after the Effective Date, any person who desires notice of any pleading or

document filed in the Bankruptcy Court, or any hearing in the Bankruptcy Court, or other matter as

to which the Bankruptcy Code requires notice to be provided, shall file a request for post-

confirmation notice and shall serve the request on the Liquidating Trustee ("Post Effective Date

Notice Party"); provided, however, the United States Trustee shall be deemed to have requested

post-confirmation notice.

**H.    Books and Records.**

Upon the Case Closing Date, the Liquidating Trustee shall be authorized, in the exercise of

its sole and absolute discretion, to discard or destroy any and all pre-Effective Date books and

records of the Debtor in the Liquidating Trustee's custody or control.  The Liquidating Trustee shall

continue to preserve post-Effective Date books and records in its custody or control through the Case

Closing Date, or as otherwise provided by order of the Bankruptcy Court.

**I.    Effectiveness of Court Orders.**

All orders and judgments, including injunctions, entered by the Bankruptcy Court during the

Chapter 11 Case, and in existence on the Confirmation Date, shall remain in full force and effect

from and after the Effective Date, to the extent not inconsistent with the provisions of this Plan or

the Confirmation Order.

**J.    No Waiver.**

Neither the failure to list a Claim in the Schedules filed by the Debtor, the failure to object to

any Claim for purposes of voting, the failure to object to a Claim or Administrative Claim prior to

the Effective Date, the failure to assert an Estate Cause of Action prior to the Effective Date, nor any

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

46

action or inaction with respect to a Claim, Administrative Claim, or Estate Cause of Action, other than a legally effective express waiver or release, shall be deemed to be a waiver or release of the right of the Liquidating Trustee to object to or examine such Claim or Administrative Claim, in whole or in part, or retain and assert, pursue, prosecute, litigate, or otherwise enforce any Estate Cause of Action.

**K.**     **Other Documents and Actions.**

The Debtor and the Liquidating Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under this Plan.

**L.**     **Inconsistencies.**

In the event that any provisions of this Plan are inconsistent with the provisions of the Disclosure Statement, the provisions of this Plan shall control.

**M.**     **Implementation of Section 1142 of the Bankruptcy Code.**

Pursuant to section 1142(a) of the Bankruptcy Code, the Debtor and the Liquidating Trustee are authorized to carry out the terms of this Plan.  Pursuant to section 1142(b) of the Bankruptcy Code, all Holders of Claims and Holders of Equity Interests shall execute and deliver, or join in the execution and delivery of, any instrument or document appropriate to effectuate this Plan, and perform any other act that is appropriate for the consummation of this Plan.  To the extent that any Holder of a Claim or Holder of an Equity Interest fails to comply with these provisions, the Debtor and the Liquidating Trustee shall be entitled to obtain, on an expedited basis, an order of the Bankruptcy Court compelling such Holder's compliance with these provisions, and, during the time period encompassed by such Holder's non-compliance, no payment shall be made to such Holder under this Plan.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DOCS_LA:306860.7 13817/002

## XII.   RECOMMENDATION

The Debtor recommends that all creditors that receive a ballot and are eligible to vote on the Plan vote in favor of the Plan. The Debtor has thoroughly evaluated various alternatives to the Plan. After studying the other alternatives, the Debtor has concluded that the Plan is the best alternative, and will maximize recoveries to unsecured creditors.

Dated:  November 7, 2017

CHANNEL TECHNOLOGIES GROUP, LLC

By: _____

Name: David Tiffany
Title: Chief Restructuring Officer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

48

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*):  **DEBTOR'S PROPOSED CHAPTER 11 LIQUIDATING PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 7, 2017,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On **November 7, 2017,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 7, 2017,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA FEDEX**
The Honorable Peter H. Carroll
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 230 / Ctrm. 201
Santa Barbara, CA 93101

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 7, 2017 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

**Mailing Information for Case 9:16-bk-11912-PC**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;allie@lesliecohenlaw.com
- Daniel Denny    ddenny@gibsondunn.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Michael S Greger    mgreger@allenmatkins.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- Andrew B Levin    alevin@wcghlaw.com, bayrelevin@hotmail.com;pj@wcghlaw.com;sly@wcghlaw.com
- David W. Meadows    david@davidwmeadowslaw.com
- Samuel A Newman    snewman@gibsondunn.com
- Victoria Newmark    vnewmark@pszjlaw.com
- Reed H Olmstead    reed@olmstead.law, olmstead.ecf@gmail.com;r41602@notify.bestcase.com
- Robert E Opera    ropera@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
- Alan J Watson    alan.watson@hklaw.com, gloria.hoshiko@hklaw.com

2. **SERVED BY UNITED STATES MAIL**:

**Channel Technologies Group, LLC**
**Ch 11 Case No.: 9:16-bk-11912-PC**
**2002 Service List**

**Debtor**
Channel Technologies Group, LLC
Attn:    David Tiffany
          Chief Restructuring Officer
8714 East Sandalwood Drive
Scottsdale, AZ  85250

Brian Fittipaldi, Esq.
Office of the U.S. Trustee
1415 State Street, Suite 148
Santa Barbara, CA  93101

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA  90017

Charles Miller, Member
5916 Carnegie Lane
Plano, Texas 75093

CR3 Partners
Attn:  William Snyder; David Tiffany;
          Robert Carringer; Michael Nguyen
13355 Noel Road
Suite 310, Tower 1
Dallas, TX  75240

**Claims Agent**
Prime Clerk
Attn:  Michael J. Frishberg
830 3rd Avenue
New York, NY 10022

**Bank**
CIT/One West
Gordon Lenarth, Director
Treasury Management Group
888 East Walnut Street
Pasadena, CA  91101
Email:  gordon.lenarth@cit.com

**Government Entities**

Jeff Sessions
U.S. Attorney General
U.S. Dept. of Justice
950 Pennsylvania Avenue NW
Washington, D.C.  20530-0001

U.S. Dept. of Justice
Ben Franklin Station
P.O. Box 683
Washington, DC  20044

Eileen M. Decker, U.S. Attorney
Dorothy A. Schouten, AUSA, Civil Chief
Elan S. Levey, AUSA
United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA  90012

Xavier Becerra
State of California
Office of the Attorney General
1300 "I" Street
Sacramento, CA  95814-2919

Lisa Chao, Supervising Deputy AG
Brian D. Wesley, Deputy AG
300 South Spring Street, Suite 1702
Los Angeles, CA  90013

DFAS
Attn:  Office of the General Counsel
8899 East 56th Street
Indianapolis, IN  46349-0160

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002                                                    **F 9013-3.1.PROOF.SERVICE**

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Internal Revenue Service
1332 Anacapa St.
Santa Barbara, CA 93101

CA Franchise Tax Board
BK Section, MS:  A-340
P.O. Box 2952
Sacramento, CA  95812-2952

Littleton Massachusetts Chief Assessor
Attn:  Katherine Miller
37 Shattuck Street, Room 206
Littleton, MA  01460

Littleton Massachusetts Tax Collector
Attn:  Deborah Richards
37 Shattuck Street, Room 207
Littleton, MA  01460

CA Franchise Tax Board
P.O. Box 942857
Sacramento, CA  95812-2952

Santa Barbara County Tax Collector
Attn:  Harry E. Hagen
105 East Anapamu Street, Suite 109
Santa Barbara, CA  93102

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA  94280-0001

State Board of Equalization
Special Operations BK Team, MIC: 74
P.O. Box 942879
Sacramento, CA  94279-0074

Massachusetts Dept. of Revenue
P.O. Box 9550
Boston, MA  02114-9550

Massachusetts Dept. of Revenue
P.O. Box 7010
Boston, MA  02204

U.S. Securities & Exchange Commission
Attn:  Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA  90071

### CREDITORS' COMMITTEE

**General Insolvency Counsel for Official
Committee of Unsecured Creditors**
Robert E. Opera
Andrew B. Levin
Winthrop Couchot Golubow Hollander LLP
660 Newport Center Drive, 4th Floor
Newport Beach, CA  92660

**Counsel for Lockheed Martin Corp.**
Christopher R. Donoho, III
M. Shane Johnson
Hogan Lovells US LLP
875 Third Avenue
New York, NY  10022

Lockheed Martin Corporation
7 Barnabas Road
Marion, MA  02738
Attn:  Patricia Hanson

Lockheed Martin Corporation
Rotary and Mission Systems
9500 Godwin Drive
Manassas, VA  20110
Attn:  John Mellis, Esq.

Advanced GeoEnvironmental, Inc.
837 Shaw Road
Stockton, CA  95215

### Secured Creditors

**Counsel to Blue Wolf Capital Fund II, L.P.**
John J. Monaghan
Holland & Knight, LLP
10 St. James Avenue, 11th Floor
Boston, MA  02116

**Prepetition Secured Creditor/DIP
Lender**
Blue Wolf Capital Partners
Attn:  President
One Liberty Plaza, 52nd Floor
New York, NY  10006

### Interested Parties

Amerisource Funding, Inc.
7225 Langtry Street
Houston, TX  77040

Fidus Mezzanine Capital II, L.P.
  as Collateral Agent
1603 Orrington Avenue, Suite 1005
Evanston, IL  60201

Gladstone Investment Corporation
1521 West Branch Drive, Suite 200
McLean, VA  22102

**Counsel for MSI Transducers Corp.**
Christopher M. Candon
Sheehan Phinney Bass & Green
1000 Elm Street, 17th Floor
Manchester, NH  03101

Wells Fargo Business Credit
  Government Services Group
A Div. of Wells Fargo Bank, N.A.
2010 Corporate Ridge, Suite 900
McLean, VA  22102

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

**Request for Special Notice**

| | | |
|---|---|---|
| **Counsel for Northrop Grumman Corp.**<br>Samuel A. Newman<br>Daniel B. Denny<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA  90071-3197 | **Counsel for Attorneys for Creditor<br>BAE Systems Information and Electric<br>Systems Integration, Inc.**<br>Robert R. Moore<br>Michael S. Greger/William W. Huckins<br>Allen Matkins<br>Three Embarcadero Center, 12th Fl.<br>San Francisco, CA  94111 | Brent A. Lindstrom<br>Electro Optical Industries<br>Sales Director<br>410 Canon Drive<br>Santa Barbara, CA  93105 |
| **Counsel to Blue Wolf Capital Fund II,<br>L.P.**<br>Alan J. Watson<br>Holland & Knight LLP<br>400 South Hope Street, 8th Floor<br>Los Angeles, CA  90071-2040 | **Counsel for Landlord**<br>Thomas N. Harding<br>Seed Mackall LLP<br>1332 Anacapa St., Suite 200<br>Santa Barbara, CA 93101 | Joy Equipment Protection, Inc.<br>Post Office Box 1080<br>Carpinteria, CA  93014 |
| Water Store<br>94 Frederick Lopez<br>Goleta, CA  93117<br>Attn:  William Risser, President | CEC, Inc.<br>Post Office Box 23245<br>Santa Barbara, CA  93121<br>Attn:  Jason Carlton, President | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT B

The Debtor's Liquidation Analysis is an estimate of the proceeds that may be generated as a result of a hypothetical liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code.  Underlying the Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic, operational and other uncertainties, and contingencies beyond the control of the Debtor or a Chapter 7 trustee.  Therefore, there can be no assurance that the assumptions and estimates employed in determining the liquidation values of the Debtor's assets will result in an accurate estimate of the proceeds that would be realized were the Debtor to undergo an actual liquidation.  The Liquidation Analysis also does not include potential recoveries from avoidance actions or other litigation.  Therefore, the actual liquidation value of the Debtor could vary materially from the estimates provided herein.  The Liquidation Analysis set forth below was based on the estimated values of the Debtor's assets as of October 31, 2017, unless otherwise noted.  These values have not been subject to any review, compilation, or audit by any independent accounting firm.

| SUMMARY OF RECOVERIES | | | |
|---|---|---|---|
| **Claims** | **Class** | **Chapter 7** | **Under the Plan** |
| Secured Claims | 1 | 100% | 100.0% |
| Other Priority Claims | 2 | 100% | 100.0% |
| General Unsecured Claims | 3 | 2.74% | 3.38%-7.35% |
| Equity Interests in Debtor | 4 | 0% | 0% |

**Channel Technologies Group. LLC**
LIQUIDATION ANALYSIS

| Assets | As of October 31, 2017 | Estimated % Recovery - Chapter 7 | Estimated Liquidation Proceeds - Chapter 7 |
|---|---|---|---|
| Cash on Hand | $1,400,000[1] | 100% | $1,400,000 |
| Nightline Litigation Settlement (A/R) | $145,000 | 100% | $145,000 |
| Avoidance Actions & Other Litigation | Unknown | Unknown | Unknown |
| Miscellaneous *De Minimis* Assets | Unknown | Unknown | Unknown |
| **Total Assets – Estimated Proceeds for Distribution** | $1,545,000 | | $1,545,000 |
| | | | |
| **Less Chap. 11 Liabilities** | | | |
| Secured Claims | $53,000[2] | 100% | $53,000 |
| Priority Claims | $180,000[3] | 100% | $180,000 |
| Administrative Claims | $200,000[4] | 100% | $200,000 |
| | | | |
| **Less Chap. 7 Liabilities** | | | |
| Chapter 7 Trustee Fees & Wind-Down Costs | | | ($219,600) |
| | | | |
| **Estim. Proceeds for Distribution to General Unsecured Creditors in Chapter 7** | | 2.74% | $892,400 |

**Estimated Recovery for General Unsecured Creditors Under Plan:**

| Sources: | |
|---|---|
| Liquidation Trust - Avoidance Actions | $0 (unknown)[5] |
| Liquidation Trust - Available Cash after payment (as applicable) of Administrative Expenses, Priority Tax Claims, Secured Claims, and Other Priority Claims. | $1,112,000 |
| **Total Sources (a):** | **$1,112,000** |

---

[1] Figure includes funds to be used to pay professional fees and costs.

[2] Less than approximately $53,000 in putative secured proofs of claim were filed, including a claim filed by a personal property lessor. The Debtor believes that in all events, the aggregate amount of outstanding Secured Claims (as well as any unpaid DIP Financing Claims) as of the Effective Date will be minimal.

[3] The IRS filed three proofs of claim asserting approximately $544,000 in total, however, two of the three proofs of claim appear to be duplicates and the resulting claim is likely zero as the Debtor has paid all outstanding taxes due. Approximately $15,000 in putative priority claims were filed by non-tax-authority creditors. The Debtor scheduled approximately $283,000 in priority claims (Schedule E), which includes claims of taxing authorities, and the scheduled priority claims of the Debtor's former employees were subsequently satisfied or partially satisfied pursuant to Court order. The Debtor has not fully analyzed all potential priority claims, some of which may in whole or in part constitute secured claims (in relation to certain tax claims), priority claims, administrative claims or general unsecured claims.

[4] Comprised of (i) approximately $200,000 in unpaid professional fees and expenses (estimated to be unpaid and accrued as of the Effective Date); and (ii) approximately $1,600 in asserted section 503(b)(9) claims.

[5] Potential recoveries from avoidance actions and other litigation are highly speculative and assumed to be $0 for purposes of this analysis.

| | |
|---|---|
| **Less:** | |
| **Extraordinary Plan Implementation Liabilities (b):** | **($10,000)** [6] |
| **Estim. Proceeds for Distribution to General Unsecured Creditors Under Plan [(a) minus (b)]:** | **$1,102,000** |
| **Estim. Potential Recovery for General Unsecured Creditors - $32,600,000**[7] **in Allowed Claims** | **3.38%** |
| **Estim. Potential Recovery for General Unsecured Creditors - $25,000,000**[7] **in Allowed Claims** | **4.41%** |
| **Estim. Potential Recovery for General Unsecured Creditors - $20,000,000**[7] **in Allowed Claims** | **5.51%** |
| **Estim. Potential Recovery for General Unsecured Creditors - $15,000,000**[7] **in Allowed Claims** | **7.35%** |

[6] Such costs would include, for example, services/expenses related to making distributions to and serving notices on creditors, which costs could be higher depending on, among other factors, the extent of claims objections and litigation.

[7] Approximately $1,492,000 in General Unsecured Claims were scheduled by the Debtor. Approximately $39,785,000 in general unsecured proofs of claim were filed, including a nearly $20 million breach of contract claim filed by Lockheed Martin Corp., a $7.775 million breach of contract / unfilled orders claim filed by SyQwest (subsequently withdrawn pursuant to a Bankruptcy Court-approved settlement), and a $6.467 million breach of contract claim filed by Northrop Grumman.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled (*specify*):  **DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S PROPOSED CHAPTER 11 LIQUIDATING PLAN, DATED NOVEMBER 7, 2017** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 7, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On **November 7, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 7, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA FEDEX**
The Honorable Peter H. Carroll
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 230 / Ctrm. 201
Santa Barbara, CA 93101

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 7, 2017 | Mary de Leon | /s/ Mary de Leon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

**Mailing Information for Case 9:16-bk-11912-PC**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;allie@lesliecohenlaw.com
- Daniel Denny    ddenny@gibsondunn.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Michael S Greger    mgreger@allenmatkins.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- Andrew B Levin    alevin@wcghlaw.com, bayrelevin@hotmail.com;pj@wcghlaw.com;sly@wcghlaw.com
- David W. Meadows    david@davidwmeadowslaw.com
- Samuel A Newman    snewman@gibsondunn.com
- Victoria Newmark    vnewmark@pszjlaw.com
- Reed H Olmstead    reed@olmstead.law, olmstead.ecf@gmail.com;r41602@notify.bestcase.com
- Robert E Opera    ropera@wcghlaw.com, pj@wcghlaw.com;sly@wcghlaw.com
- United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
- Alan J Watson    alan.watson@hklaw.com, gloria.hoshiko@hklaw.com

2. **SERVED BY UNITED STATES MAIL:**

**Channel Technologies Group, LLC
Ch 11 Case No.: 9:16-bk-11912-PC
2002 Service List**

**Debtor**
Channel Technologies Group, LLC
Attn:    David Tiffany
         Chief Restructuring Officer
8714 East Sandalwood Drive
Scottsdale, AZ  85250

Brian Fittipaldi, Esq.
Office of the U.S. Trustee
1415 State Street, Suite 148
Santa Barbara, CA  93101

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA  90017

Charles Miller, Member
5916 Carnegie Lane
Plano, Texas 75093

CR3 Partners
Attn:  William Snyder; David Tiffany;
       Robert Carringer; Michael Nguyen
13355 Noel Road
Suite 310, Tower 1
Dallas, TX  75240

**Claims Agent**
Prime Clerk
Attn:  Michael J. Frishberg
830 3rd Avenue
New York, NY 10022

**Bank**
CIT/One West
Gordon Lenarth, Director
Treasury Management Group
888 East Walnut Street
Pasadena, CA  91101
Email:  gordon.lenarth@cit.com

**Government Entities**

Jeff Sessions
U.S. Attorney General
U.S. Dept. of Justice
950 Pennsylvania Avenue NW
Washington, D.C.  20530-0001

U.S. Dept. of Justice
Ben Franklin Station
P.O. Box 683
Washington, DC  20044

Eileen M. Decker, U.S. Attorney
Dorothy A. Schouten, AUSA, Civil Chief
Elan S. Levey, AUSA
United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA  90012

Xavier Becerra
State of California
Office of the Attorney General
1300 "I" Street
Sacramento, CA  95814-2919

Lisa Chao, Supervising Deputy AG
Brian D. Wesley, Deputy AG
300 South Spring Street, Suite 1702
Los Angeles, CA  90013

DFAS
Attn:  Office of the General Counsel
8899 East 56th Street
Indianapolis, IN  46349-0160

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Internal Revenue Service
1332 Anacapa St.
Santa Barbara, CA  93101

CA Franchise Tax Board
BK Section, MS:  A-340
P.O. Box 2952
Sacramento, CA  95812-2952

Littleton Massachusetts Chief Assessor
Attn:  Katherine Miller
37 Shattuck Street, Room 206
Littleton, MA  01460

Littleton Massachusetts Tax Collector
Attn:  Deborah Richards
37 Shattuck Street, Room 207
Littleton, MA  01460

CA Franchise Tax Board
P.O. Box 942857
Sacramento, CA  95812-2952

Santa Barbara County Tax Collector
Attn:  Harry E. Hagen
105 East Anapamu Street, Suite 109
Santa Barbara, CA  93102

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA  94280-0001

State Board of Equalization
Special Operations BK Team, MIC: 74
P.O. Box 942879
Sacramento, CA  94279-0074

Massachusetts Dept. of Revenue
P.O. Box 9550
Boston, MA  02114-9550

Massachusetts Dept. of Revenue
P.O. Box 7010
Boston, MA  02204

U.S. Securities & Exchange Commission
Attn:  Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA  90071

### CREDITORS' COMMITTEE

**General Insolvency Counsel for Official
Committee of Unsecured Creditors**
Robert E. Opera
Andrew B. Levin
Winthrop Couchot Golubow Hollander LLP
660 Newport Center Drive, 4th Floor
Newport Beach, CA  92660

**Counsel for Lockheed Martin Corp.**
Christopher R. Donoho, III
M. Shane Johnson
Hogan Lovells US LLP
875 Third Avenue
New York, NY  10022

Lockheed Martin Corporation
7 Barnabas Road
Marion, MA  02738
Attn:  Patricia Hanson

Lockheed Martin Corporation
Rotary and Mission Systems
9500 Godwin Drive
Manassas, VA  20110
Attn:  John Mellis, Esq.

Advanced GeoEnvironmental, Inc.
837 Shaw Road
Stockton, CA  95215

### Secured Creditors

**Counsel to Blue Wolf Capital Fund II, L.P.**
John J. Monaghan
Holland & Knight, LLP
10 St. James Avenue, 11th Floor
Boston, MA  02116

**Prepetition Secured Creditor/DIP
Lender**
Blue Wolf Capital Partners
Attn:  President
One Liberty Plaza, 52nd Floor
New York, NY  10006

### Interested Parties

Amerisource Funding, Inc.
7225 Langtry Street
Houston, TX  77040

Fidus Mezzanine Capital II, L.P.
  as Collateral Agent
1603 Orrington Avenue, Suite 1005
Evanston, IL  60201

Gladstone Investment Corporation
1521 West Branch Drive, Suite 200
McLean, VA  22102

**Counsel for MSI Transducers Corp.**
Christopher M. Candon
Sheehan Phinney Bass & Green
1000 Elm Street, 17th Floor
Manchester, NH  03101

Wells Fargo Business Credit
  Government Services Group
A Div. of Wells Fargo Bank, N.A.
2010 Corporate Ridge, Suite 900
McLean, VA  22102

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:310317.1 13817/002

**F 9013-3.1.PROOF.SERVICE**

**Request for Special Notice**

**Counsel for Northrop Grumman Corp.**
Samuel A. Newman
Daniel B. Denny
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197

**Counsel to Blue Wolf Capital Fund II, L.P.**
Alan J. Watson
Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071-2040

Water Store
94 Frederick Lopez
Goleta, CA  93117
Attn:  William Risser, President

**Counsel for Attorneys for Creditor BAE Systems Information and Electric Systems Integration, Inc.**
Robert R. Moore
Michael S. Greger/William W. Huckins
Allen Matkins
Three Embarcadero Center, 12th Fl.
San Francisco, CA  94111

**Counsel for Landlord**
Thomas N. Harding
Seed Mackall LLP
1332 Anacapa St., Suite 200
Santa Barbara, CA 93101

CEC, Inc.
Post Office Box 23245
Santa Barbara, CA  93121
Attn:  Jason Carlton, President

Brent A. Lindstrom
Electro Optical Industries
Sales Director
410 Canon Drive
Santa Barbara, CA  93105

Joy Equipment Protection, Inc.
Post Office Box 1080
Carpinteria, CA  93014

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.